1                        UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

3   UNITED STATES OF AMERICA,        )
                                      )
4            Plaintiff,               )
                                      )
5        vs.                          ) CASE NO. 1:22-cr-00019-RCL
                                      )
6   GREGORY RICHARD PURDY, JR.,       )
    MATTHEW PURDY and ROBERT          )
7   TURNER,                           )
                                      )
8            Defendants.              )
    _____
9

10              TRANSCRIPT OF TRIAL BY JURY - TRIAL DAY 6
          **BEFORE THE HONORABLE ROYCE C. LAMBERTH, DISTRICT JUDGE**
11                         June 10, 2024
                      10:08 a.m. - 3:30 p.m.
12                       Washington, DC

13

14  **FOR THE GOVERNMENT:**
         Office of the United States Attorney
15       BY:  LYNNETT WAGNER
         1620 Dodge Street, Suite 1400
16       Omaha, Nebraska 68102
         (402) 661-3700
17
         Office of the United States Attorney
18       BY:  KYLE MORAN McWATERS
         601 D Street, NW
19       Washington, DC 20001
         (918) 902-5977
20

21
    _____
22                      **SONJA L. REEVES**
                   **Registered Diplomate Reporter**
23                  **Certified Realtime Reporter**
                  **Federal Official Court Reporter**
24               333 Constitution Avenue, NW
                       Washington, DC 20001
25        Transcript Produced from the Stenographic Record

 1   **FOR DEFENDANT GREGORY RICHARD PURDY, JR.:**
         Barket Lawyers
 2       BY:  DYLAN GEORGE BARKET
         66 West Flagler Street, 7th Floor
 3       Miami, Florida 33130
         (305) 373-6711
 4
     **FOR DEFENDANT MATTHEW PURDY:**
 5       Isaak Law Firm
         BY:  MELISSA LEA ISAAK
 6       PO Box 4894
         Montgomery, Alabama 36103
 7       (334) 262-8200

 8   **FOR DEFENDANT ROBERT TURNER:**
         George T. Pallas, P.A.
 9       BY:  GEORGE T. PALLAS
         2420 Coral Way
10       Miami, Florida 33145
         (305) 856-8580

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Call to Order of the Court at 10:08 a.m.)

2          DEPUTY CLERK:  We're on record in Criminal Case

3     22-019, *United States of America versus Defendant One, Gregory*

4     *Richard Purdy; Defendant Two, Matthew Purdy; and Defendant*

5     *Three, Robert Turner.*

6          Starting with the government, please approach the

7     podium and state your appearance for the record.

8          MS. WAGNER:  Good morning, Your Honor.  Lynnett

9     Wagner, Assistant U.S. Attorney, accompanied by Kyle McWaters,

10    Assistant U.S. Attorney, and paralegal Taylor Wilbert, for the

11    United States.

12         MR. BARKET:  Good morning, Your Honor.  Dylan Barket

13    for Mr. Gregory Purdy, who joins me at defense table.

14         MS. ISAAK:  Melissa Isaak here for Mr. Matthew Purdy,

15    who is also in the courtroom.

16         MR. PALLAS:  Good morning, Your Honor.  George Pallas

17    on behalf of Robert Turner, who is present.

18         THE COURT:  Do you want to bring your witness back?

19         You can bring the jury.

20         MS. WAGNER:  For the record, the government recalls

21    Michael Jeng.

22         MR. PALLAS:  Judge, I guess the quickest answer is

23    that I don't believe any of the attorneys are going to do any

24    cross-examination of this witness.  We reviewed the transcript

25    and we decided collectively not to examine him.

1          THE COURT:  Oh, all right.  I'll just explain to the

2     jury, then.

3          MR. PALLAS:  Perfect.

4          MS. WAGNER:  Your Honor, may this witness come back to

5     the counsel table?

6          THE COURT:  Not until I, in front of the jury, explain

7     what's going on.

8          And then is the government going to rest?

9          MS. WAGNER:  Yes.

10     (Jury present)

11          THE COURT:  Good morning, ladies and gentlemen.  You

12     may be seated.  Agent Jeng has taken the stand.

13          We interrupted cross-examination to accommodate

14     another witness schedule.  The defense counsel just informed me

15     they do not have any cross-examination.  So with that, I'll

16     excuse Agent Jeng to step down.  His direct had been concluded

17     when I interrupted to take that other witness out of order.

18          With that, the government may proceed.

19          MS. WAGNER:  Your Honor, with that, the government

20     would rest.

21          THE COURT:  All right.  At this stage, then, let me

22     excuse the jury for a few moments while I talk to counsel about

23     the defense case.

24     (Jury absent)

25          THE COURT:  Any motion by defendants, I'll entertain

1  now.

2          MR. PALLAS:  Does it matter what order we go in?

3          THE COURT:  No.

4          MR. PALLAS:  Judge, at this time, on behalf of

5  Robert Turner, the defendant would move for judgment of

6  acquittal pursuant to Rule 29 of the Federal Rules of Criminal

7  Procedure.

8          Just briefly, Your Honor, as to the 752 offenses, the

9  government must prove knowledge that the defendant,

10  Robert Turner, had knowledge and willfully entered a restricted

11  zone, restricted because there was a Secret Service protectee

12  and not restricted for any other reason, not because of COVID,

13  not because of construction of the platform for the

14  inauguration, which are all proper reasons to restrict the

15  Capitol, but not one that's specifically required by statute to

16  find the defendant guilty of the 752 offenses.

17          Regarding the 1512 offense that is the one that's

18  presently in front of the Supreme Court, obstruction of

19  Congress, the defendant has failed -- I mean, the government

20  has failed to meet their burden of proof in proving each and

21  every element of that offense, in particular, the corruptly

22  element of that offense.  And I would move for an entry of a

23  judgment of acquittal on that count.

24          As to the sole 111 count against Mr. Turner, that

25  being the count where there is an alleged victim of AS, the

1    defendant would move for judgment of acquittal based upon the
2    failure of AS to appear at this trial and testify against
3    Mr. Turner to say that he was, in fact -- he or she, we don't
4    know, he or she was forcibly assaulted, interfered or impeded.
5    And based upon that failure of evidence, including the fact
6    that there was a lack of intent that the defendant simply
7    went -- Defendant Robert Turner simply followed co-defendant
8    Gregory Purdy, his nephew, who, as Your Honor recalls, did the
9    countdown, followed him, "No, no," reached out his hand.  The
10   testimony was it was a defensive maneuver, took about
11   20 seconds.  For that reason, we move to -- for judgment of
12   acquittal as to the 111 count.
13        Finally, the civil disorder 231 count, again, there
14   are two alleged victims in that count, one being AS, who never
15   appeared, and the other being CK, Christopher Kurland, who did
16   appear.  And as you recall Christopher Kurland never even
17   identified Robert Turner as someone he recognized from that
18   day.  I move for judgment of acquittal on that ground.  I would
19   note the government has failed their burden of proof as to the
20   adverse effect on interstate commerce, and also the fact that
21   there was not an impeding and an interfering.
22        What's troubling, Your Honor, is there's only one
23   incident where Mr. Turner had interaction with the police and
24   there is a convergence of some sort between the 111 and the 231
25   where I believe, and I submit, that there's a -- there's some

1    type of double jeopardy concern, at least.  You know, there's

2    many times where there's an offense, you can commit an offense,

3    you can be charged with an offense, and then if you have the

4    intent to commit an offense and then the -- the example that

5    comes to mind is, for example, someone enters a home

6    improperly.  It's a burglary.  Now, once you've entered

7    illegally, it's a burglary.  But there could be a burglary with

8    the intent to commit varied offenses, an intent to commit

9    domestic violence.  There could be an attempt to commit a

10   sexual battery.  There can be an attempt to commit a theft.

11   Those are additional offenses that the defendant has when they

12   commit the burglary.

13           Here, you have an assault or interfering or impeding

14   of an officer with the intent to commit another felony.  Well,

15   what's the other felony?  To assault or impede or interfere

16   with another officer.

17           So in some sense, these two charges merge and I submit

18   that there is not a way for a -- for the defendant to be

19   convicted of both charges.  So I'm going to move for judgment

20   of acquittal on that charge as well.

21           Those are my motions.

22           THE COURT:  Mr. Barket.

23           MR. BARKET:  Judge, for the 1752, I would just adopt

24   Mr. Pallas's argument.  I would also point out that the

25   government never actually proved how the defendants got onto

1    Capitol grounds.  A reasonable jury could absolutely find they

2    were led there by the police, that someone told them to go

3    there.  There is no evidence that it was restricted to them.

4            As to the 111(a), Your Honor, I would just add to the

5    record that there has been no testimony whatsoever of any

6    mutual aid agreement, compact.  An officer of the Metropolitan

7    Police Department who is just a metropolitan police officer has

8    no jurisdiction on the United States Capitol.  It's a federal

9    property.  And while it may seem obvious there was a mutual aid

10   agreement, there was absolutely no testimony to that

11   whatsoever.

12           And for the 231, I would just adopt Mr. Pallas's

13   argument.  Essentially, the 231 merges with the assault.  The

14   forceable act, for example, in the 231 with Officer Gbatu is

15   when the crowd came shoving in and Mr. Purdy was either shoved

16   or touched Officer Gbatu.  Officer Gbatu's testimony was, at

17   the very best, it was a brush on the elbow.  So that would be

18   that.

19           Thank you, Your Honor.

20           THE COURT:  Ms. Isaak.

21           MS. ISAAK:  Yes, Your Honor.  I also adopt Mr. Pallas

22   and Mr. Barket's arguments relating to the 1752 charge.

23   Mr. Matthew Purdy is charged under two different statutes, 1752

24   and 5104, and these two charges are -- merge together.  They

25   stem from the same activity.

1          The government was required to prove intent, but there
2    was no evidence presented of any intent at all.  The government
3    failed in their burden of proof to show that Matthew Purdy
4    intended to act in the matter that he's charged.  What the
5    government did prove, he was there.  We had already admitted to
6    that, that he was present.  Matthew Purdy only has these two
7    statutes he's charged under, so we move for a Rule 29 judgment
8    of acquittal.  And the government has failed to meet their
9    burden of proof.  We don't think the jury can conclude that
10    Matthew Purdy is guilty of what he is alleged to have done even
11    if you take the facts most favorable to the government.

12          THE COURT:  All right.  Mr. McWaters?

13          MR. McWATERS:  Thank you, Your Honor.  To start off
14    with, Ms. Isaak took the words right out of my mouth.  The
15    standard here is the evidence viewed in the light most
16    favorable to the government.  And on that standard, the
17    government has not only met, but exceeded its burden under Rule
18    29.

19          Addressing the defendants in the order they went.
20    Robert Turner's arguments was that for the 1752, the government
21    didn't prove knowledge of the presence of Vice President Pence
22    at the Capitol grounds or the defendants didn't know he was
23    there.  That is simply not true.

24          Under -- with Exhibit No. 603.9 and 412.1, the
25    defendants either heard people talking about Pence's presence

1    at the Capitol or themselves were talking about their knowledge

2    of Pence being at the Capitol from what they heard from

3    Mr. Trump -- former President Trump regarding Pence's role in

4    the certification and that he would there on January 6th.  I

5    believe that was the extent of the argument under 1752.

6          For 1512(c)(2), there was plenty of evidence for --

7    that Mr. Turner was there to stop the certification, his

8    statements while he was there, pleading with police to stop

9    following orders, to join them, to let them in, in addition to

10   his comments on social media that the government introduced, he

11   knew what was going on at the Capitol that day and his intent

12   was to stop that certification.

13         For the 111(a)(1) charge, as Your Honor has already

14   ruled, failure of AS to appear is not grounds for dismissal of

15   that charge.  The victim is not required under federal law to

16   appear at a trial in order to prove that an assault occurred.

17   The government presented evidence both from Officer Mott and

18   from both Officer AS's body-worn camera and Officer Mott's

19   body-worn camera regarding the identity of Officer AS and of

20   the assault that Robert Turner did commit against Officer AS.

21         The argument that we did not prove intent because he

22   simply followed Greg Purdy, while factually Robert Turner did

23   follow in Greg Purdy's footsteps going into the line, there

24   was -- that doesn't mean that Mr. Turner did not form the

25   requisite intent to assault Officer AS.

1        With regard to the 231(a)(3) charge, Your Honor has

2   already ruled on the double jeopardy and multiplicity

3   arguments.  I'll just again, for the record, point to

4   *Blockburger* and say that this is not -- double jeopardy is not

5   at issue here because the elements of the crimes are different,

6   number one.

7        Number two, I'll address about the adverse effect on

8   interstate commerce.  Two points here.  One is that the

9   government has to prove either an adverse effect on interstate

10  commerce, however small, or that a federally protected function

11  was interfered with.  The government proved both, both through

12  testimony of Officer Mark Gazelle that the federally protected

13  function of the Capitol Police protecting the Capitol was

14  interfered with, and also the government introduced records

15  from Safeway that shows a clear adverse effect to their

16  business on January 6th compared with January 5th and 7th.

17       Turning now to Greg Purdy's arguments.  They adopted

18  1752 arguments from Mr. Turner's arguments, which I've

19  addressed.  Mr. Barket also said that they -- a reasonable jury

20  could believe that they were led there by police, that there's

21  no evidence that there were barriers.

22       The first issue is that there was -- there's no

23  evidence at all that police led the defendants in, and that no

24  evidence of that nature came in.  So I don't know why the jury

25  would think that, to begin with.  And number two, there was

1   evidence that the restricted area was in place and that there

2   were signs and barricades that were up at various parts of the

3   Capitol, including Mr. Purdy's own interaction with the metal

4   bike rack at 2:10 p.m. on January 6th, which is the subject of

5   Count 3.

6          I believe the 231 arguments were also adopted, which I

7   have also addressed.

8          Under Matthew Purdy, 1752 -- and there's something I'd

9   like to address, Your Honor.  Ms. Isaak, in her opening

10  statement, made the same claim here -- or there as she did

11  here, which that Matthew Purdy also faces two charges.  He

12  actually faces four charges.  They are under two different

13  titles, Title 18, 1752, and then Title 40, 5104.  But there are

14  four individual charges that Mr. Purdy faces.

15         She also renewed her argument she made in opening that

16  Mr. Purdy was just there.  Part of at least some of those

17  charges is an entering and remaining, so part of the actus reus

18  for those crimes is being there.  The government also has to

19  prove that the defendant knew the area was restricted and

20  basically knew that they weren't supposed to be there.

21         She said that there was no evidence of Mr. Purdy's

22  intent.  However, as Your Honor knows, people intend the

23  natural and probable outcomes of their actions.  And given the

24  weight of the evidence that the government has put into the

25  record, it is undeniable that Mr. Purdy, Mr. Matthew Purdy,

1    knew the area was restricted and cordoned off and that he

2    shouldn't have been there.

3            And then finally, just quickly, all three defendants

4    went inside the building, which satisfies the 5104(e)(2)(G),

5    which is the parading, picketing, and demonstrating charge.

6    They clearly rushed into the Capitol, demonstrated and paraded

7    while inside.

8            Unless Your Honor has any questions I believe that

9    addresses the defense's arguments.

10            THE COURT:  No.  The defendants' motions are denied.

11            Turning to the defendants, then, do you have any

12    witnesses you expect to call?  I guess we'll start with

13    Gregory Purdy.

14            MR. BARKET:  Not for Mr. Purdy, Your Honor.

15            THE COURT:  And for Mr. Matthew Purdy?

16            MS. ISAAK:  No, Your Honor, none for Mr. Matthew

17    Purdy.

18            THE COURT:  For Robert Turner?

19            MR. PALLAS:  No, Your Honor, no witnesses.

20            THE COURT:  All right.  Let me turn to each defendant,

21    then.  You have a right to testify.  I talked to you Friday

22    about this.

23            Mr. Gregory Purdy, have you decided to testify?

24            DEFENDANT GREGORY PURDY:  No, Your Honor, I would not

25    like to testify.  Thank you.

```
 1              THE COURT:  Okay.  Mr. Matthew Purdy, have you decided
 2    to testify or not?
 3              DEFENDANT MATTHEW PURDY:  No, Your Honor, I would not
 4    like to testify.
 5              THE COURT:  Okay.  And Mr. Robert Turner?
 6              DEFENDANT TURNER:  No, Your Honor, I would not like to
 7    testify.
 8              THE COURT:  Okay.  So when we come back, I will call
 9    on each counsel, then, as to Gregory Purdy, how do you wish to
10    proceed, and you will just say the defendant rests, and I'll do
11    that to each defendant in turn.  And then we'll say the
12    evidence is now closed.
13              Where do we stand on jury instructions, then?  You
14    haven't advanced the proposed instructions I had.  I didn't
15    have any separate instructions proposed by defendants.  Are
16    there any objections the defense want to hear to those?
17              MR. PALLAS:  Yes, Judge.  We went over -- I went over
18    them extensively.  There are some items that are confusing.
19    There was one that I noticed was lacking.  That is where there
20    is multiple defendants and --
21              THE COURT:  Why don't you come up to the podium.
22              MR. PALLAS:  Sure.  I think it's called multiple
23    defendants, multiple charges.  I just wanted --
24              THE COURT:  What page is that?
25              MR. PALLAS:  No, I don't think it's on there.  But
```

1    it's part of the red book.  And it's when there's a

2    multi-defendant case.  It's basically an instruction that says

3    that each defendant is on trial for themselves and the evidence

4    for one defendant isn't evidence of the other defendant.  It's

5    a very standard instruction.  So I would request that.

6          Let me get my notes, and I can go over some of the

7    errors if you want to do now.

8          The concern, Judge, is that Mr. Greg Purdy has two 111

9    counts and Mr. Turner has one 111 count, and all the alleged

10    victims of all the counts are in the instruction.  In other

11    words, Mr. Turner didn't have any contact with AG or BB or some

12    of these other fellows, and it is very confusing when it is

13    written that way.  Let me see if I can pull it up.

14          Mr. Barket, do you have the instructions?  That was

15    one of the concerns.

16          Also, on page 2, where Your Honor instructs about

17    implicit bias, you had left out political beliefs, which you

18    had included in your earlier...

19          Do you see that, Judge, on page 2?  Race, national or

20    ethnic origin, religion, age, disability, sex, et cetera, and

21    in your introductory instructions, you included, at our

22    request, political beliefs, and it's not here.

23          THE COURT:  Where are you talking about?

24          MR. PALLAS:  I'm talking about page 2, paragraph 2,

25    explaining implicit biases, in other words, biases people have

1    that they might not realize they're exercising.  It would be in

2    the middle of the paragraph.

3          "All people deserve fair treatment in the legal

4    system, regardless of any personal characteristics such as

5    race, national or ethnic origin," all that list.  In that list,

6    you included political beliefs.

7          THE COURT:  At the end of the sentence, "personal

8    characteristics or political beliefs."

9          MR. PALLAS:  You can put it anywhere, Judge.

10          THE COURT:  I don't have any problem with adding that.

11          MR. PALLAS:  The next one I have is page 3.  It's not

12    a big one, Judge, but you did not take judicial notice of

13    anything.  So I don't know if you want to keep that in there or

14    not.

15          THE COURT:  Does the government agree?  I don't

16    remember if I did or not.

17          MS. WAGNER:  Your Honor, we do not believe that you

18    took judicial notice, nor were there any stipulations reached

19    amongst the parties.  So we agree that that language could come

20    out.

21          THE COURT:  Then I'll take it out.  I don't

22    remember -- I don't try to remember things like that.

23          All right.  I'll take both out.  Did you have any

24    stipulations, do you remember?

25          MR. PALLAS:  Yeah.  There were no stipulations, Judge.

```
 1              The next one I have is page 5, under the weight of the
 2    evidence.  The very final paragraph, it says -- on page 5, it
 3    says the number of witnesses testifying for each side.  There
 4    was no witnesses testifying for our side, and I think it's
 5    improperly -- it doesn't shift the burden, but it kind of
 6    hints.
 7              THE COURT:  The whole paragraph could be deleted, I
 8    guess.  Right?
 9              MR. PALLAS:  Let's see.  Yeah, you might as well,
10    Judge.  It's burden of proof.
11              MS. WAGNER:  Your Honor, I think the second sentence
12    in that paragraph, starting "You should consider all facts and
13    circumstances in evidence to determine which of the witnesses
14    to believe."
15              THE COURT:  Well, that's covered by the general
16    credibility of witnesses.  I don't think that adds anything.
17              MR. PALLAS:  Next would be page 9, Counts 1, 3 and 4,
18    do not -- second paragraph -- I'm sorry.  Counts 1, 3 and 4,
19    "Do not charge the defendants Gregory Purdy and Robert Turner
20    with obstructing officers during a civil disorder."  Like I
21    said before, Robert Turner is only charged in one of those
22    counts.  I believe it's Count 4.  So I mean, I think -- you
23    know, I did try one of these cases with -- there were two
24    defendants, and it was separated more, each charge.  And I
25    think in this case, since Greg Purdy has two 111s and two 231s,
```

1 it's important to separate them, those two, because they're the
2 only two that are charged with 231s.
3          THE COURT:  I'm sorry.  I don't get your point.
4          MR. PALLAS:  Okay.  The point is that the second --
5          THE COURT:  It says 1 and 3 charges George [sic]
6 Purdy.
7          MR. PALLAS:  1, 3 and 4 also charges --
8          THE COURT:  The first paragraph says 1 and 3 charges
9 George [sic] Purdy with obstruction.
10          MR. PALLAS:  Yes.  Right.
11          THE COURT:  1, 3 and 4 charges George [sic] Purdy and
12 Robert Turner with attempt to obstruct.
13          MR. PALLAS:  No.  Robert Turner is not named in 1
14 or 3.  Robert Turner is only charged with civil disorder in
15 Count 4.
16          MS. WAGNER:  Your Honor, this is Lynnett from the
17 government.  The second paragraph should only refer to Count 4.
18 Mr. Pallas is correct.
19          THE COURT:  The second paragraph?
20          MS. WAGNER:  Correct.  The second paragraph, where it
21 charges both defendants with the 231 charge, that's only
22 Count 4.  So the aiding and abetting only applies to Count 4.
23          THE COURT:  So the words Count 1, 3 and 4 should be
24 changed to Count 4?
25          MS. WAGNER:  In the second paragraph, correct.

```
 1              THE COURT:  In the second paragraph.  And it only
 2    applies to Robert Turner?
 3              MS. WAGNER:  No.  It applies to both Gregory Richard
 4    Purdy, Jr. and Robert Turner.  Count 4 is both of them.
 5              THE COURT:  And Gregory Purdy, right?
 6              MR. PALLAS:  Right.  And, Judge, it's only -- it's
 7    only aiding and abetting.  It's not attempt.
 8              MS. WAGNER:  Your Honor, I believe that the attempt is
 9    just incorporated into the statute.
10              THE COURT:  Four is to attempt to commit obstruction.
11    So Robert Turner is not charged with obstructing; is that
12    correct?
13              MR. PALLAS:  No.  He's committed and attempted to
14    commit.  Okay.  Count 4 is okay as it is with -- with what the
15    government suggested, just taking out Greg Purdy.
16              Page 10, I had -- let's see.  What paragraph?  The
17    second-to-last paragraph.
18              THE COURT:  Okay.
19              MR. PALLAS:  It says, "For the United States Capitol
20    Police and Metropolitan Police Department on January 6, 2021,
21    the term official duties means policing the U.S. Capitol and
22    grounds and enforcing federal law and DC law in those areas."
23              Judge, that's not -- that's an invasion of the jury's
24    province.  That's something that the jury must find.
25              THE COURT:  Both Capitol Police and Metropolitan
```

1    Police testified to that.  I'll find that it's a proper

2    statement of the law.

3            MR. PALLAS:  Judge, the jury has to determine that.

4    You're directing them to find that.

5            THE COURT:  I can direct that.  Why would the jury

6    need to decide that?

7            MR. PALLAS:  Because 111 is assault on a federal

8    officer, but it also is assault -- it could be other people

9    that Capitol Police have --

10           THE COURT:  That request is untimely.  You should have

11   made that before trial.  I could research that.  I'm not going

12   to stop and research that now.

13           MR. PALLAS:  It's the statute, Judge, that's all.

14           THE COURT:  Tell it to the Court of Appeals.  Don't

15   tell it to me now.  You had weeks before trial to raise that

16   kind of issue.  I don't want to listen to that crap.

17           MR. PALLAS:  I'll move on, Judge.  Page 14.  It's the

18   same problem, Judge.  Counts 2, 5 and 6 are all blended

19   together with Purdy and Turner, Greg Purdy and Turner, and they

20   are listing as victims BB, AG, AS or CK.  Robert Turner is not

21   alleged to have any interaction with BB and AG.  And the 111

22   does isn't involve CK either, actually.

23           THE COURT:  Why are you just now telling me this?  Let

24   me get the government's response first.  You had weeks to do

25   this.

1          MR. McWATERS:  Your Honor, with regard to the initials

2     here, it is tricky because there are two separate -- or there

3     are three individual 111(a) charges in the indictment, two of

4     which are against Gregory Purdy and one of which is against

5     Robert Turner.  The elements for all three of them are the

6     same.  They're all 111(a)(1)s.  There's not a 111(b)

7     enhancement here that we're dealing with.  So the elements are

8     all the same.  The only difference is the initials that the

9     government used in the indictment to differentiate the

10    different counts, partially in response to the motion for bill

11    of particulars filed by the defense.

12          So, Your Honor, if you want to -- if you want to add a

13    sentence like specifically saying that "Gregory Purdy is

14    charged in Counts 2 and 5 with assaulting, resisting, or

15    impeding BB, AG or CK, and Robert Turner is solely charged in

16    Count 6 with assaulting Officer AS," that's fine with the

17    government if you want a small clarification.  I don't think we

18    need to repeat all of the instructions, though.

19          THE COURT:  How would we do it, then, if we changed

20    it?

21          MR. BARKET:  Judge, if I may, when I did a trial in

22    front of Judge Walton, he broke it down charge by charge.  I

23    took his instructions last night and just changed it, Count 1,

24    Count 2, Count 3.  The only -- the only -- and I could send

25    that to Your Honor.  I could send you Judge Walton's

1    instruction.  They break it down charge by charge by charge.

2    All the charges in that case were exactly the same with this

3    one.  The only one that's missing, the only instruction, is the

4    picketing and parading.  I didn't have an instruction on that.

5            THE COURT:  Right.

6            MR. BARKET:  I already updated it, and I'm happy to

7    send Your Honor both the updated ones and the Judge Walton's

8    original ones, just to make it easy.

9            THE COURT:  Okay.  All right.  What's next?

10           MR. PALLAS:  Also, the testimony came out that -- back

11   to that same paragraph, it says Officer AS, really, honestly,

12   wasn't --

13           THE COURT:  You don't need AS to testify to have the

14   instruction on AS.

15           MR. PALLAS:  Correct.

16           THE COURT:  There's plenty of evidence about what

17   happened.

18           MR. PALLAS:  But the jury needs to make a

19   determination whether AS is an officer, and nobody knew him.

20   He's dressed like an officer, but nobody said, oh, that's AS, I

21   know that guy.

22           THE COURT:  The officer next to him said he's an

23   officer.

24           MR. PALLAS:  Okay.  Didn't know him, but...

25           THE COURT:  If he's standing there in a uniform next

1    to this guy and they're fighting for their lives, he's an

2    officer to me.  I'm not going to play games with that nonsense.

3         MR. PALLAS:  Judge, page 17.  I think it's also the

4    same issue of putting --

5         THE COURT:  Can you tell me a reason why we're doing

6    this now when we didn't do this before trial?

7         MR. PALLAS:  I thought yesterday the government -- or

8    not yesterday, Friday --

9         THE COURT:  I sent these to you last week.

10        MR. PALLAS:  I know, Judge.  I had --

11        THE COURT:  Keep going.  I'm going to listen to you.

12        MR. McWATERS:  Real quick about -- Mr. Pallas, if your

13   objection is to the aiding and abetting under 111(a), that was

14   one of the things the government was going to raise.  That was

15   a relic from our original instruction when one was charged with

16   aiding and abetting.  Although technically aiding and abetting

17   is implicit in all federal crimes, we didn't specifically

18   allege it in the indictment and we're fine to take out aiding

19   and abetting for 111(a)(1), if that was your comment.

20        MR. PALLAS:  Yeah, that is.  Robert Turner is not

21   charged with Count 2 or Count 5.

22        THE COURT:  And the government is willing to take out

23   aiding and abetting?

24        MR. McWATERS:  We are, Your Honor, only for the

25   111(a)(1) charges.  We did include it in the indictment for

1    231(a)(3) and 1512(c)(2).

2            THE WITNESS:  All right.

3            MR. PALLAS:  Which we already discussed.

4            THE COURT:  That's on what pages?

5            MR. PALLAS:  Page 17.

6            THE COURT:  All right.  Next.

7            MR. PALLAS:  Judge, the only other thing I have was

8    there was -- the other ones we submitted, Your Honor, is

9    denying, just for the record.  We submitted some.

10           THE COURT:  I didn't understand the first one.  I

11   never knew what you were talking about.  Something with the red

12   book that you never told me it.

13           MR. PALLAS:  No, no.  No.  I had submitted some a

14   while back, before the first trial.  I think it was --

15           THE COURT:  I never saw anything you submitted.  I

16   have no defense proposal at all.

17           MR. PALLAS:  They were filed.

18           THE COURT:  I never saw anything.

19           MR. PALLAS:  It was a specific unanimity and it was

20   the Declaration of Independence.

21           THE COURT:  The Declaration of Independence.  Give me

22   a break.  That's frivolous.  I don't read crap like that.

23           MR. PALLAS:  I don't know about --

24           THE COURT:  Declaration of Independence, you think I'm

25   going to give to the jury?  That was so frivolous, I thought it

1    was a joke.

2            MR. PALLAS:  It's not a joke.

3            THE COURT:  That's a joke.  That's rejected as

4    frivolous.  I didn't think that was serious.

5            MR. PALLAS:  Judge, why would I file something that's

6    not serious?  Judge, seriously.

7            THE COURT:  With that, we're through.  You got

8    anything?

9            MR. BARKET:  Just the specific unanimity.  111(a) can

10   be violated in multiple ways.  It can either be violated by the

11   intent to commit another felony.

12           THE COURT:  Rejected.  What else you got?

13           MR. BARKET:  Just that.

14           MR. PALLAS:  1752.

15           MR. BARKET:  The 1752, yeah, the knowledge of the Vice

16   President or other protectee.

17           MR. PALLAS:  We did a special instruction --

18           THE COURT:  I have that in there.

19           MR. PALLAS:  I'm not sure how Your Honor falls on

20   that.  I know some judges require knowledge.

21           THE COURT:  I do.

22           MR. BARKET:  It says the defendant did so knowingly.

23           MR. PALLAS:  Yeah, we had done one.  We can submit it

24   and you can look at it, Judge, if you want.  It was something

25   that pretty much -- you know, because I raised that issue in

```
 1   one of the pretrial motions and you said that's a good point,

 2   but it's premature.  I had given it to the government.  I guess

 3   I didn't send it to your law clerk.

 4            MR. BARKET:  Do you want me to email --

 5            THE COURT:  Ms. Isaak?

 6            MS. ISAAK:  Nothing further.

 7            THE COURT:  How long do you all expect for your

 8   closing for the government?

 9            MR. McWATERS:  Your Honor, the government anticipates

10   approximately 30 minutes.  I would say, safe side, 30 to

11   40 minutes.

12            THE COURT:  And how long for your rebuttal?

13            MR. McWATERS:  Depends on how long defense goes.  With

14   three co-defendants, probably 10 to 15 minutes, I would

15   imagine.

16            THE COURT:  Okay.  Mr. Barket will go first.  How long

17   are you expecting?

18            MR. BARKET:  20 to 30 minutes, Your Honor.

19            THE COURT:  Okay.  Ms. Isaak?

20            MS. ISAAK:  Just depending on the arguments of

21   Mr. Barket, I would anticipate 10 to 15 minutes.

22            THE COURT:  Mr. Pallas?

23            MR. PALLAS:  Judge, what is expected of me?  I mean,

24   what do you expect -- how much do you expect me to use?  Equal

25   to what the government is using?
```

1          THE COURT:  Yeah.

2          MR. PALLAS:  I will be under that.  30 and then, what,

3    20, so it's 50?  Is that what you said?

4          THE COURT:  Okay.  So we'll see if we can finish by

5    lunch, and then I'll probably have to instruct after lunch,

6    depending on the timing.

7          Bring the jury.

8          MR. McWATERS:  Your Honor, before we bring the jury

9    in, we have one or two comments about the jury instructions

10   that we had, if that's okay.

11         THE COURT:  Wait a minute, then.

12         MS. WAGNER:  Thank you, Your Honor.  I think my page

13   numbers are accurate to the version the Court sent out.

14         And in particular, I think we've already talked about

15   some of them.  But in addition, I believe on page 11, where

16   we're talking about aiding and abetting the crime of

17   obstructing officers during a civil disorder.  At the end of

18   that paragraph, it references Count 1.  So I believe it's

19   paragraph -- page 11, the first paragraph under aiding and

20   abetting.  At the very bottom, it says "Count 1."  I believe

21   that should be Count 4.

22         THE COURT:  On page 11?

23         MS. WAGNER:  Yes.

24         THE COURT:  Okay.

25         MS. WAGNER:  On page -- again, on page 13, again, this

1    is kind of a conforming one.  Because Counts 1 and 3 are only

2    Gregory Purdy.  I would propose a sentence that a defendant may

3    be found guilty of the offense charged in Counts 1 and 3 if the

4    defendant committed the offense of obstructing officers during

5    a civil disorder.

6          And then the second sentence would stay the same,

7    except instead of saying Count 1, 3 or 4, I would just say 4 in

8    that second sentence.

9          On page 14, because we have now agreed to take out the

10   aiding and abetting, I would strike paragraph 2, which starts,

11   "Count 2 also charges the defendants with aiding and abetting."

12         THE COURT:  Okay.

13         MS. WAGNER:  And same sort of thing on page 16, under

14   the order of deliberations.

15         THE COURT:  On page?

16         MS. WAGNER:  16.  And at the end of the first

17   paragraph, it says "impeding officers."  I would strike "or

18   attempting" -- "and attempting others to do so."

19         THE COURT:  I didn't follow that.  16?

20         MS. WAGNER:  On page 16, under Order of Deliberations.

21         THE COURT:  Take out "or attempting"?

22         MS. WAGNER:  Yeah.  And that also appears in the

23   second paragraph.

24         THE COURT:  So end it with "impeding officers"?

25         MS. WAGNER:  Yes.  And same thing in that next

1    paragraph, in the first sentence after "impeding officers."

2              THE COURT:  Attempting or aiding and abetting?

3              MS. WAGNER:  Yes, because attempting is already in the

4    definition, so.

5              THE COURT:  Okay.

6              MS. WAGNER:  And then one last one thing.

7              THE COURT:  Okay.  And all of 17 is out.  Okay.

8              MS. WAGNER:  Yeah.  On page 26, the definition of the

9    Capitol grounds, the government has introduced evidence through

10   Exhibit No. 220 of the area, so the very last sentence in that

11   definition of Capitol grounds, I would suggest that it reads,

12   "The Capitol grounds includes the area depicted in Government's

13   Exhibit No. 220."

14             MR. PALLAS:  Judge, I'm going to object to that.

15   That's something the jury needs to decide.  There's -- a piece

16   of evidence is submitted and the jury looks at it, and they can

17   accept it or reject it.  They're telling the jury that they

18   have to accept that.

19             THE COURT:  This is all right like it is.

20             MS. WAGNER:  And on 31, there's some language about

21   sending some evidence back to the jury.  We don't have any of

22   that contraband of weapons, ammunitions, drugs.  So I assume

23   that will all be stricken.

24             THE COURT:  That can come out.

25             MS. WAGNER:  Yeah, that will come out.  Thank you,

1    Your Honor.

2           THE COURT:  Okay.

3           MR. BARKET:  Judge, briefly, Exhibit 220 is totally

4    different than what was presented through Mendoza with the red

5    line.  It includes areas on the street, Capitol Circle, and

6    Capitol Circle was not closed -- or Peace Circle, I'm sorry.

7    The other thing, just a question for me, Judge --

8           THE COURT:  What did you say?

9           MR. BARKET:  Exhibit 220 that Ms. Wagner just

10   proposed --

11          THE COURT:  I just said I'm going to give it like it

12   is.

13          MR. BARKET:  I would like a final copy of the

14   instructions before closing to read to the jury.

15          THE COURT:  You just made too many changes.  You're

16   not going to get it before closings unless you want to take it

17   the way it is.  You're the ones who brought up the last-minute

18   changes.

19          MR. BARKET:  I mean, we only got them on Tuesday,

20   Judge.

21          THE COURT:  You got them on Tuesday from me, and you

22   did nothing until this morning.

23          MR. BARKET:  I was not sure when we were supposed to

24   bring it up.

25          THE COURT:  I told you what I granted and not granted.

1    You didn't mark them yourself.  Sit down.

2            Bring the jury.

3            MR. McWATERS:  It has nothing to do with jury

4    instructions.  It's something I'd like to raise with Your Honor

5    before closing.

6            Your Honor, in openings, the defendants made a lot of

7    claims that the government believes were not -- did not end up

8    coming into evidence, and some of the statements made by

9    defense counsel in openings, the government believes were

10   improper, including the fact that Ms. Isaak did make a comment

11   about the fact that her defendant was not charged with

12   misdemeanors.  Obviously, Your Honor knows that the severity of

13   the crime is not relevant to the jury's determination of

14   innocence or guilt.  I bring it up again because Ms. Isaak

15   again made a comment about the two charges that her client is

16   charged with.

17           Obviously, I know it's not my practice, I'm sure it's

18   not Your Honor's practice, for parties to be objecting during

19   closing.  But if Ms. Isaak makes a comment about the severity

20   or the punishment of her client, the government will be

21   objecting.  So I wanted to let Your Honor know that.  It's

22   something the government noticed.

23           In particularly with regard to just evidence that did

24   and did not come in, if defendants make comments about evidence

25   that did not come in that they promised in opening, the

1   government will object because, again, that will be improper

2   closing argument.

3          MR. BARKET:  One more thing, to put it on the record.

4   I know Mr. Pallas already said it.  But I'm just a little

5   concerned about the 111(a) instruction because one of the 111s

6   just alleges Officers BB and AG, another one alleges

7   Officer CK.  The way that the instruction reads, the jury could

8   find that by allegedly assaulting Officer CK, he is guilty of

9   the charge that only alleges BB and AG, because it clumps all

10  four of the officers listed together.  So I just wanted to put

11  that on the record.  You know, it's a little concerning because

12  all four of the officers are listed together.  So -- and the

13  indictment only charges two officers for one count, two

14  officers for the other, so I'm just concerned that the jury is

15  going to say, well, if he assaulted CK, he's also guilty of the

16  BB count.

17         THE COURT:  Bring the jury.

18     (Jury present)

19         THE COURT:  You may be seated.

20         All right.  Any evidence for the defendant?

21         Gregory Purdy, Mr. Barket?

22         MR. BARKET:  No, Your Honor.  The defendant rests.

23         THE COURT:  For Matthew Purdy?

24         MS. ISAAK:  No, Your Honor.  Mr. Purdy rests.

25         THE COURT:  For Robert Turner, Mr. Pallas?

```
 1            MR. PALLAS:  No, Your Honor.  Robert Turner rests.
 2            THE COURT:  All right.  Ladies and gentlemen, the
 3    evidence is now closed.  So both sides having rested, we'll go
 4    to the closing arguments at this time.  The government will
 5    proceed first.  Each defendant will have an opportunity to
 6    argue, and then the government gets the last chance to speak in
 7    rebuttal before I give you my final instructions on the law.
 8            This will take a while, so we'll probably try to get
 9    through the closings before we break for lunch.  I probably
10    have to read you my instructions after the lunch, so you
11    probably can't start talking about the case until after I've
12    read you my instructions.
13            The government may proceed first.  Mr. McWaters.
14            MR. McWATERS:  Unjustified, unpatriotic, and
15    undeniably unlawful.  There is no justification for what the
16    defendants did on January 6, 2021.  They were not patriots and
17    they were not patriotic.  They were not there to uphold the
18    Constitution; quite the opposite.
19            Their unlawful acts against police contributed to
20    perhaps the greatest strain on our Constitution in over
21    100 years.  When the defendants, Gregory Purdy, Matthew Purdy,
22    and Robert Turner made their way onto Capitol grounds, they
23    weren't going to let Congress certify what they thought was a
24    stolen election.  Greg Purdy, for one, was spoiling for a
25    fight, and a fight is what they got.
```

1        (Video playing in open court.)

2        MR. McWATERS:  They arrived on Capitol grounds

3   sometime before 2:00 p.m. and immediately confronted MPD

4   officers who had just responded to a 1033, which you learned

5   over the past week means responding to an officer in distress.

6        You watched the video.  The defendants pushed through

7   those police on their way trying to get closer to the Capitol

8   building.  They pushed their way to the front of the crowd

9   before they confronted the officers.  They weren't pushed and

10  they weren't forced there.  Under their own action, they made

11  it to the front of the crowd because that's where they wanted

12  to be.

13       Almost as soon as Gregory Purdy first confronted

14  officers, he assaulted them.  He yelled at them, asking them to

15  stand down, to uphold the Constitution.  In the background, you

16  can also hear Robert Turner making similar comments.  When they

17  didn't do what he wanted them to do, he pushed through them.

18  You heard Officer Gbatu testified that he lowered his shoulder

19  and pushed into him so he could get to where he wanted to go.

20       Then as they got closer to the Capitol, they went up

21  the northwest stairs, through an active construction site, and

22  made it again where they were stopped by police, and once

23  again, all three defendants pushed to the front of the line for

24  the second time that day.  They were stopped by bike racks and

25  Capitol police officers who were standing in their way.  And,

1  again, they asked officers to stand down, but the officers

2  didn't stand down.  So what did they do?

3      Gregory Purdy again took actions into his own hands,

4  literally, and pushed the bike rack over that you heard Special

5  Agent Tuttle testify was the literal last line of defense in

6  that area before they could make it into the -- before the

7  rioters were able to make it into the Capitol building.

8      He felt justified and he thought that he was upholding

9  the Constitution, and now you get to decide whether that's what

10  he was doing.

11      For their conduct on January 6, 2021, at the United

12  States Capitol building and grounds, the defendants are facing

13  13 counts of violating federal laws.  The first six counts all

14  charge Gregory Purdy and Robert Turner with violations of both

15  interfering with police during civil disorder and assaulting,

16  resisting, or impeding certain officers.

17      Counts 1 and 2 address Gregory Purdy's actions on the

18  west lawn at the bottom of the northwest stairs when they first

19  got onto Capitol grounds and confronted MPD officers, including

20  Officers Alphonso Gbatu and Brandon Brian.  The charges here

21  are civil disorder, which I'll explain what the different

22  elements are here in a minute.  But civil disorder basically

23  means that they interfered with officers lawfully performing

24  their duties during the course of a civil disorder and where a

25  couple of other elements are met.  And, again, I'll address

1    those in a second.  That's one part of Gregory Purdy's conduct

2    there.

3         The second part is the actual assault, resisting or

4    impeding.  The statutory language is a little more broad.  It's

5    assaulting, resisting, opposing, or intimidating or interfering

6    with a police officer.  It can be any of those verbs.  But

7    that's for Gregory Purdy's first two counts.

8         The next count is another civil disorder charge,

9    violation of civil disorder for Gregory Purdy for his actions

10   at around 2:10, 2:11 at the top of the northwest stairs when he

11   pushed the bike rack over and interfered with the Capitol

12   Police being able to protect the Capitol building.

13        Counts 4, 5 and 6 address the conducts by the

14   defendant on the upper west terrace when MPD had formed a line

15   at around 3:30 to protect the building from the rioters at that

16   point.

17        Count 4 is again another violation of civil disorder,

18   this time by both Gregory Purdy and Robert Turner for their

19   interactions in trying to charge through the police line.  And

20   then they're both charged separately for their individual

21   assaults on Officers Christopher Kurland and Officer Smith.

22        The next group of charges that the defendants are

23   facing, particularly Gregory Purdy and Robert Turner, are

24   Counts 7, 10, and 12 for their interactions on Capitol grounds.

25        10 and 12 are for engaging in physical violence, acts

1    of violence in the restricted area.  So that is both being in

2    the restricted area, because it was -- you heard testimony

3    about how it was restricted for the Vice President being there,

4    and then also committing acts of violence on Capitol grounds.

5         Count 7 is a little bit different.  Count 7 charges

6    the defendants with their acts for their intention of trying to

7    stop the certification process, which was the electoral ballot

8    vote count that was occurring on January 6th.

9         Finally, the last four charges that are addressed

10   against all three defendants is Counts 8, 9, 11, and 13, which

11   generally correspond with trespassing and conduct within

12   restricted building or grounds.

13        For you to find them guilty, the government has to

14   prove that certain elements for each crimes were met, and these

15   elements are just a list of requirements for certain acts and

16   including an intent or state of mind, and you will hear more

17   about these from the judge when he reads you the instructions,

18   most likely after lunch.  But I'm going to go over them

19   briefly, the counts and the elements, and what evidence you

20   should use in determining whether or not the government has met

21   its burden and proved these elements beyond a reasonable doubt,

22   and whether or not the defendants, Gregory Purdy,

23   Matthew Purdy, Robert Turner committed the acts that the

24   government has alleged.

25        Over the course of this trial, the government has

proven beyond a reasonable doubt that the defendants both committed the necessary acts and had the necessary intent for you to find them guilty on all counts.

You heard Officer Gbatu say that Greg lowered his shoulder and rammed him.  Meanwhile, you saw that Matthew Purdy and Robert Turner were a part of that crowd that pushed past them and out of their way so they could get through to the northwest stairs and gain access to the building.

As part of what the government has to prove in order to show that the defendants violated Counts 1, 3 and 4, and Counts 2, 5 and 6, and I'm going to go through them chronologically, but before I go through them chronologically, I just want to show you what the elements are going to be for these different crimes, because they're the same for the civil disorder and for the 111(a).

So the first element that you will need to look for in determining whether or not the defendants committed a violation of 18 U.S.C. 231(a)(3), which is a violation of civil disorder, is whether the defendants knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

At the time of the defendants' act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

And finally, a civil disorder, the civil disorder has

1    to in any way or degree obstruct, delay or adversely affect

2    commerce or the movement of any article or commodity in

3    commerce or the conduct or performance of any federally

4    protected function.  That's a lot of legal jargon and the judge

5    will give you instructions and definitions on that.  But

6    particularly with that third element, simply the government has

7    to show that the civil disorder that occurred, which would be

8    the riot at the Capitol on January 6th, somehow adversely

9    affected commerce that day.

10            You might recall -- I'll address this now -- when

11    Special Agent Jeng was testifying, the government introduced

12    exhibits of evidence of Safeway's business on January 6th,

13    January 5th, and January 7th.  We didn't go over them at the

14    time.  It's something for you guys to look back when you do

15    your deliberations.  But essentially what you will see is that

16    Safeway had to close down and their sales were adversely

17    affected on January 6th.  That's enough for the government to

18    meet this element.

19            There's a second way that the government can meet this

20    third element, and that is that the civil disorder in any way

21    obstructed the conduct or performance of any federally

22    protected function.  You also heard testimony from multiple

23    different witnesses, including Inspector Mendoza, Special Agent

24    Glavey, and Officer Mark Gazelle that a federally protected

25    function, their job to protect the Vice President and the

1  Capitol buildings and grounds respectively, and that the civil

2  disorder did make it harder and interfered with them to be able

3  to perform that federally protected function.

4        So those are Counts 1, 3 and 4.  They are the same

5  elements for all three counts.

6        Moving to Counts 2, 5 and 6, which are the assaulting,

7  resisting, or impeding certain officer counts.  A lot of times

8  the government will refer to these, and the defense may even

9  refer to these colloquially, as assault charges.  But there's

10  more different verbs that you can find that the defendants'

11  acts fulfilled in order to find them guilty of these charges.

12        So the first element here is that the defendant

13  assaulted, resisted, opposed, impeded, intimidated or

14  interfered with officers from the Metropolitan Police

15  Department.  You might recall me asking Officer Gbatu on

16  redirect whether or not the actions that the defendant

17  Gregory Purdy took against him assaulted, resisted, impeded,

18  opposed or intimidated or interfered with his ability, and he

19  answered yes.

20        The second element is that the defendant did such acts

21  forcibly.  They have to use some level of force in order to

22  fulfill this element.

23        The third is that the defendant did such acts

24  voluntarily and intentionally.

25        Fourth, that the officers were assisting officers of

1    the United States who were then engaged in the performance of

2    their official duties.  I'll address this element here as well,

3    because you heard testimony that both MPD responded to calls

4    from Capitol Police, which means they were assisting federal

5    officers, which you heard Capitol Police falls under that

6    definition.  You heard testimony to that effect.

7            And finally, the defendant acted with the intent to

8    commit another felony or made -- it's left off here, but or

9    made physical contact with the officers.  Here, for the purpose

10   of this element, another felony can refer to Counts 1, 3 and 4.

11           Now, I think there has been a lot made over the course

12   of this trial about what the definition of an assault is.  So

13   again, you will hear more from the judge about this in the

14   instruction.  But this is the definition of an assault.  It

15   means that the victim suffered some kind of injury.  An injury

16   means any physical injury, however small, including a touching

17   offensive to a person of reasonable sensibility.

18           So if you find that what the defendants did to the

19   officers contacted an offense of touching on those officers,

20   that is enough to find that they committed an assault.  But

21   again, it could be an assault or opposing, resisting, or

22   impeding, any of these verbs.  Doesn't have to be assault, and

23   can be any of those individual verbs.

24           Let's talk a little bit about the actual crimes and

25   walk you through how the government has met each of these

1    elements.  I know there's a lot of elements here and there's a

2    few different crimes, but the defendants were very busy on

3    January 6th.  We want to make sure that we hold them

4    accountable for all of their actions that day.

5         We'll start off around 2:00 on the west lawn, what's

6    known as the west lawn of the Capitol building, on that circle

7    area.  That's where, if you recall, where Officer Gbatu,

8    Officer Brian, and the other members of the CDU 42 platoon

9    responded when they got the call to go to Capitol grounds that

10   day and aid Capitol Police in defending the Capitol.

11        When they got there, you heard Officer Gbatu talk

12   about how he saw a lot of people and that their platoon was

13   greatly outnumbered.  They tried to get through the crowd, but

14   were unable to because the crowd was hostile and was not

15   friendly to them, didn't want them there, including the

16   defendants.

17        This is from Exhibit No. 601.3, which is

18   Officer Gbatu's body-worn camera.  We'll watch this here for a

19   few seconds and see exactly how the defendants got to the front

20   of the line and then what they did once they were there.

21        (Video playing in open court.)

22        MR. McWATERS:  "I'm sorry I have to do this."  That's

23   what Gregory Purdy said as he was pushing and shoving

24   Officer Gbatu out of his way so he could get closer to the

25   Capitol building.

1          Does that excuse his conduct on January 6th, the fact

2    that he apologized to the officer as he assaulted him and as he

3    pushed through him?

4          Let's take a look at that same interaction again.

5    This all relates to Counts 1 and 2 with regard to what

6    Gregory Purdy did on January 6th.  This is from Officer

7    Brandon Brian's body-worn camera.  You saw this when

8    Officer Gbatu testified.  This is Exhibit No. 602.2.  It's a

9    different angle.  You get a better angle of what Gregory Purdy

10   actually did when he pushed into the officers.

11          (Video playing in open court.)

12          MR. McWATERS:  You can see it here.  If you recall,

13   Officer Gbatu testifying that Gregory Purdy lowered his

14   shoulder and pushed into the officers in order to get through

15   them.  You don't do that if you're being peaceful.  You do that

16   if you're trying to get to an objective, get past these

17   officers that were defending the Capitol, that were there to

18   help the Capitol Police defend that building.

19          Once they achieved their first goal, the defendants

20   joined with the rioters who confronted Capitol police officers

21   on the northwest stairs.  This is getting into Count 3, which

22   is where you heard testimony from Special Agent Tuttle, who was

23   on that landing, that second -- that first landing right there,

24   and then had to retreat upwards after -- after the rioters

25   pushed them back.  You heard Agent Tuttle say that every member

1    of that crowd pushing up the stairs was a threat to them and

2    contributed to their retreat, including the defendants Robert

3    Turner and Gregory Purdy and Matthew Purdy.

4          Here again, Greg Purdy confronted officers and told

5    them to stand down.  You can also hear, if you listen in the

6    background, Robert Turner yelling and screaming at Capitol

7    police officers to stop, stop following orders.  Here again,

8    the police did not back down and did not give in.

9          For the second time that day, all three defendants

10   made it close to the front of the line, right up against

11   officers, and tried to push through.

12         Again, as I said earlier, Gregory Purdy took matters

13   into his own hands and pushed the bike rack over, the literal

14   last line of defense.

15         (Video playing in open court.)

16         MR. McWATERS:  Triumphant, the defendants celebrated,

17   fist bumped other rioters.  You can hear Gregory Purdy making a

18   comment about how they stormed through the second wave.  They

19   did this so they could gain entry into the Capitol building.

20         I'm going to skip a little bit ahead in time to 3:30,

21   which is the third area of confrontation between, here, Gregory

22   Purdy and Robert Turner and MPD officers, which brings us to

23   the upper west terrace, like I said, at around 3:30.  And this

24   goes to Count 4, which is, again, that civil disorder charge,

25   that they interfered with police officers during the course of

1    a civil disorder as they were lawfully performing their duties.

2          We're going to watch here Exhibit No. 511.2, which

3    shows the perspective from the crowd when Gregory Purdy and

4    Robert Turner rushed through the line after his countdown.

5          (Video playing in open court.)

6          MR. McWATERS:  If you notice on this video, the person

7    recording the video is standing at least a dozen feet away from

8    Gregory Purdy as he's shouting, and yet over the din of the

9    crowd, you heard Officer Kurland and Officer Mott testify to

10   the scene that they experienced when they were at the Capitol,

11   at the upper west terrace.  The din of the noise of the crowd,

12   you can hear Gregory Purdy's voice shouting down a countdown

13   before they rush into the line of officers.

14         What's the point of that, other than to get the crowd

15   to push forward into the officers so they can get through,

16   again, to their objective, and at this point the second time,

17   to get into the Capitol building.

18         Gregory Purdy and Robert Turner both here interfered

19   with and opposed police officers who were trying to do their

20   job in protecting the Capitol building.  Gregory Purdy and

21   Robert Turner would not let them do it.

22         Count 5, like I said, specifically deals with

23   Gregory Purdy's interactions with an assault on Officer

24   Christopher Kurland, again, here at 3:30.  Let's watch as

25   Gregory Purdy counts down, from Officer Kurland's perspective,

1    and charges into him.

2              (Video playing in open court.)

3              MR. McWATERS:  I believe during opening for the

4    defendant, Mr. Barket said that Mr. Purdy rushed the line like

5    a football player.  I think that's a pretty apt description for

6    what he did.  He pushed into Officer Kurland.  You heard

7    Officer Kurland's own testimony saying he was surprised and

8    staggered by Gregory Purdy's attack, that he was able to push

9    past him and again through the police line as you just saw.

10             We're now going to watch a slightly different

11   perspective from a body-worn camera that shows -- I believe

12   this is from Officer Mott's body-worn camera.  This is

13   Exhibit 604.6, and this shows Officer Mott's perspective of

14   both Gregory Purdy running into Officer Kurland and then also

15   Robert Turner following after him and assaulting Officer Smith.

16             (Video playing in open court.)

17             MR. McWATERS:  I think the video speaks for itself.

18             So again, we spent a lot of time going over the acts

19   of the defendants and -- and we went through, before, we looked

20   at that video of the elements.  I know we spent a lot of time,

21   but the government has to prove beyond a reasonable doubt each

22   of these elements was met.

23             So let's look at Counts 1, 3 and 4.  The defendant

24   knowingly committed an act with the intended purpose of

25   obstructing, impeding or interfering with one or more law

1    enforcement officers.

2              Again, to recap, Count 1 is when Gregory Purdy

3    interfered with MPD officers at the bottom of the west plaza

4    and the west lawn.

5              Count 3 is when Gregory Purdy pushed the bike rack

6    over.

7              And Count 4 is for his actions in impeding the MPD

8    line on the upper west terrace.

9              You can see, based on his actions, that clearly his

10   intent and his -- he knew what he was doing, that he was trying

11   to interfere with one or more law enforcement officers.  The

12   government has proven that element.

13             Second, at the time of the defendants' act, the law

14   enforcement officers were engaged in the lawful performance of

15   their official duties incident to and during a civil disorder.

16   You heard testimony from Officer Gbatu, from Inspector Mendoza,

17   from Officer Kurland, all of the different officers who were

18   there on January 6th.  You heard testimony from them, talking

19   about how what they were doing was the lawful performance of

20   their duties and that there was a civil disorder happening

21   around them.  The government has met this element, again, for

22   Counts 1, 3 and 4.

23             Finally, that the civil disorder in any way or degree

24   obstructed, delayed or adversely affected commerce or the

25   movement of any article or commodity in commerce in the conduct

1    or performance of any federally protected function.

2          Again, I'll just point you back to those Safeway

3    records that I believe are Government Exhibits 1001 through

4    1003.  And you can look at them for yourself and you can see

5    how commerce was affected on January 6th.  But then more

6    importantly, beyond that, and in addition to it, you can find

7    that federally protected function was obstructed and that the

8    conduct or performance of any federally protected function was

9    adversely affected.  And here, that is both the Capitol Police

10   protection of the Capitol building and Secret Service

11   protection of the Vice President.

12         So the government has met all three elements required

13   to prove that Gregory Purdy and Robert Turner are guilty of

14   civil disorder.

15         Moving on to Counts 2, 5 and 6, assaulting, resisting,

16   or impeding certain officers.  Here you have to find, first,

17   that the defendant assaulted, resisted, opposed, impeded,

18   intimidated or interfered with officers from Metropolitan

19   Police Department.  Again, watch the video.  You have heard the

20   testimony.  You have seen that the defendants clearly pushed

21   past officers, at the very least interfered with them and

22   opposed them and resisted them, if not outright assaulted them,

23   pushing into police officers multiple times.

24         Importantly here, the government doesn't have to prove

25   that bodily injury occurred, other than for assault.  But,

again, it doesn't have to be a like a scratch or a stab wound
or anything.  It can be something as simple as an offensive
touching.

Second, the defendant did such acts forcibly.  Again,
you heard the testimony.  You saw the video.  There was force
behind the acts that Gregory Purdy and Robert Turner took on
January 6th.

Third, that the defendants did such actions
voluntarily and intentionally.  There is no other explanation
for what you saw them do that day, particularly with
Gregory Purdy's interactions, and also Robert Turner's.  They
put themselves at the front of the line and then they charged
into officers of their own free will.

The officers were assisting officers.  The officers
who were victims were assisting officers of the United States
who were engaged in the performance of official duties.  We've
been over that.

And then finally, that the defendant acted with the
intent to commit another felony.  And, again, it's left off
here, but you'll hear the judge talk about it in his
instructions.  They can also make physical contact with the
victim.  It's either/or.  It doesn't have to be both.

And here, the other felony is the commission of a
civil disorder, which would be interfering with police or,
again, just simply making physical contact with the victims,

1   which Gregory Purdy and Robert Turner both did to their

2   respective victims in Counts 2, 5 and 6.

3          So we're moving away from the physical assault charges

4   and the civil disorder charges, and we're now going to move to

5   Count 7, which is the obstruction of an official proceeding.

6   This count charges both Gregory Purdy and Robert Turner with

7   either succeeding or attempting to obstruct the official

8   proceeding on January 6th, which was the vote count and the

9   certification of the electoral vote count as it relates to the

10  2020 election.

11         Here, the government has to prove four elements; that

12  the defendant attempted to or did obstruct an official

13  proceeding, the defendant acted with the intent to obstruct or

14  impede the proceeding, the defendants acted knowingly, meaning

15  they were aware that the natural and probable effect of their

16  conduct would be to obstruct or impede the official

17  proceedings, and that the defendants acted corruptly.

18         I'll address each of these.

19         The first one, that the official proceeding was

20  obstructed.  Well, you heard testimony from Officer Gazelle

21  that there was an official proceeding going on that day, and

22  you saw the video and, again, heard his testimony that the

23  official proceeding was obstructed.

24         These are all -- just what I'm showing you now are

25  sections and screen shots from the Congressional Record that

1   day and the concurrent resolutions that were passed to prove --

2   these are all in the government's Exhibits 700, 701 through

3   709, I believe, which shows what happened on January 6th and

4   the fact that it was an official proceeding and that it was

5   stopped at some point by the actions of the riot as they

6   entered into the Capitol building and caused those breaches.

7        As you heard, Agent Glavey was there and Inspector

8   Mendoza and Mark Gazelle, that when these individuals,

9   including the defendants here, were inside the Capitol

10  building, that official proceeding could not go on.  And it was

11  not contemplated in the Constitution.  It was not contemplated

12  in U.S. Code.  They had to stop it because of them being in

13  there because they were a security threat.  You heard Officer

14  Gazelle say that when this was going on in the restricted area,

15  the official proceeding could not go on.

16       Now, again, in order to prove that the defendants are

17  guilty of this, we have to also show you evidence that they

18  knew that it was going on and what they were trying to do.

19       You heard already, even the videos I've shown with

20  regard to earlier counts, the words that Gregory Purdy and

21  Robert Turner were saying with regard to standing down.  Don't

22  follow -- "You have to follow the Constitution."  They knew

23  that this process was happening and they were going in there

24  because they did not want the 2020 election, what they believed

25  to be a stolen election, to be certified in President Biden's

1    favor.  This is Government's 411.1, which is a video that you

2    heard introduced from Special Agent Jeng, which is from

3    Gregory Purdy's Instagram.

4             (Video playing in open court.)

5             MR. McWATERS:  "We're not letting this steal happen."

6    And they tried.  They tried their hardest to make sure that

7    that steal didn't happen.  So intent.  They wanted to stop the

8    steal.

9             (Video playing in open court.)

10            MR. McWATERS:  "This is our last shot."  They knew

11   what was happening in the Capitol that day on January 6th --

12            MR. PALLAS:  Objection, Your Honor, as to "they."

13            THE COURT:  Overruled.

14            MR. McWATERS:  Robert Turner and Gregory Purdy knew

15   what was happening in the Capitol that day, and they thought

16   that it was their last shot at stopping the steal and saving

17   their country.

18            This is Government's Exhibit 44 -- I'm sorry, 442.1.

19   Basically talks about how -- and, again, you can go back and

20   look at it yourself.  But Gregory Purdy is responding to

21   someone else, talking about how "Well, they certified the

22   election anyway."  So Gregory Purdy again acknowledging what he

23   was there to do.  He thought that he was trying to do his duty

24   and do what he could do to stop that certification from

25   occurring.

1          Again, more evidence of what Gregory Purdy was trying

2   to do.  This is Government's Exhibit No. 440.1, again, from his

3   Instagram account, talking about what he did and what he was

4   trying to do that day.

5          Finally, Exhibit No. 431.1, this is from that audio

6   recording, if you recall, that got in through Special Agent

7   Jeng.  I'm saying that he -- that Greg Purdy's saying, "We

8   didn't care if we had to sleep there in order for these

9   congressmen to make the right decision."

10         So that's their intent.  The government also has to

11  prove they were doing these things knowingly.  This is

12  Government Exhibit -- a still from Government's Exhibit 303.9,

13  and it shows Gregory Purdy watching on the outside of the

14  Senate wing door as rioters were breaking in.  This is mere

15  seconds before Greg Purdy, Robert Turner, and Matthew Purdy all

16  entered the Senate wing door through the broken window that had

17  just been broken, again, but a minute before they entered the

18  building.

19         This is Government's Exhibit 438.1, and this is from

20  Robert Turner's Instagram account, where he is discussing with

21  another individual the fact that they got to the Capitol

22  building, that they went inside the Capitol building, and that

23  it was crazy.  Again, they knew what they were doing, they knew

24  what they were there to do, and that they wanted to try to stop

25  the certification.

1          The government also has to prove that they acted
2    corruptly.  Again, here the defendants, before they even got to
3    the Capitol building, they had to get through layers of
4    protection and officers, and forced their way through.  That is
5    corruptly.  You'll hear instructions again from the judge on
6    exactly what that means, but the defendants' actions solely
7    here is enough to prove that they acted corruptly and with
8    corrupt intent.
9          So again, the government has proven all four of these
10   elements beyond a reasonable doubt, that Gregory Purdy and
11   Robert Turner were trying to obstruct the official proceeding
12   that was going on at the Capitol on January 6th.
13         Now, the government, at this point I'm going to turn
14   to the remaining charges facing both Gregory Purdy and
15   Robert Turner with regard to acts of physical violence on the
16   Capitol, but then also their entering and remaining into
17   restricted areas and being in the Capitol building, doing
18   things there they shouldn't have been doing.
19         And this starts off with them going into the Senate
20   wing door, or coming up the stairs and then going into the
21   Senate wing door.  This right here, you heard testimony this
22   area is a restricted area.  You can see police guarding it and
23   the crowd pushing those police back.  You heard testimony from
24   Special Agent Tuttle that every member of that crowd was
25   instrumental in pushing them back and them losing their

1    defensive positions on the west stairs and on the west side of

2    the Capitol building.

3            Again, this is Government's Exhibit 303.9, and it

4    shows the moment when the rioters first entered into the

5    building and shows the rioters opening the door, and then a few

6    moments later it shows Gregory Purdy, Matthew Purdy, and

7    Robert Turner entering the building.

8            Now, the question that the government -- one of the

9    things the government does have to prove is how they knew that

10   they weren't supposed to be there.  Let's start off and say

11   that from the beginning, let's give them the benefit of the

12   doubt, that they didn't see the hundreds of "area closed" signs

13   and bike racks and snow fencing that were on the west side of

14   the Capitol as you heard Inspector Mendoza and Officer Gazelle

15   talk about, that the whole area was closed off.  Even if they

16   got there after the initial breach, you heard Inspector Mendoza

17   say that -- I believe something to her words was that you would

18   have to be out of your right mind to not realize the area was

19   closed and restricted, and that even when the barricades and

20   signs were pushed over by the rioters, they still remain there

21   on the ground, you have to step over them in order to get into

22   the Capitol building.

23           Let's say that they didn't see that.  Let's say that

24   they also walked past the second layer of snow fencing that you

25   heard Inspector Mendoza talk about and that they get to --

1    2 o'clock, they get to that west front and they still don't
2    realize they're not supposed to be there.  They interact with
3    Officer Gbatu and Officer Brian.  They knew that police were on
4    the scene, trying to reclaim some semblance of a line, trying
5    to protect the Capitol building.  You even heard Greg and
6    Robert say, "Stop following orders, stand down," the orders
7    they knew to be to keep the rioters out of the Capitol
8    building.  So what did the defendants want them to stop doing,
9    other than keep them out of the Capitol?
10            But let's say again that at this point they still
11    didn't realize that that was a restricted area or that they
12    weren't supposed to be there.  So they keep going and they go
13    to the northwest stairs, as we just saw, and they push past the
14    officers there.  Not only do they push -- does that crowd push
15    the officers up from that first landing up to the top of the
16    northwest stairs, but Gregory Purdy, Robert Turner, and
17    Matthew Purdy all make it to the front of that line and they
18    see the bike racks there and see the Capitol Police standing in
19    front them.  If you look in that video, when they first get
20    there, there's no rioters behind them.  So they know that that
21    area is closed off and that police are there protecting it.
22    And they push past them at that point.
23            Let's say, again, that at that point they still didn't
24    realize that they weren't supposed to be there.  When they get
25    to the Senate wing door and they see the windows broken in and

1  the door broken open -- and, again, you can see all three

2  defendants at this point on the video are very close together.

3  And, again, I'll point you to the bottom right hand of the

4  screen.  You can see Gregory Purdy looking through that broken

5  window as it's being broken.  Let's say they didn't see the

6  fences.  Let say they didn't realize why MPD were there.  Let's

7  say they didn't know that the bike racks were being used by

8  Capitol Police to stop them from getting closer to the Capitol.

9  By this point, they see the broken windows, and you saw the

10  video that they heard the alarm going off inside.  At this

11  point, they knew that this was a restricted area and that they

12  weren't allowed inside this building, and they knew that this

13  building was being breached.

14       So Count 8, entering and remaining in a restricted

15  building or grounds.  I'm going to run through the elements

16  very quickly here, and I promise we're almost finished.

17       The defendants entered or remained in a restricted

18  building or grounds.  The defendants did so without lawful

19  authority.  And the defendants entered or remained knowingly.

20  Again, we've gone through each of these elements.  There's no

21  way that the defendants made it to the Capitol building and did

22  not know that they were not supposed to be there, did not know

23  that they were -- that the area was restricted.

24       The judge also, on this count and some other counts

25  that I'll go through, there's an additional element that the

1    defendants had to know why the area was closed off.  Again, you

2    heard testimony from -- you heard testimony from Glavey and, I

3    believe, Inspector Mendoza that it was general -- public

4    knowledge that the Vice President was there that day.  You saw

5    video of them standing next to rioters that -- asking where

6    Pence was.  And then you also saw video from Greg Purdy's own

7    Instagram account where they were you talking about listening

8    to Trump's speech and that he called out Vice President Pence

9    and that they knew what Pence's role was in the Capitol and

10   what he was doing there and that he would be there.

11           Count 9, disorderly and disruptive conduct in a

12   restricted building or grounds.  The defendants engaged in

13   disorderly or disruptive conduct in or in proximity to a

14   restricted building or grounds.  The defendant did so knowingly

15   with the intent to impede or disrupt the orderly conduct of

16   government business or official functions.  And the defendants'

17   conduct occurred when or so that their conduct, in fact,

18   impeded or disrupted the orderly conduct of government business

19   or official functions.

20           Again, this is slightly different from the one before,

21   that there's a couple more things that they had to know what

22   they were doing.  But, again, the government has proved all of

23   this beyond a reasonable doubt because the defendants knew they

24   were in a restricted building or grounds.  They knew why it was

25   restricted.  And they were engaged in clearly disruptive and

1    disorderly conduct, to the extent that you heard officers say

2    they could not continue to do their jobs that day.  The

3    defendants knew what they were doing and they knew what was

4    going on inside the Capitol building, and they -- including the

5    certification of the official -- of the ballots, which does

6    count as conduct of government business or other official

7    functions, and the defendants' conduct did, in fact, impede or

8    disrupt that orderly conduct of government business.

9          Count 10, engage in physical violence in a restricted

10    building or grounds.  This is against Greg Purdy and

11    Robert Turner.  This is a little different from the assault

12    charges because there doesn't have to be a specific victim

13    named here.  Here it's just that they engaged in physical

14    violence in a restricted building or grounds.

15          One, that the defendant engaged in an act of physical

16    violence in proximity to -- in or in proximity to, and that the

17    defendants did so knowingly.

18          Count 11, disorderly conduct in a Capitol building or

19    grounds.

20          These last few counts go directly to not just the

21    restricted area, but also the fact they were in a Capitol

22    building or the Capitol grounds and knew that their behavior

23    was wrong and that they weren't supposed to be there.

24          First for Count 11, the government has to prove the

25    defendants engaged in disorderly disruptive conduct in any of

1    the United States Capitol's buildings or grounds, the

2    defendants acted with the intent to impede, disrupt, or disturb

3    the orderly conduct of a session of Congress or either house of

4    Congress, and that the defendants acted willfully and

5    knowingly.

6          Again, all of the evidence that you have seen over the

7    past week shows that the defendants did each of these actions

8    and knew what they were doing and that they weren't supposed to

9    be there and what the effect of their actions would have on

10   January 6th.

11         Count 12, act of physical violence at the Capitol

12   building or grounds.  Again, this one is just towards

13   Gregory Purdy and Robert Turner.  And, again, you've seen the

14   evidence and the government has proven beyond a reasonable

15   doubt that the defendants have met the elements of these crimes

16   and that they, in fact, committed an act of physical violence

17   at the Capitol grounds, parading, demonstrating, or picketing

18   in a Capitol building.

19         The defendants paraded, demonstrated, or picketed in

20   any of the United States Capitol buildings, and the defendants

21   acted willfully and knowingly.  Again, the evidence that you

22   have seen throughout this trial has shown that the defendants

23   knew exactly what they were doing and intended or knew that

24   they were in an area they weren't supposed to be in.  And you

25   can see -- the government -- the judge will give you

1    instructions as to what those words mean, but generally they

2    have their normal everyday meaning.

3        The defendants went inside the Capitol building and

4    demonstrated and paraded again, knowing they weren't supposed

5    to be there.

6        We have gone over a lot, and I appreciate your

7    patience with me this morning, but the government has to prove

8    all of these elements beyond a reasonable doubt, that the

9    defendants committed the 13 acts, crimes that they are charged

10   with.  And over the course of the past week, you have seen

11   evidence, you have heard testimony, and you have seen that

12   Gregory Purdy, Robert Turner and -- I'm sorry, Gregory Purdy,

13   Robert Turner, and Matthew Purdy are guilty of the counts for

14   which the government has alleged, and we ask that you return a

15   verdict of guilty.  Thank you very much.

16       THE COURT:  Everybody want to just stand up in place

17   for a minute before we start the next round?  I know that's a

18   lot to hear at one time.  Unless you need a break.  We'll just

19   take a break in place, and we'll start the first defendant's

20   argument and then we'll take a short break.

21       Mr. Barket will go first for the first defendant's

22   argument, then.

23       MR. BARKET:  I told you in the beginning that this

24   wasn't a case about men who damage property, who smash windows,

25   who came here with some sort of fringe political organization,

1    the Proud Boys or the Oath Keepers.  This is a case about guys

2    who came and left with their church group.  And, I mean, the

3    government really wants you to believe that this is an

4    open-and-shut case, and I'm going to spend a couple minutes

5    talking about the burden of proof beyond a reasonable doubt and

6    what that means, and I'm going to poke holes in their evidence.

7         You know, beyond a reasonable doubt is something that

8    we hear a lot on TV, and it's actually the highest burden of

9    proof in our country.  This isn't a case about an insurance

10   company that didn't pay you or a car accident that you were

11   injured.  This is a case that costs a man his life and liberty,

12   and the founding fathers wanted this burden to be high, if not

13   near impossible.

14        Perhaps suspected, possibly, probably very highly

15   likely, all of these.  If you think, wow, Greg Purdy is very

16   highly likely guilty, that's not enough.  That doesn't reach

17   the beyond a reasonable doubt.  If you pause for one second and

18   think, huh, that's weird, I mean, that's a reasonable doubt.

19   And this case is chock-full of them.  I'm going to go through

20   both the indictment, which you will have a copy of back there

21   and some of the evidence, and we'll talk about it.

22        Count 1.  And I'm just going to say, I want you to pay

23   very, very close attention to this indictment because the way

24   the instructions are worded, they might be a little confusing.

25   But each count -- for example, Count 1 alleges BB and AG.  BB,

1   officer Brandon Byron [sic], we didn't even see.  I mean, who

2   is Brandon Byron, right?  There you should discount his

3   testimony.  Any sort of argument that Brandon Byron was

4   assaulted or impeded, he had an opportunity to come in here and

5   talk to us, to say his piece, to give his side of the story.  A

6   man may lose his liberty because Brandon Byron couldn't even

7   take the time of day to come here.

8           Officer AG.  It's pronounced Gbatu, but it's spelled

9   with a "G," Gbatu.  You know, the whole argument -- Gbatu, the

10  first time he ever talked to anybody in this entire case was in

11  March of this year, March of 2024.  We heard him testify and

12  say that his supervisor told him he didn't have to fill out any

13  paperwork.  Where is that supervisor?  I mean, did you hear any

14  sort of testimony from his supervisor saying, no, don't fill

15  out the paperwork?  There was a procedure that needed to be

16  followed.

17          And I know this is going to sound ironic, but there

18  are rules and regulations that the cops have to follow too, and

19  one of the reasons we impose those rules and regulations, those

20  procedures, on the officer is so when they come back three

21  years down the line and say, actually, I wasn't assaulted, I

22  was impeded, I was interfered with, there is a paper trail.

23  And for the first time ever, now in March of 2024, three years

24  later, Officer Gbatu came forward, said, oh, yeah, I was

25  impeded or interfered with.

1          You know, I thought it was really funny because in his

2    interview, and he admitted this in his interview with the

3    government, he met with them multiple times, never once said, I

4    was assaulted, I was impeded.  The only time he ever said that

5    was in here today -- or during his testimony, for the first

6    time ever.  I mean, there's a reasonable doubt there alone.

7          Why didn't he follow the procedure?  He admitted in

8    cross-examination that, at best -- those are the words he

9    used -- those are the words I used.  At best, you would say

10   that he maybe touched your elbow.  Yeah, at best.  At best is

11   not beyond a reasonable doubt.

12         The government has stood up here in opening and now in

13   closing, told you, oh, Greg Purdy shoved through this crowd of

14   cops to get through the stairs.  That simply isn't true.  We

15   saw the video ten minutes ago.  Greg Purdy, at best, is

16   standing right there.  Officer Gbatu testified that the crowd

17   began to shove him.  I showed him videos and pictures of a man

18   in the very back of the crowd shoving in and, I mean, now, all

19   of a sudden, Greg Purdy shoved through.  Greg is in that video

20   for maybe five or ten seconds before disappearing.

21         I want to show you the picture that they showed you in

22   their opening statement.  This is it.  That's at best, brushing

23   of the elbow.  This man is charged with federal assault on an

24   officer, a federal charge.  We're here with the FBI in a

25   federal court and, at best, at best, he brushed the guy's

1    elbow.  I mean, how many times I've walked out of an elevator,

2    you're in a bar and you brush someone.  There's no intent

3    there.

4         You know, another thing is, he said, oh, you know, I

5    was scared.  I mean, he's a big boy.  He even said, I'm a big

6    boy.  Said, I was scared.  But, I mean, he certainly wasn't

7    scared of Greg Purdy.  We saw him at one point turn his back to

8    Greg and start going against the guy in the jean jacket.  Greg

9    was never part of that mob.  He said that, oh, Greg was being

10   held back.  I mean, the video really showed Greg holding people

11   back.  I mean, Greg could have just lunged forward at him if

12   that was his intention, and he never did that.

13        You know, another reasonable doubt about

14   Officer Gbatu's testimony is he stood here before you and said,

15   oh, I told him a million times to back up, to back down.  But,

16   I mean, Greg, who is standing in a crowd of thousands of

17   people, you could hear everything he's saying.  But you didn't

18   hear Officer Gbatu, one single time -- I went through the video

19   with him.  I told him, tell me to pause it when you say, one

20   single time, back up, back down.  He never said that.

21        At best.  This right here, brushed his elbow at best.

22   Counts 1 and 2 of the superseding indictment, you will have it

23   directly relate to Officers BB and Gbatu.  I mean, Greg wasn't

24   part of that mob.

25        Brandon Byron, he was never here.  So I'm going to ask

1    you just straight up.  I mean, if a victim alleges this guy

2    assaulted me and he doesn't even show up to court, I mean,

3    there's a big reasonable doubt there.  Why didn't he show up?

4    Officer Gbatu said at best, at best.  That's a reasonable

5    doubt.

6         And if you're not totally persuaded, you'll get the

7    instructions from the judge.  But 111(a), assaulting,

8    resisting, or impeding certain officers, it has a second

9    charge.  It's a lesser included offense, just a simple assault.

10   They don't ever have to show he made physical contact.  If

11   that's their argument, I would ask you to really and seriously

12   and truly consider looking at that charge.  I mean, the intent

13   to commit another felony.  What?  I mean, that guy was

14   passionate.  And I'm not going to sit up here and justify

15   everything he did on that day because he was certainly

16   passionate and he was lied to for a long time, and he came

17   here, I mean, really with his church group.  He wasn't part of

18   one of these organizations.  So please, look at that second

19   charge very closely.  No physical contact and no other felony

20   necessary.  It's a simple assault.

21        Count 3.  That's the civil disorder with Tuttle, the

22   guy at the top of the stairs.  I'll show you the picture

23   because, I mean, the government has made such a big point out

24   of this.  They've made such a big point, oh, this was the last

25   line of defense.  I mean, really, come on guys.  I mean, look

1    right here.  I'm no genius.  I mean, really, Officer Tuttle was

2    told.  They get him up here to make -- to nitpick and nickel

3    and dime Greg Purdy, every action he did.  And while, yeah,

4    this was upsetting, I mean, God, you can literally just walk

5    right around.  I mean, this -- he admitted during his testimony

6    that he was already retreating when this happened.  I mean, how

7    can you obstruct and impede, interfere with someone who is

8    already retreating when this happens.

9         His 302 form, which is the FBI's record of when they

10   interviewed Officer Tuttle, doesn't even remember Greg Purdy.

11        MR. McWATERS:  Your Honor, objection.  That's not in

12   evidence.

13        THE COURT:  Sustained.

14        MR. BARKET:  He testified he didn't even remember

15   Greg Purdy when the government asked him about it.  I mean,

16   that's how much of an impact Greg had on this guy, didn't even

17   remember him.

18        Count 4 is the same thing, civil disorder and 111(a),

19   the assault impeding with Officer Kurland.  And I actually

20   really liked Officer Kurland and I thought his testimony was

21   actually enlightening.  Couldn't even remember where Greg

22   touched him.  I mean, you're going to come forward, you're

23   going to accuse a man of assaulting you, and you don't even

24   know where you were touched?  I mean, that alone is a

25   reasonable doubt.

1          Had no idea.  I asked him a million times, couldn't

2    tell you where he was hit, where he was touched, couldn't tell

3    if he was touched.  I asked him, didn't you tell the government

4    that when Greg was rushing at you, you pivoted?

5          Oh, yeah, I may have.

6          That alone is reasonable doubt.  We heard a lot about

7    the straight strikes or the mechanical movements, the redirect.

8    The video shows it.  And I encourage you to watch it back

9    there.  He redirected Greg, just straight up.  There was no

10   physical touching ever.

11         The second physical contact is when they arrested Greg

12   and then they cut him loose.  I mean, he initiated --

13         MR. McWATERS:  Objection.

14         THE COURT:  Sustained.

15         MR. BARKET:  He initiated that contact.  Can't say,

16   oh, I was assaulted when you initiated the contact.

17         You're going to get the instructions.  The judge will

18   give them to you.  They will be on a form.  And look at the

19   elements really closely.

20         For example, with the civil disorderly, 231, that he

21   intended of obstructing, impeding or interfering with

22   Officer Kurland or Officer -- another officer who didn't even

23   bother to show up, AS.  I mean, who is that?  Kurland admitted.

24   I mean, he took him down to the ground and got right back in

25   the line.

1          Count 7.  This is the most important one to me.  The

2    government alleges that Greg came here with the purpose of

3    obstructing Congress.  And there is one big hole that they've

4    done everything for you not to look, one absolutely massive

5    reasonable doubt.  You know, they said, oh, he saw him kick in

6    that window and he got past all the barricades and bike racks.

7    We're going to talk about the barricades and bike racks.  There

8    is one absolutely massive hole the government has prayed you

9    don't see.

10          This is them coming in, 2:13:50 -- 2:13:51, undoubted.

11   If Greg really intended to interfere with Congress, he was in

12   the building.  He could have gone into any of those people's

13   offices, could have gone onto the Senate Chamber floor, House

14   Chamber floor.  Could have gone and taken Nancy Pelosi's

15   laptop.  No.  The guy is literally out of the building within

16   two-and-a-half minutes.  It's impossible to look inside

17   someone's mind, but he never went back into the building.  He

18   went in the building, realized I probably shouldn't be here,

19   and he left immediately.  There was no intent to interfere with

20   Congress.  Really?  I mean, it was free rein.  Could have gone

21   anywhere he wanted.  He immediately walked toward the exit and

22   left.  And the government really says, oh, it's obvious, you

23   know, he came here to interfere.  Really?  Based on what?

24          I'm not going to say that he wasn't passionate.  And

25   Mark Gazelle, Officer Gazelle, even testified there was a plan.

1    There is a plan laid out in the Constitution to object to the

2    votes, and that's exactly what, you know, unfortunately,

3    President Trump had wanted.  And that's what Greg wanted.  He

4    wanted the votes to be objected to.  And it goes to the Senate

5    to decide the President.  He doesn't want to interfere with

6    that process.  He keeps talking about the Constitution.  That

7    is a Constitutional process.  That's laid out.  That's in their

8    evidence.

9           You know, another thing -- I mean, they've talked

10   about Safeway.  I mean, has anyone heard anything from Safeway?

11   I want to you go look at those Safeway records.  There's a huge

12   reasonable doubt in the Safeway records.  The way Safeway shows

13   they were interfered with is they compared January 5th and

14   January 6, 2020 sales to January 5th and 6, 2021 sales.  And

15   that's an obvious explanation.  January 5th and January 6th,

16   2020, COVID did not exist.  January 5th and 6th, 2021, COVID

17   existed.  Yeah, their sales were impacted.  People weren't

18   shopping as much at Safeway.  They were doing things like

19   Instacart.  They were taking out groceries more.  I mean, the

20   government didn't even say a single word about Safeway.  Who is

21   talking about Safeway?

22          They keep saying that they wanted to get through, get

23   through with their objective.  I many, really?  What was their

24   objective?  To get in the building and leave two-and-a-half

25   minutes later?  Something is not adding up.

1          I also want you to look very carefully, because the

2     instructions from the judge will define everything.  Assault

3     means an intentional attempt or threat to inflict injury upon

4     someone, coupled with the present and apparent ability to do

5     so.

6          Physical violence, which is another charge, is an act

7     involving assault or infliction of bodily harm or a destruction

8     of property.  There has been no evidence whatsoever of

9     destruction of property.  Officer Kurland couldn't even tell

10    you where he was touched.  Officer Gbatu said, at best, he

11    brushed my elbow.

12          I want to go through some of these other exhibits with

13    you.

14          We heard so much from Officer Mendoza.

15    Officer Mendoza wasn't even there.  She didn't even get -- she

16    didn't even mention that she didn't get there until 2:15 in the

17    afternoon.  She kept talking about this, couldn't tell us who

18    drew that red line.  I know it was before January 6th or after

19    January 6.  She talked so much about bike racks and -- there

20    was thousands of signs.

21          Officer Gbatu, I asked him -- when he came in, he came

22    in from right here, walked right in.  I asked him, hey,

23    officer, did you see any signs?  He didn't see a single sign,

24    didn't see snow fencing, didn't see anything.

25          I asked Officer Mendoza about this picture right here.

1    A man's liberty is at stake.  She never even saw this, has no

2    idea who took it, has no idea who is in it, has no idea when it

3    was taken.  Is that not a reasonable doubt in itself?

4        We asked her about this picture.  She said this was on

5    the east or the southeast side.  You know, something I've

6    just -- that just has baffled me.  I mean, there are a lot of

7    reasonable doubts.  When did the defendants even come to the

8    Capitol?  When did they get there?  How did they get there?

9    For all we know, and I know it sounds silly, for all I know,

10   though, for all the government has proved, Mike Pence could

11   have walked them into the Capitol.  We don't know.

12       But here is what we do know.  12:57, the reality is by

13   12:57, the barriers were down.  Officer Mendoza said 12:53.

14   She said, oh, well, look on the stone wall, you know, there are

15   some signs on the stone wall.  But let's be real.  The

16   overwhelming majority of people are simply walking up the path.

17   No one is jumping the stone wall.  No one had to jump the stone

18   wall.  They're just following the crowd.  I always laugh.

19   There's this one little guy down here, sitting in his

20   wheelchair, rolling into the place.  I mean, really, you think

21   he jumped a barricade?  No.  People walked right in.

22       People walked right into the Capitol.  There was

23   nothing there.  When these guys got there, there were no signs.

24   There were no barricades.  Officer Gbatu testified to that.

25   The evidence clearly shows that.  Officer Mendoza couldn't even

 1   tell you because she never even walked in.  She left the night

 2   before, didn't get there till 2:15.  We saw this picture.  She

 3   came in on this side right here.  I mean, really.  That's a

 4   reasonable doubt in itself about Officer Mendoza's testimony.

 5        One of the instructions will tell you, you consider

 6   the demeanor of the witness.  Officer Mendoza was, by far, the

 7   most offensive.  Any time I would ask her a question, oh, go on

 8   to the next question.  She was super defensive.  Any time you

 9   poke a hole in her story, super defensive.

10        2:13 and 2:16.  Remember that.  When someone asks you,

11   why do you think they're not guilty of entering and remaining,

12   why do you think they're not guilty of obstruction of Congress,

13   obstruction of an official proceeding.  That's a huge charge,

14   felony obstruction of Congress.

15        MR. McWATERS:  Your Honor, objection.

16        THE COURT:  Overruled.

17        MR. BARKET:  He was in the building for two minutes.

18   He could have done anything he wanted, and instead, he walked

19   out.  He never even went back into the building.

20        Officer Tuttle, in his testimony, he was already

21   retreating.  You know, I thought there was one exhibit that I

22   really liked.  I'm going to show it to you in a second.

23        I just want to mention Officer Glavey.  She was Secret

24   Service Glavey.  I asked her pointblank, never saw the

25   defendant.  She had no idea who the defendant was.  There was

1   no evidence that the defendant or Mr. Purdy was a threat to the

2   Vice President.  There was no evidence that he even knew the

3   Vice President was there.  Their whole thing relies on some

4   Instagram video where Greg says, yeah, man, he was calling them

5   out.  I mean, really?

6         I didn't know that the Vice President has any

7   involvement with the certification of the election, but I want

8   to show you this.  I really like this video because this was

9   taken the same day.  You know, when you're dealing with these

10  cases, it's always so easy to see things in hindsight.

11  Hindsight is 20/20.  These guys were there on the day of.

12  We've spent, what, five or six days, Monday, Tuesday,

13  Wednesday, Thursday, now Monday again, talking about this case

14  second by second.  The government literally went ten seconds by

15  ten seconds asking these guys questions.  There was -- there is

16  no pause.  It isn't *Click* with Adam Sandler, where you just

17  pause real life and have five days to think about something.

18         (Audio playing in open court.)

19         MR. BARKET:  You know, obviously, there were some

20  people there with bad intentions.  But my client wasn't one of

21  those guys.  He got swept up in something he didn't understand.

22  What type of guy who assaults or impedes or obstructs an

23  officer tells them, I love you, I'm sorry?  I mean, these are

24  things that don't add up.

25         So I really urge you to consider.  When you're looking

1    at the instructions, read them very, very carefully.  Look at

2    the indictment.  Look at what officers are alleging on certain

3    counts.  Look at that lesser included offense.  For all the

4    111(a)'s -- for all the assaults, obstruction, 111(a) is what

5    it's called -- there's a lesser included offense, simple

6    assault.  That simple assault does not require a touching.  It

7    does not require the intent of another felony.

8           I mean, remember and remind your fellow jurors about

9    some of the things these officers said.  Officer Kurland

10   couldn't even tell you where he was touched.  Officer Gbatu, at

11   best, brushed my elbow.  You're going to have access to all the

12   evidence today.  You decide the facts.  You decide what

13   happened.

14          But just remember, the burden of proof is on the

15   government.  Guilt highly likely, very likely, it's not enough.

16   If you stop for one second, one -- literally, one little pause.

17   If you're sitting there and say, something doesn't make sense,

18   that's it.  And I'm not asking you to justify the actions of

19   January 6th.  I'm asking you to uphold the laws of the

20   United States, which may seem ironic.  The irony is not lost on

21   me, sitting up here and we're talking about January 6th and I'm

22   asking you to uphold the law.  But that's how our constitution

23   and how our governance works.  One simple pause, one hesitation

24   when something doesn't add up, and you have to find him not

25   guilty because this country is founded on the principle that we

1  would rather ten guilty men go free than one innocent man.  One

2  pause, that's it.

3          Thank you.

4          THE COURT:  Thank you, Mr. Barket.

5          Ms. Isaak.

6          MS. ISAAK:  I want to thank you for your attention

7  last week.  You guys saw a lot of videos.  You saw a lot of

8  evidence.  So you have a lot to think about from last week and

9  then today going forward.

10          One thing when it comes to Matthew Purdy, right?  In

11  the opening statements, we said he was there.  He was there.

12  What the government didn't show and what we told you the

13  government wouldn't show was of the knowledge or the intent

14  that he had, because he was just there, and the government did

15  not do that.

16          He's not charged with being there, and that's what you

17  saw.  He was there, but he's not charged with being there, and

18  he's charged with crimes that there is a requirement for the

19  government to show intent and knowledge, and this is beyond a

20  reasonable doubt, and they didn't do that.

21          You may have observed that during the case I didn't

22  cross-examine a lot of witnesses, because there was really no

23  reason for me to cross-examine a lot of the witnesses.  A lot

24  of the videos that you saw didn't include Matthew Purdy.  The

25  videos you did see that included Matthew Purdy, he was just

1  there.  He didn't say anything.  He didn't engage any police

2  officers.  He didn't push anything.  He was literally just

3  there.  There was no reason.  So I don't want you to take the

4  fact that I didn't cross-examine some of these witnesses

5  against Matthew Purdy, but the fact is, there was really no

6  reason for me to do that.

7          But let's go back over what you did see regarding

8  Matthew Purdy.  Okay.  The Secret Service agent, she testified

9  to the moving of Pence, which was not public knowledge.  You

10 guys saw some documents, some emails, some planning documents

11 regarding Pence.  That's the first time, I imagine, that you

12 saw those because they're not public knowledge.  So when

13 Matthew Purdy goes to a rally and then they eat lunch and then

14 they proceed with a mass of people down to the Capitol, how was

15 he supposed to know that President Pence -- then Vice President

16 Pence, when he was there, when he got there, when he left?  He

17 would not have known that.  He wouldn't have known that.  And I

18 think that Agent -- Special Agent Glavey's testimony showed

19 that.  Honestly, what she proved is that Pence was there that

20 day.  But none of her testimony had anything to do with

21 Matthew Purdy, about why Matthew Purdy would have known

22 anything that she was saying.

23         They're trying to say that Matthew Purdy should have

24 known this.  Folks, first of all, well, you live here, all of

25 you live here in this area.  Why would he expect any of these

1     defendants who don't live here -- they're out of state, all

2     three of them.  Let's focus on Matthew Purdy.  Why would we

3     expect him to know Pence's whereabouts the exact timing that

4     day when I imagine the citizens of DC didn't even know that?

5     And there was no evidence that he knew he was there.  There's

6     no evidence he knew he was in the building.

7          So Inspector Mendoza, she didn't testify to anything

8     related to Matthew Purdy.  She testified that while other

9     agencies had input into the restricted area, it was the Capitol

10    Police who created the restricted zones.  Remember they had the

11    picture with the red line that went around.  Okay?  There was

12    no red tape for the people who were there around the perimeter

13    and, I imagine that's the first time that you saw that picture

14    as well, the picture with the red line around the perimeter.

15    That was not available to any of them.  They didn't know that.

16         Inspector Mendoza testified that the night before, she

17    drove around the perimeter.  The perimeter was not even set up

18    yet, but the perimeter was secured with bike racks, signs on

19    the bike racks, the snow fencing, which in the picture, the

20    snow fencing was even down.  But that's what was relied upon to

21    let the people in attendance know that this is the perimeter.

22         By the time she got there on January 6th, the

23    perimeter had already been breached.  And the government, it's

24    their job, it's the prosecution's job, to tell you what they

25    knew when they got there.  They didn't know the route that they

1    took, just like Mr. Barket said.  They didn't know the route

2    they took.  They didn't know what they saw when they got there.

3    What you did see was a sea of people who were walking through

4    to the Capitol grounds, no bike racks, no snow fencing.  They

5    have to tell you what they know now.  They have to tell you

6    what they observed.  They didn't do that.  Especially as it

7    pertains to Matthew Purdy.  There was zero evidence, zero

8    testimony, other than he was there.  That's it.

9         One thing that Inspector Mendoza did testify to,

10   remember that six-minute video?  There's a six-minute video and

11   it includes a call that the grounds were breached about

12   12:53 p.m., I think she said.  And then it jumps forward to,

13   like, 2:11 p.m.  There's over an hour's worth of information

14   that is gone, that's essential, that you need to know what

15   happened between the time the Capitol ground was breached at --

16   the perimeter was breached at 12:53, and then the time you

17   first see Matthew Purdy in any of the government's videos

18   whatsoever.  There's nothing.  There is nothing there.

19        Well, a lot happened, right, minute to minute, from

20   based upon their testimony.  But there's an entire hour.  How

21   many people, how many tens of thousands of people were at the

22   Capitol, and what did the perimeter look like when they got

23   there?  There was no testimony to that.

24        My question to Inspector Mendoza was, is it fair to

25   say that based upon the videos and pictures that she testified

1    to, that the barriers were removed.  She said yes.

2          Folks, no one anticipated what happened that day,

3    especially for someone who doesn't live here, who came here for

4    a rally.  Now, I'd tell you, Matthew Purdy has not been to the

5    Capitol since he was a very small boy, a very small child.  But

6    the prosecution wants you just to assume that he knew

7    everything that these people testified to, that the Secret

8    Service agent knew, what Inspector Mendoza knew, and, again, I

9    think even for those of you who live there, you may have gotten

10   a little bit of an education on things you didn't know.  But

11   how is Matthew Purdy supposed to know these things?  It's their

12   job to explain that to you.  There is not even an attempt that

13   was made.

14         And it really seems like, based upon the evidence,

15   based upon the testimony of Inspector Mendoza, the Secret

16   Service agent, even the police officers, which really had

17   nothing to do with Matthew Purdy, is that these are sort of

18   canned cases, right?  We saw videos.  Inspector Mendoza said,

19   oh, I can't tell you how many times I've seen this video, I

20   can't tell you how many times I've seen this.  This case was

21   not specific to Matthew Purdy.  Matthew Purdy was thrown in

22   this case because he was there.

23         He was carrying his phone.  He wasn't carrying a sign.

24   He wasn't picketing.  Right?  He had nothing.  He was literally

25   carrying a phone in his hand, and that was it.

1    I want to talk about the video when he went into the

2    Capitol building.  The windows were broken, not by him.  The

3    door was kicked open, not by him.  And there's videos outside

4    the building and inside the building.  You don't see Matthew

5    Purdy in the background, watching it.  You just don't.  You

6    don't see that.  You see him walking in about a minute after

7    the window was broken.  People jumped through the window.

8    People are opening the doors.  Now, where was he outside in

9    relation to this?  I don't know.  They didn't tell us.  And as

10   many cameras that was there that day, I would think if they had

11   any footage of Matthew Purdy in the vicinity where this was

12   going on -- how far can you move in a minute, folks?

13       Let's go back to where he's on the stairs.  And the

14   prosecution says, well, you can see the crowd surge through

15   when they pushed the police back.  He's around the corner.  All

16   he knows at this point is the line was moving.  That's all he

17   knows.  People are coming through.  The police go up the

18   stairs.  And Matthew Purdy comes around and he's goes up the

19   stairs.  He's in a crowd of people.  He's in a crowd of people.

20       Did he go in the Capitol building?  He did.  He went

21   in, two-and-a-half minutes later, he came out.  He didn't talk

22   to anybody.  He didn't engage anybody.  He didn't break

23   anything.  He didn't steal anything.  He went in and he came

24   out.

25       When he came out of that Capitol building, you never

1   see him again.  In any of the videos, you never see him again.

2   When Matthew Purdy went into the Capitol building and realized

3   this is not where I want to be, he left and he left.  You don't

4   see him again.

5        I want you to pay special attention to the timestamps

6   on these videos, because what the prosecution did is they

7   played a video from earlier in the day and then they played a

8   video from later in the day, and it looks like Matthew Purdy is

9   there an for extended period of time.  But pay attention to the

10  time stamps.  The first time we see Matthew Purdy is around

11  2:00 p.m.  The last time we see Matthew Purdy is around 2:16.

12  Pay attention to the timestamps.  It's a very small period of

13  time.  But as soon as he went into the Capitol building, he was

14  out, and you don't see him again.  He was gone.  You don't see

15  him again.

16       The prosecution wants you to believe that

17  Matthew Purdy was a mobster on that day, that he was there to

18  interfere with the process, the official processes.  There's no

19  evidence of that, no evidence of that at all.  Right?  You

20  didn't see him there.  He didn't have his face painted.  He

21  didn't have his hair spiked up red, white and blue.  He wasn't

22  there with signs.  He wasn't wearing Buffalo horns or whatever,

23  no unicorns.  He didn't grab anybody's ASP.  He was just there.

24  When Agent Jeng testified, he said they had recovered -- they

25  recovered a Carhartt jacket.  You know what the process of

1    recovering that was?  It was Matthew Purdy came in and gave it

2    to him.  Matthew Purdy didn't have it buried in the backyard

3    and they recovered it.  He gave it to them, here is my Carhartt

4    jacket.  I don't know about you guys, but I think if one is

5    there to make a political statement, they don't say -- they

6    don't look at their closet and see, gee, I think I'm going to

7    wear Carhartt today and a gray beanie.  He wasn't there for

8    that.  There's no evidence he was there for that.  He was just

9    there.  He was a little brother who was there with his older

10   brother and his uncle.  That's why he was there.  Carhartt and

11   gray beanie.

12        At what point does one just being there not require

13   thoughtful analysis?  Right?  Because -- and the judge is going

14   to give you instructions.  Was he there?  Yes.  But did the

15   government show his intent?  Did the prosecution show what he

16   knew?  No, they didn't.  They showed he was there.  Well, they

17   told you that he was there.

18        It requires more than just their opinions of what they

19   knew or should have known.  You have witnesses who testified.

20   Well -- Inspector Mendoza testified she didn't see the

21   perimeter when it was completed, and then the day before, when

22   she got there, she was in a totally different area than

23   Matthew Purdy was.  She cannot and did not testify to what

24   Matthew Purdy saw when he was there.

25        Officer Gbatu said the perimeter was down, barricades

1    weren't there.  The prosecution did not do their job on showing

2    that Matthew Purdy knew or should have known.

3          Again, remember this is a very high burden, the

4    highest legal burden.  So the question for you is:  Is just

5    being there, is that enough?  He said nothing.  He did nothing.

6    He was just there.  And I think you will find the answer to

7    that question is no.

8          Thank you all for your attention.

9          THE COURT:  Thank you, Ms. Isaak.

10          I think in light of the hour, ladies and gentlemen,

11    we'll go ahead and take our lunch recess now.  We'll continue.

12    We have one more defense closing, then we do have the

13    government's rebuttal.  So we'll come back at 1:45.

14          Don't talk about the case yet.  Don't let anyone talk

15    to you about the case.  I'll see you at 1:45.  Court will be in

16    recess.

17      (Recessed from 12:28 p.m. to 1:53 p.m.)

18      (Jury present)

19          THE COURT:  Mr. Pallas, you may proceed.

20          MR. PALLAS:  Thank you, Your Honor.

21          Good afternoon, ladies and gentlemen of the jury.

22    January 6, 2021, pretty impactful day, obviously.  We're still

23    here three-and-a-half years later talking about it.  Impactful

24    for the District of Columbia and for the people like you that

25    were here.  I mean, you probably felt it the most.  But also

1    for our nation.  It was not a proud day.  It wasn't

2    Pearl Harbor, it wasn't 9/11, thankfully, but it wasn't a good

3    day.  There's still strong feelings and strong sentiments about

4    that day.  Politicians use it.  You know, they're still talking

5    about it, we're going to do an investigation, we're going to

6    talk about the origins, the failures, all this stuff.  But they

7    use it for political purposes.  That's not what we're here for.

8         This judge has told you already and he'll tell you

9    again, this case has nothing to do with politics.  Trumpers,

10   anti-Trump, anti-Biden, Kennedy, Antifa, all that stuff, that's

11   for the politicians.  And don't think for one moment that

12   anything I say condones any of the conduct, because it doesn't.

13   I mean, there were crazy people.  They were breaking windows,

14   doing all kinds of stupid stuff, bringing weapons, sticks.

15   There was one guy in one of the videos with a gas mask on,

16   bringing their own pepper spray.  That's not Robert Turner.

17   That's other people.  That's the mob that the prosecutor was

18   talking about.  That's not Robert Turner.  Robert Turner -- you

19   know, I was reviewing the evidence -- most of the time he's

20   like this, taking a video, filming, constantly filming.

21        The people that broke the windows and brought weapons,

22   they were wrong.  They were very wrong.  We're not here to

23   decide about those people.  We're here to decide about these

24   people and my client, Robert Turner, not the mob.

25        And we're not even here to decide how tragic a day it

1    was, because it was.  It was an embarrassment.  But the judge

2    will tell you, the judge will instruct you, anger has no part

3    of this verdict, or your verdict.  Sympathy has no part of your

4    verdict.  Political feelings play no part of your verdict,

5    because that will be a miscarriage of justice, and

6    Judge Lamberth will be the first one to tell you that.

7         Robert Turner is on trial for his conduct and his

8    conduct alone.  So how do we decide the case, or how do you

9    decide the case?  The judge is going to instruct you on

10   reasonable doubt, and some of the lawyers have talked about it

11   already.  But I think it's worthwhile for me to read what

12   reasonable doubt is because this is the standard that's been

13   passed down for hundreds of years that all the courts use for

14   criminal cases.  Even first-degree murder, it's beyond a

15   reasonable doubt.  This is the same as a first-degree murder

16   case.

17        The state must prove every element of every offense,

18   and these offenses get very technical.  Every element of every

19   offense beyond a reasonable doubt.  The government has the

20   burden of proving Robert Turner guilty beyond a reasonable

21   doubt.  That's what the judge is going to say.  In civil cases,

22   it is only necessary to prove that a fact is more likely true

23   than not.  Or in some cases, that the truth is highly probable.

24   Why do we have that?  If it's a landlord-tenant case or a car

25   accident where they're talking about money or talking about

1    your home or talking about arguments over things that don't

2    involve your liberty, the law is and the standard is different.

3    If you have a little bit more, you win in those type of cases.

4         But in criminal cases, such as this one -- this is

5    what the judge is going to say -- the government's proof must

6    be more powerful than that.  It must be beyond a reasonable

7    doubt.  Reasonable doubt, as the name implies, is a doubt based

8    on reason, a doubt for which you have a reason based upon the

9    evidence in the case.  If after careful, honest, and impartial

10   consideration of all the evidence, you cannot say that you are

11   firmly convinced of the defendant's guilt, then you have a

12   reasonable doubt.

13        Reasonable doubt -- and I'm going to refer to this

14   later on in my presentation.  But reasonable doubt is the kind

15   of doubt that would cause a reasonable person, and all are

16   reasonable persons because we selected you, you're all hand

17   picked by all of us.  Reasonable doubt is a kind of doubt that

18   would cause a reasonable person, after careful and thoughtful

19   reflection, to hesitate to act in the graver or more important

20   matters in life.  And like I said, hold that thought, because I

21   want to come back to it.

22        Now, another thing that's important in this type of

23   case, especially since there's three people on charge -- on

24   trial, is that each defendant is on trial in their own case.

25   It's almost like three trials held together.  And the judge is

1  going to tell you that.  He's going to read an instruction that

2  says, each count of the indictment charges a separate offense.

3  Moreover, each defendant is entitled to have the issue of his

4  guilt as to each of the crimes for which he's on trial

5  determined from his own conduct and from the evidence that

6  applies to him as if he were being tried alone.  You should,

7  therefore, consider separately each offense and the evidence

8  which applies to it, and you should return separate verdicts as

9  to each count of the indictment, as well as to each defendant,

10  unless I specifically instruct you to do otherwise.

11       So let's look at the evidence.  And the charges.

12  Let's look at the charges, because you're going to have the

13  charges with you and you're going to take them back into the

14  jury room for deliberations.

15       Okay.  Ready to go?  Oh, wrong one.

16       *United States versus Gregory Richard Purdy, Jr.,*

17  *Matthew Purdy, and Robert Turner.*  Remember -- I think it was

18  Inspector Mendoza didn't remember what the case was about.  But

19  anyway, that's the case.  And Robert Turner is on trial by

20  himself.

21       Here is the Capitol with the imaginary red line.  We

22  spoke about that ad nauseam.  No line existed.  I'm not going

23  to belabor that.  It's important, though, because whenever you

24  see a charge that has the 1752 on it, and there's three of

25  them, whenever you see that charge, that has -- that only

1    applies when there's a Secret Service protectee.  And remember,

2    Liz Glavey says there's a little list of President, Vice

3    President, family members, and they have to be there.  And

4    there has to be knowledge that the defendant knew all that.  In

5    other words, we don't -- you don't trespass by accident.  You

6    have to know -- the specific charge that they decided to file

7    against Robert Turner requires knowledge that they knew a

8    protectee was on -- or that he knew a protectee was at the

9    Capitol.  There was an email that was sent to all the law

10   enforcement.  That wasn't publicized.  The fact that the

11   Capitol was closed because of COVID, the fact that the Capitol

12   was closed because of the construction of the platform for the

13   inauguration, that's great.  And people that went in there and

14   violated that, violated another law, a different law, not the

15   one charged here.

16        And here's the sign, "Area closed by order of the

17   United States Capitol Police board."  Nothing about Secret

18   Service.  Of course, no proof that Robert Turner ever saw this

19   sign.

20        This is the first time we hear of Robert Turner on the

21   Capitol.  Remember the -- what do they call that one?  The

22   compilation video, or the montage.  They show, the first thing,

23   12:53 p.m. the Capitol has been breached, 12:57 p.m. you start

24   seeing all those people strolling in from Peace Circle.  Well,

25   this, where this little red circle is, that was after

1    2 o'clock.  So there's at least one hour after the Capitol had

2    been breached, the Capitol grounds had been breached, and no

3    proof how they ever entered the Capitol.

4           And this is not a charge that Robert Turner is charged

5    with.  In other words, the conduct of Robert Turner at this

6    point has nothing to do with the charges.

7           There is Gregory Richard Purdy, Jr.  There is

8    Robert Turner with his phone in his hands.  There he is, back

9    there, talking, heckling.  These cops are used to that.  They

10   get it all the time, all the time.  Gbatu, he said, yeah, they

11   heckle me.  You know, I don't pay attention to it.  I don't

12   arrest people for that.  That's the First Amendment.  That's

13   not against the law to talk back to a cop, ever.  Ever.

14          He's never arrested anyone for mere words.  He said

15   that, I've never arrested anyone for mere words.  Right here,

16   Robert Turner, mere words.  I don't think he came within

17   6 feet.

18          The next one is -- oh, here.

19          (Video playing in open court.)

20   MR. PALLAS:  Again, no civil disorder, no assault, no

21   touching, no nothing by Robert Turner.  Nothing to do with

22   Robert Turner.

23          Okay.  Here's the second instance.  This is up on the

24   upper west terrace.  Again, Robert Turner is not charged with

25   anything there.

1          Why is my mouse not working?

2          I'm not even sure you can see Robert Turner in this

3   video, or this clip.  There's a Trump hat up here.

4          Again, not charged with anything there.

5          Entry into the Capitol.  This is the upper west

6   terrace.  There's the doors, Senate wing doors.  Officer Tuttle

7   said they walked over bike racks.  There's not one video that

8   shows Robert Turner walking over a bike rack, not one.

9          And be careful any time the prosecutor says "they"

10  because, again, each defendant is on trial for their own

11  conduct.  That doesn't change.  They can say "they" all they

12  want.  It doesn't change anything.

13         Robert Turner is not leading the charge.  He's not

14  encouraging anyone to do anything.  He's filming.  There he is.

15  Camera in his hands, again.  Enters the Capitol, camera in his

16  hands.  In fact, he went the wrong way.  He started going

17  right, and everyone else -- or Gregory Richard Purdy, Jr. and

18  Matthew Purdy went left and he circled back.  And then all

19  three exit.

20         And I think it might have been me.  Someone asked

21  Carneysha Mendoza, because they exited within less than three

22  minutes after the entry, and someone asked Inspector Mendoza,

23  well, look, they're not being forced out.  She goes, no,

24  they're not being forced out because they're walking out by

25  themselves, no need to force them out.  They left voluntarily,

 1    less than three minutes.

 2           What did they do inside there for those three minutes?

 3    Robert Turner filmed.  That's all he did.  He didn't go into a

 4    Senate door.  He didn't go into a private office of any senator

 5    or congressperson.  He didn't obstruct anything.  He walked

 6    down the hall, and the next exit, they all left, including

 7    Robert Turner.

 8           If Robert Turner wanted to obstruct Congress, that was

 9    the time to do it.  If he wanted to obstruct Congress,

10    corruptly, because that's another thing they need to prove,

11    corruptly, whatever that means, if he wanted to do it, that

12    would have been the time.  He's in the Capitol and he could go

13    to any room.  And what does he do?  He leaves.

14           Many protesters did just that.  They went into, I

15    think Nancy Pelosi's office and the Senate and all kinds of

16    rooms they shouldn't have been in.  One hallway, in and out

17    less than three minutes.

18           Count 4 is the civil disorder charge where it's

19    alleged that -- let me get to that spot.

20           Right here.  The upper west terrace.  That's where the

21    police line was.  And I think it was about three or four steps.

22    The police had the upper hand and the people -- and they were

23    there for a while.  They were there for a long time.

24           Count 4 is 231.  The victim -- the alleged victims of

25    that charge, are Christopher Kurland, who testified, and AS.

1      Nobody with the initials AS ever testified in this case.

2            Count 6, Robert Turner, Robert Turner alone, is

3      charged with assaulting AS.  Again, nobody in this trial with

4      initials of AS ever testified, and he's alleged to be the

5      victim.

6            Christopher Kurland does not remember the blue hat.

7      He was interviewed June 11, 2021.  I'll bet you you wrote it

8      down in your notes.  June 11, 2021, interviewed by the

9      prosecutors, interviewed by the FBI, showed pictures.  I don't

10     remember the guy with the blue hat.  3-27-24, this year, this

11     year, a couple months ago, same thing, I don't remember the guy

12     with the blue hat.

13           Now, at the trial, he remembers the guy with the blue

14     hat?  Three-and-a-half years later?  What changed?  What

15     happened for him to all of a sudden remember that?

16           Count 6 is the assault on AS.  And we went through

17     that pretty carefully.  I think we counted up 19 seconds.  And

18     I was -- over the weekend, I was trying to think -- think to

19     myself, how can I convey to the jury, you know, that 19 seconds

20     of your life are so -- they're so focused?  I mean, it's like

21     you see a beautiful butterfly, and then you zoom in on it and

22     you see the wings and the arms and the face, and it's ugly, and

23     it's ugly.  But, again, what happened?  What happened?

24           The countdown happened.  Greg Purdy counted down, 10,

25     9, 8, 7, 6, 5, 4, 3, 2, 1.  Look at the video.  Where was

1    Robert Turner?  Robert Turner was at least one step lower and

2    facing away, facing away.  Facing away, not even reacting.  It

3    looks like -- it looks like, and you guys will make your own

4    judgment, but it looks like Greg Purdy is in the middle of the

5    countdown and Robert Turner is facing away.

6            This lady right here, she looks like so bored.  I

7    mean, she was, like, rolling her eyes.

8            (Video playing in open court.)

9            MR. PALLAS:  He's still facing away, still facing

10    away.

11            (Video playing in open court. )

12            MR. PALLAS:  Huh?  Whoops, I went too fast.  Oh, boy.

13            Thanks.

14            (Help from Mr. Barket.)

15            MR. PALLAS:  Can you eliminate the doubt -- I mean,

16    can you eliminate the doubt that he just went in there to save

17    his -- or to protect his nephew who is doing something crazy?

18    I mean, do you walk into a police line with your face straight

19    up?  You're going to get clubbed.  Look at his hands.  I asked,

20    I think it was Officer Mott.  I said, when you have your hands

21    up, don't shoot, hands up, that's a defensive maneuver.

22    Medical examiners look at the hands to see if there's wounds

23    because people put them up to protect themselves.  And that's

24    what happened.  And that club went right onto his neck, and he

25    was redirected back into the crowd, where he remained, remained

1    for an hour or so.

2          Civil disorder, assaulting, resisting, or impeding

3    certain officers.  Again, AS.  Where is AS?  Is he in the

4    hospital?  Is he alive?  We don't even know.  I mean, there's

5    no explanation, none.  This is the government, the U.S.

6    government.  They went hours and hours over these tapes.  You

7    don't think they can find AS, an officer or former officer of

8    Metro?  They flew in Mott from Michigan.  Where is AS?  You're

9    the jury.  You're entitled to know this.

10          I was thinking of an analogy.  I go to my buddy's

11   house and I see they did a really nice -- a really nice

12   kitchen.  And I go, give me the name of that guy.  I want to do

13   my kitchen like that.  He's like, well, it's $30,000.  It's a

14   lot of money, an important affair, you know, an important point

15   in life.

16          MR. McWATERS:  Your Honor, at this point I would

17   object.

18          THE COURT:  I don't know what the analogy is yet.  You

19   can try it and see.

20          MR. PALLAS:  So he goes, look, I got this great guy.

21   His name is AS Construction.  And called AS.  Yeah, yeah, I'll

22   do it.  It's 30,000.  You know, arrive with the plans and

23   everything.  What happens?  The day that the job is supposed to

24   be started, who shows up?  Samuel Mott Construction.  What?

25   You know, and you ask him, well, do you have the plan?  Oh

1    yeah, I got the plans.  I can do this job.  You don't know

2    anything about this guy.

3              MR. McWATERS:  Your Honor.

4              THE COURT:  The objection is sustained.  That's pretty

5    far afield.

6              MR. PALLAS:  When they say -- when the judge says

7    reasonable doubt is the kind of doubt that would cause a

8    reasonable person after careful and thoughtful reflection to

9    hesitate to act in the graver or more important matters in

10   life, that's what they're talking about.

11             When the government gets up and starts talking about

12   the mob again, ask them where AS is.  They're not going to tell

13   you.  There's been no evidence of AS.  You know, these

14   prosecutors, they're lawyers, but they're also public servants.

15   They're here not just to convict people.  They're here to do

16   justice.  They're here to present the case to you guys, all the

17   evidence.  And the chips fall where they may.  They're not here

18   to, you know, well, we'll do this, we'll send this, no.  You,

19   the jury, are entitled, as the conscience of the community, to

20   hear all the evidence, and you did not hear it in this case,

21   and for that reason and that reason alone, the verdict should

22   be not guilty.  Thank you.

23             THE COURT:  The government gets the last chance to

24   speak in rebuttal before I give you my closing final

25   instructions.

1            MR. McWATERS:  The defendants are not on trial today

2    for what they said, what they thought, or what they believed.

3    You have a right to think what you want and say what you want

4    and believe what you want.

5            But Gregory Richard Purdy, Jr., Matthew Purdy, and

6    Robert Turner are on trial here for what they did on

7    January 6th, for what they did, where they did it, and why they

8    did it.  So what did they do?  Well, let's take another quick

9    look at the videos and bring us back to January 6th, back to

10   reality, back to what actually happened.  I'm going to show you

11   now Government's Exhibit 603.9.

12           (Video playing in open court.)

13           MR. McWATERS:  We're going to start it a few seconds

14   in.  This exhibit has been introduced into evidence.  You can

15   watch the whole thing, but to save time, I'm just going to show

16   you the relevant clip here.

17           (Video playing in open court.)

18           MR. McWATERS:  That's what Gregory Purdy did on

19   January 6, 2021, one of the times that he assaulted police

20   officers, here Officer Kurland.  And I went back and looked at

21   my notes, and the way Mr. Barket described it in opening was

22   that he rushed like a football player rushing the line.  Again,

23   I mentioned that in my first closing.  I bring it back up here

24   because I think that's a pretty apt description.  This is not

25   rushing past him like on an elevator.  He counted down and

1  rushed the line.

2       Now, let's look -- a lot has been made about what

3  Robert Turner did.  Said that he was holding up his phone.  I

4  guess that's a new defense, the holding up your phone defense.

5  If you can do that, you can break into a secured government

6  building and not face charges.

7       We're going to look at Government's Exhibit 606.12.

8  Same thing, this whole exhibit is into evidence.  You can watch

9  the whole thing.  But we're going to fast forward to the

10 relevant part here.

11       (Video playing in open court.)

12       MR. McWATERS:  And he didn't have his phone in his

13 hands here, so I guess you can't use that defense.  What he

14 does have in his hands is Officer Smith's baton that he grabbed

15 as he rushed him because he was trying to break through the

16 line.  And you do know that this is Officer Smith because you

17 heard testimony from Officer Mott and you saw a video that

18 Mr. Turner took himself that captured Officer Kurland,

19 Officer Smith, and Officer Mott all in a line.

20       We didn't call every single officer that was on that

21 line, we didn't call every single officer that was at the

22 Capitol that day, because we'd here a while.  We called the

23 officers who witnessed this, and you've seen -- from

24 Officer Smith's body-worn camera, you've seen the assault.  You

25 don't need to hear from him to know that Robert Turner

1    assaulted him.

2          What did Robert Turner say about what he did?  Go to

3    Government Exhibit 426.1.

4          (Video playing in open court.)

5          MR. McWATERS:  Bum rushed him.  Not brushing past him

6    in an elevator, bum rushed him.  It's his own words.

7          You have heard the phrase "You and what army"?  Well,

8    here the defendants had an army.  They had the mob at their

9    back, and it emboldened them to take these actions because they

10   wanted to get into the Capitol.  And, again, a lot was made

11   about -- a lot was made about the restricted area and what they

12   knew.  We already walked through it in my first closing,

13   different layers.

14         Even if you take back -- I'm not going to go through

15   all of them because there's a few layers of security they had

16   to go through.  Even if you say the exterior where the red line

17   was, where you heard testimony that of course it wasn't a red

18   line on the ground, but there were fences, there were signs,

19   there were barricades, even if you say they didn't see that, by

20   the time they got into the building, they knew that they

21   weren't supposed to be there.  And they knew why the area was

22   restricted.  They knew that Vice President Pence was going to

23   be there.  You saw evidence of them talking about Pence.  You

24   saw evidence of them hearing other rioters talking about Pence.

25   They knew he was going to be there.

1          I'd like to address Matthew Purdy very quickly because

2    Ms. Isaak made a lot about the fact that Matthew Purdy was just

3    there.  To believe that story, you have to believe that he

4    ended up at the epicenter of a riot at the Capitol on

5    January 6th and didn't know what was going on around him.

6          That story is just not credible.  It's not believable.

7    It's not reasonable to think that Matthew Purdy made it to

8    where he was without realizing what was going on around him and

9    not realizing he was not supposed to be there.  You heard about

10   the crimes that some of the defendants did and did not commit,

11   and that is true because the government charged the crimes that

12   we believed we could prove beyond a reasonable doubt here in

13   court.

14         And that's what we've done today.  It is beyond a

15   reasonable doubt that the defendants assaulted officers on the

16   west lawn, that they interfered with officers on the west lawn.

17   They traveled up the stairs and they breached a police line

18   there.

19         There is also a lot made about the bike racks and that

20   you didn't see video of Robert Turner stepping over bike racks.

21   You actually did.  I think it was 506.2, Government's

22   Exhibit 506.2, where you see Robert Turner stepping over a bike

23   rack as Gregory Purdy pushed over a bike rack.  They interfered

24   with officers there.

25         They broke into the building.  They were one of the

first few in there, in the first minute or two, of the building

being breached.  They walked in, rushed in, and they did walk

out.  And Mr. Pallas said something in his closing that if

Mr. Turner wanted to obstruct Congress, that was when he had

the opportunity of to do it.  And I actually agree, because he

did.  His being in the Capitol building obstructed the

certification.  You heard Officer Gazelle say that when

anyone -- any one individual, let alone the unscreened numbers

of people that were in the Capitol, being in that building

stopped the certification from proceeding and it stopped them

from being able to come back until they were able to clear out

not just the building, but the entire restricted area.

They knew what they were doing.  They knew why they

were there.  And because of that, the government has proved

beyond a reasonable doubt, and you should find the defendants

guilty on, all charges they are facing.  Thank you.

THE COURT:  All right.  Ladies and gentlemen, during

the trial, I have permitted those jurors who wanted to do so to

take notes.  You may take your notebooks with you to the jury

room; use them during your deliberations if you wish.

I told you at the beginning of the trial, your notes

are only to be an aid to your memory.  They are not evidence in

the case.  They should not replace your own memory of the

evidence.  Those jurors who have not taken notes should rely on

their own memory of the evidence.  The notes are intended to be

1    for the note taker's own personal use.

2          I will provide you a copy of my instructions in

3    writing.  During your deliberations you may, if you want, refer

4    to these instructions.  While you may refer to any particular

5    instructions, you are to consider the instructions as a whole.

6    You may not follow some and ignore others.  If you have any

7    questions about the instructions, you should feel free to send

8    me a note.  Please return your instructions to me when your

9    verdict is returned.

10          My function is to conduct this trial in an orderly,

11   fair, and efficient manner, to rule on questions of law, and to

12   instruct you on the law that applies in this case.  It's your

13   duty to accept the law as I instruct you.  You should consider

14   all the instructions as a whole.  You may not ignore or refuse

15   to follow any of them.

16          Your function as the jury is to determine what the

17   facts are in this case.  You are the sole judges of the facts.

18   While it's my responsibility to decide what is admitted as

19   evidence during the trial, you alone decide what weight, if

20   any, to give to that evidence.  You alone decide the

21   credibility or believability of the witnesses.

22          As I explained earlier, as human beings, we all have

23   personal likes and dislikes, opinions, prejudices and biases.

24   Generally, we're aware of these things, but you should also

25   consider the possibility that you have implicit biases, that

1   is, biases of which you may not be consciously aware, even I.

2        Personal prejudices, preferences, or biases have no

3   place in a courtroom, where the goal is to arrive at a just and

4   impartial verdict.  All people deserve fair treatment in the

5   legal system, regardless of any personal characteristic, such

6   as race, national or ethnic origin, religion, age, disability,

7   sex, gender identity, expression, sexual consideration,

8   education, political beliefs, income level, or any other

9   personal characteristic.  You should determine the facts solely

10  from a fair consideration of the evidence.

11       You must not take anything I may have said or done as

12  indicating how I think you should decide this case.  If you

13  believe I have expressed or indicated any such opinion, you

14  should ignore it.  The verdict in this case is your sole and

15  exclusive duty and responsibility.

16       If any reference by me or the attorneys to the

17  evidence in the case is different from your own memory of the

18  evidence, it's your memory that should control during your

19  deliberations.  During your deliberations you may consider only

20  evidence properly admitted in this trial.  The evidence in the

21  case consists of the sworn testimony of the witnesses and

22  exhibits that were admitted into evidence.  When you consider

23  the evidence, you're permitted to draw from the facts you find

24  have been proven such reasonable inferences as you feel are

25  justified in the light of your experience.  You should give any

 1  evidence such weight as in your judgment it's fairly entitled

 2  to receive.

 3          The statements and arguments of the lawyers are not

 4  evidence.  They are only intended to assist you in

 5  understanding the evidence.  Similarly, the questions of the

 6  lawyers are not evidence.

 7          The indictment is merely the formal way of accusing a

 8  person of a crime.  You must not consider the indictment as

 9  evidence of any kind.  You must not consider it as any evidence

10  of a defendant's guilt or draw any inference of guilt from it.

11          Every defendant in a criminal case is presumed to be

12  innocent.  This presumption of innocence remains with the

13  defendant throughout the trial unless and until the government

14  has proven he is guilty beyond a reasonable doubt.  This burden

15  of proof never shifts throughout the trial.

16          The law does not require Gregory Richard Purdy, Jr.,

17  Matthew Purdy, or Robert Turner to prove his innocence or to

18  produce any evidence at all.  If you find that the government

19  has proven beyond a reasonable doubt every element of a

20  particular offense with which George [sic] Richard Purdy, Jr.,

21  Matthew Purdy, or Robert Turner is charged, then it is your

22  duty to find him guilty of that offense.

23          On the other hand, if you find the government has

24  failed to prove any element of a particular offense beyond a

25  reasonable doubt, it is your duty to find George [sic] Richard

Purdy, Jr., Matthew Purdy, or Robert Turner not guilty of that offense.

The government has the burden of proving George [sic] Richard Purdy, Jr., Matthew Purdy, or Robert Turner guilty beyond a reasonable doubt.

In civil cases, it's only necessary to prove that a fact is more likely true than not, or in some cases, that it's true that it's highly probable. In criminal cases, such as this one, the government's proof must be more powerful than that; it must be beyond a reasonable doubt.

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If after careful, honest and impartial consideration of all the evidence, you cannot say that you're firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork. It's a doubt based on reason.

The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty; its burden is to prove guilt beyond a reasonable doubt.

There are two types of evidence from which you may

1    determine what the facts in this case are, direct evidence and

2    circumstantial evidence.  When a witness such as an eyewitness

3    asserts actual knowledge of a fact, that witness's testimony is

4    direct evidence.  On the other hand, the evidence of facts and

5    circumstances from which reasonable inferences may be drawn is

6    circumstantial evidence.

7         Let me give you an example.  Assume a person looked

8    out a window and saw that snow was falling.  If he later

9    testified in court about what he had seen, his testimony would

10   be direct evidence, that snow was falling at the time he saw it

11   happen.  Assume however that he looked out a window and saw no

12   snow on the ground, and then went to sleep and saw snow on the

13   ground when he woke up.  His testimony about what he had seen

14   would be circumstantial evidence that it had snowed while he

15   was asleep.

16        The law says that both direct evidence and

17   circumstantial evidence are acceptable as a means of proving a

18   fact.  The law does not favor one form of evidence over

19   another.  It's for you to decide how much weight to give to any

20   particular evidence, whether it's direct or circumstantial.

21   You're permitted to give equal weight to both.  Circumstantial

22   evidence does not require a greater degree of certainty than

23   direct evidence.  In reaching a verdict in this case, you

24   should consider all of the evidence presented, both direct and

25   circumstantial.

1          One of the questions you were asked when we were

2    selecting the jury was whether the matter of the charge

3    itself -- charges themselves would affect your verdict in

4    reaching a fair and impartial verdict.  We asked you that

5    question because you must not allow the nature of a charge to

6    affect your verdict.  You must consider only the evidence

7    that's presented in this case in reaching a fair and impartial

8    verdict.

9          The lawyers in this case sometimes objected when the

10   other side asked a question or made an argument or offered

11   evidence that the objecting lawyer believed was not proper.

12   You must not hold such objections against the lawyer who made

13   them or the party that he or she represents.  It's the lawyers'

14   responsibility to object to evidence that they believe is not

15   admissible.

16         If during the course of the trial I sustained an

17   objection to a lawyer's question, you should ignore the

18   question.  You must not speculate as to what the answer would

19   have been.  If after a question, a witness answered a question,

20   I ruled that the answer should be stricken, you should ignore

21   both the question and the answer.  They should have no part in

22   your deliberations.

23         Likewise, exhibits as to which I have sustained an

24   objection or which are ordered stricken are not evidence.  You

25   must not consider them in your deliberations.

1          In determining whether the government has proved the

2     charges against the defendant beyond a reasonable doubt, you

3     must consider the testimony of all the witnesses who have

4     testified.  You are the sole judges of the credibility of the

5     witnesses.  You alone determine whether to believe any witness

6     and the extent to which a witness should be believed.  Judging

7     a witness's credibility means evaluating whether the witness

8     testified truthfully and whether the witness accurately

9     observed, recalled, and described the matters about which the

10    witness has testified.

11         Counts 1 -- I'm sorry, I skipped a page.

12         As I instructed at the beginning of the trial and

13    again just now, you should evaluate the credibility of the

14    witnesses free from prejudice and bias.  You may consider

15    anything else that in your judgment affects the credibility of

16    any witness.  For example, you may consider the demeanor and

17    the behavior of the witness here on the witness stand, the

18    witness's manner of testifying, whether the witness impresses

19    you as having an accurate memory, whether the witness has any

20    reason for not telling the truth, whether the witness has had a

21    meaningful opportunity to observe the matters about which she

22    or he has testified, whether the witness has any interest in

23    the outcome of the case or stands to gain anything by

24    testifying or has friendship or hostility toward other people

25    concerned with the case.

1              In evaluating the accuracy of a witness's memory, you

2       may consider the circumstances surrounding the event, including

3       the time that has elapsed between the event and any later

4       recollection of the event and the circumstances under which the

5       witness was asked to recall the details of the event.

6              You may consider whether there are any inconsistencies

7       or consistencies in the witness's testimony or between the

8       witness's testimony and any previous statements made by the

9       witness.  You may consider any consistencies or inconsistencies

10      between the witness's testimony and any other evidence that you

11      credit.  You may consider whether any inconsistencies are the

12      result of lapse in memory, mistake, misunderstanding,

13      intentional falsehood, or difference in perception.

14             You may consider the reasonableness or

15      unreasonableness, the probability or improbability of the

16      testimony of a witness in determining whether to accept it as

17      true and accurate.  You may consider if the witness has been

18      contradicted or supported by other evidence that you credit.

19      If you believe any witness has shown him or herself to be

20      biased or prejudiced for or against either side in this trial

21      or motivated by self-interest, you may consider and determine

22      whether such bias or prejudice has colored the testimony of the

23      witness so as to affect the desire and capability of that

24      witness to tell the truth.  You should give the testimony of

25      each witness such weight as in your judgment it's fairly

1    entitled to receive.

2          A police officer's testimony should be evaluated by

3    you just as any other evidence in the case.  In evaluating an

4    officer's credibility, you should use the same guidelines that

5    you apply to the testimony of any witness.  In no event should

6    you give either greater or lesser weight to the testimony of

7    any witness merely because he or she is a police officer.

8          Every defendant in a criminal case has an absolute

9    right not to testify.  Gregory Richard Purdy, Jr.,

10   Matthew Purdy and Robert Turner have each chosen to exercise

11   this right.  You must not hold this decision against them, and

12   it would be improper for you to speculate as to the reason or

13   reasons for their decisions.  You must not assume a defendant

14   is guilty because he chose not to testify.

15         Counts 1 and 3 charge Defendant Gregory Richard Purdy,

16   Jr. individually with obstructing law enforcement officers

17   during a civil disorder, which is in violation of federal law.

18   Specifically, Count 1 concerns officers BB and AG of the

19   Metropolitan Police Department.  Count 3 concerns officers from

20   the United States Capitol Police.

21         Count 4 charges the Defendants Gregory Richard Purdy,

22   Jr. and Robert Turner with obstructing law enforcement officers

23   during a civil disorder, which is a violation of federal law.

24   Count 4 concerns officers CK and AS of the Metropolitan Police

25   Department.  Count 4 also charges Defendants Gregory Richard

1    Purdy, Jr. and Robert Turner with attempt to commit the crime

2    of obstructing officers during a civil disorder and aiding and

3    abetting others to commit that offense.

4            First I'll explain the elements of the substantive

5    offense, along with its associated definitions, then I'll

6    explain how to determine whether the defendant attempted the

7    offense and whether the defendant aided and abetted the

8    offense.

9            In order to find each of the defendants guilty of the

10   offense, you must find that the government proved each of the

11   following elements beyond a reasonable doubt.

12           First, the defendant knowingly committed or attempted

13   to commit an act with the intended purpose of obstructing,

14   impeding, or interfering with officers BB, AG, AS, CK, or

15   others from the U.S. Capitol Police.

16           Second, at the time of the defendant's actual or

17   attempted act, the U.S. Capitol Police or Officers BB, AG, AS

18   or CK were engaged in the lawful performance of their official

19   duties incident to or during a civil disorder.

20           And third, that the civil disorder in any way or

21   degree obstructed, delayed, or adversely affected commerce or

22   the movement of any article or commodity in commerce or the

23   conduct or performance of any federally protected function.

24           The term civil disorder means any public disturbance

25   involving acts of violence by groups of three or more persons

which, A, causes an immediate danger of injury to another

individual; B, causes an immediate danger of damage to another

individual's property; C, results in the injury to another

individual; or D, results in damage to another individual's

property.

The term "commerce" means commerce or travel between

one state, including the District of Columbia, and any other

state, including the District of Columbia.  It also means

commerce wholly within the District of Columbia.

The term "federally protected function" means any

function, operation, or action carried out under the laws of

the United States by any department, agency, or instrumentality

of the United States or by an officer or employee thereof.

The term "department" includes one of the departments

of the executive branch, such as the Department of Homeland

Security, which includes United States Secret Service or the

legislative branch.

The term "agency" includes any department, independent

establishment, commission, administration, authority, board or

bureau of the United States.

The term "instrumentality" includes any formal entity

through which the government operates, such as Congress or the

United States Capitol Police.

For the United States Capitol Police and the

Metropolitan Police Department, on January 6, 2021, the term

"official duties" means policing the U.S. Capitol building and
grounds, including enforcing federal law and DC law in those
areas.

A person acts knowingly if he realizes that what he is
doing and is aware of the nature of his conduct and does not
act through ignorance, mistake, or accident.  In deciding
whether the defendant acted knowingly, you may consider all of
the evidence, including what the defendant did, said, or
perceived.

In this case, the government further alleges that
defendants George [sic] Richard Purdy, Jr. and Robert Turner
committed the offense of obstructing officers during a civil
disorder as charged in Count 4 by aiding and abetting others in
committing this offense.  This is not a separate offense, but
merely another way in which the government alleges that each of
the defendants committed this offense in Count 4.

A person may be guilty of an offense if he aided and
abetted another person in committing the offense.  A person who
has aided and abetted another person in committing an offense
is often called an accomplice.  The person whom the accomplice
aids and abets is known as the principal.  It is not necessary
that all the people who committed the crime be called or
identified.  It is sufficient if you find beyond a reasonable
doubt that the crime was committed by someone and that the
defendant knowingly and intentionally aided and abetted that

1  person in committing the crime.

2          In order to find each of the defendants guilty of

3  obstructing officers during a civil disorder because the

4  defendants aided and abetted others in committing this offense,

5  you must find that the government proved beyond a reasonable

6  doubt the following elements.

7          First, that others committed obstructing officers

8  during a civil disorder by committing each of the elements of

9  the offense charged as I've explained above.

10          Second, that the defendant knew that obstructing

11  officers during a civil disorder was going to be committed or

12  was being committed by others.

13          Third, that the defendant performed an act or acts in

14  furtherance of the offense.

15          Fourth, that the defendant knowingly performed that

16  act or acts for the purpose of aiding, assisting, soliciting,

17  facilitating, or encouraging others in committing the offense

18  of obstructing officers during a civil disorder.

19          Fifth, that the defendant did that act or acts with

20  the intent that others commit the offense of obstructing the

21  officers during a civil disorder.

22          To show that each of the -- of the defendants

23  performed an act or acts in furtherance of the offense charged,

24  the government must prove some affirmative participation by the

25  defendant which at least encouraged others to commit the

1    offense; that is, you must find that the defendant's act or

2    acts did in some way aid, assist, facilitate, or encourage

3    others to commit the offense.

4         The defendant's act or acts need not further aid,

5    assist, facilitate or encourage every part or phase of the

6    offense charged.  It is enough if the defendant's act or acts

7    further aided, assisted, facilitated, or encouraged only one or

8    some parts or phases of the offense.  Also, the defendant's

9    acts need not themselves be against the law.

10        In deciding whether the defendant had the required

11   knowledge and intent to satisfy the fourth requirement for

12   aiding and abetting, you may consider both direct and

13   circumstantial evidence, including the defendant's words and

14   actions and other facts and circumstances.

15        However, evidence that the defendant merely associated

16   with persons involved in a criminal venture or was merely

17   present or was merely a knowing spectator during the commission

18   of the offense is not enough for you to find the defendant

19   guilty as an aider and abetter.  If the evidence shows that

20   defendant knew the offense was being committed or was about to

21   be committed, but does not also prove beyond a reasonable doubt

22   that it was the defendant's intent and purpose to aid, assist

23   and encourage, facilitate, or otherwise associate the defendant

24   with the offense, you may not find the defendant guilty of

25   obstructing officers during a civil disorder as an aider and

1    abetter.

2          The government must prove beyond a reasonable doubt

3    that the defendant in some way participated in the offense

4    committed by others as something the defendant wished to bring

5    about and make succeed.

6          The defendant may be found guilty of the offense

7    charged in Counts 1 and 3 if the defendant committed the

8    offense of obstructing officers during a civil disorder or

9    attempted to commit the offense of obstructing officers during

10   a civil disorder.

11         Defendant may be found guilty of the offense charged

12   in Count 4 if the defendant committed the offense of

13   obstructing the officers during a civil disorder, attempted to

14   commit the offense of obstruction of a civil disorder, or aided

15   and abetted the offense of obstructing an officer during a

16   civil disorder.

17         Each of these three ways of committing the offense is

18   described in the instructions that I have given you.  If you

19   find beyond a reasonable doubt that the defendant committed the

20   offense of obstructing officers during a civil disorder in any

21   of these three ways, then you should find the defendant guilty

22   of Count 4 and you need not consider whether the defendant

23   committed the offense of obstructing officers during a civil

24   disorder in the other two ways.

25         As to Counts 2, 5 and 6, Count 2 of the indictment

1  charges George [sic] Richard Purdy, Jr. with assaulting,

2  resisting, or impeding MPD Officers BB and AG, which is a

3  violation of federal law.

4       Count 5 charges Gregory Richard Purdy, Jr. with

5  assaulting, resisting, or impeding MPD Officer CK.

6       And Count 6 charges Robert Turner with assaulting,

7  resisting, or impeding MPD Officer AS.  I'm going to instruct

8  you on this charge and explain the various elements that you

9  must consider.  After I give you the elements of these crimes,

10 I'll tell you in what order you should consider them.

11      To find each of the defendants guilty of this offense,

12 you must find that the government proved each of the following

13 elements beyond a reasonable doubt.

14      First, the defendant assaulted, resisted, opposed,

15 impeded, intimidated, or interfered with MPD Officers BB, AG,

16 AS or CK, officers from the Metropolitan Police Department.

17      Second, the defendant did such acts forcibly.

18      Third, the defendant did such acts voluntarily and

19 intentionally.

20      Fourth, MPD Officers BB, AG, AS or CK were assisting

21 officers of the United States who were then engaged in the

22 performance of their official duties.

23      Fifth, the defendant made physical contact with MPD

24 Officers BB, AG, AS or CK, or acted with the intent to commit

25 another felony.  For purposes of this element, "another felony"

refers to the offenses charged in Counts 1 and 3.

A person acts forcibly if he used force, attempted to use force or threatened to use force against the officer. Physical force or contact is sufficient, but actual physical contact is not required.

You may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one. The term "assault" means any intentional attempt or threat to inflict injury upon someone else when coupled with an apparent present ability to do so.

To find that the defendant committed an assault, you must find beyond a reasonable doubt that the defendant intended to inflict or threaten injury. "Injury" means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.

The terms "resist," "oppose," "impede," "intimidate" and "interfere with" carry their everyday, ordinary meanings. It is not necessary to show the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with was at the time assisting federal officers in carrying out an official duty so long as it is established beyond a reasonable doubt that the officer was, in fact, assisting a federal officer acting in the course of his duty

and that the defendant intentionally and forcibly assaulted, resisted, imposed, impeded, intimidated, or interfered with that officer.

The lesser included offense of simple assault.  To prove each of the defendants guilty of the lesser offense of Counts 2, 5 and 6, that is simple assault, you must find the following elements beyond a reasonable doubt.

First, that the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officers BB, AG, AS or CK, officers from the Metropolitan Police Department.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the defendants [sic] BB, AG, AS or CK were assisting officers of the United States who were then engaged in the performance of their official duties.

Now I'm going to instruct you as to the order in which you should consider the above offenses.

You should consider first whether the defendant is guilty of assaulting, resisting or impeding officers.  If you find the defendant guilty of that offense, do not go on to the lesser offense.  If you find the defendant not guilty, go on to consider whether he's guilty of simple assault.

If after making all reasonable efforts to reach a verdict on the first charge and you're not able to do so, then

1    you're allowed to consider the lesser charge.  That order of

2    deliberations will be reflected on the verdict form that I give

3    you.

4            Count 7 is obstruction of an official proceeding,

5    aiding and abetting in violation of 18 U.S.C. Section 1512(c)

6    and (2).  Count 7 of the indictment charges Defendants Gregory

7    Richard Purdy, Jr. and Robert Turner with corruptly obstructing

8    an official proceeding, which is a violation of federal law.

9            Count 7 also charges the Defendants Gregory Richard

10   Purdy, Jr. and Robert Turner with attempt to obstruct or impede

11   an official proceeding, and aiding and abetting others to

12   commit that offense.  First, I'll explain the elements of the

13   substantive offense along with its associated definitions, then

14   I'll explain whether to determine each of defendants aided and

15   abetted the offense.

16           In order to find each of the defendants guilty of the

17   offense, you must find that the government proved each of the

18   following elements beyond a reasonable doubt.

19           First, the defendant attempted to or did obstruct or

20   impede an official proceeding.

21           Second, the defendant attempted to obstruct or impede

22   the official proceeding.

23           Third, that defendant acted knowingly with awareness

24   that the natural and probable effect of their conduct would be

25   to obstruct or impede the official proceeding.

1              And fourth, the defendant acted corruptly.

2              To obstruct or impede means to block, interfere with,

3    or slow the progress of an official proceeding.

4              Congress's joint session to certify the Electoral

5    College vote on January 6, 2021 was an official proceeding as

6    that term is used in this count.  The official proceeding need

7    not be pending or about to be instituted at the time of the

8    offense.

9              If the official proceeding is not pending or about to

10   be instituted, the government must prove beyond a reasonable

11   doubt that the official proceeding was reasonably foreseeable

12   to the defendant.

13             The term "knowingly" has the same meaning described in

14   the instruction for Count 1.

15             The term "corruptly," the defendant must use

16   independently unlawful means or act with an unlawful purpose or

17   both.  The defendant must also act with consciousness of

18   wrongdoing.  Consciousness of wrongdoing means with an

19   understanding or awareness that what the person is doing is

20   wrong or unlawful.  Not all attempts to obstruct or impede an

21   official proceeding involve acting corruptly.  For example, a

22   witness in a court proceeding may refuse to testify by invoking

23   his or her constitutional right against self-incrimination.

24   That would obstruct or impede the proceeding, but that person

25   does not act corruptly.

In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding or by engaging in other independently unlawful conduct does act corruptly.

One way of acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or another person.  While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose.

The defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another person for the same conduct.

In this case, the government further alleges that Defendant Gregory Richard Purdy, Jr. and Robert Turner committed obstruction of an official proceeding as charged in Count 7 by aiding and abetting others in committing this offense.  This is not a separate offense, but merely another way in which the government alleges that each of the defendants committed this offense in Count 7.  The aiding and abetting instruction is defined in Count 1.

In order to find each of the defendants guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

1          First, that the others committed obstruction of an

2     official proceeding by committing each of the elements of the

3     offense charged as I have explained above.

4          Second, that the defendant knew that obstruction of an

5     official proceeding was going to be committed or was being

6     committed by others.

7          Third, that the defendant performed an act or acts in

8     furtherance of the offense.

9          Fourth, that the defendant knowingly performed that

10     act or acts for the purpose of aiding, assisting, soliciting,

11     facilitating or encouraging others in committing the offense of

12     obstruction of an official proceeding.

13          And fifth, that the defendant did that act or acts

14     with the intent that others commit the offense of obstruction

15     of an official proceeding.

16          To show that the defendant performed an act or acts in

17     furtherance of the offense charged, the government must prove

18     some affirmative participation by the defendant which at least

19     encouraged others to commit the offense.  That is, you must

20     find that the defendant's act or acts did in some way assist,

21     facilitate, or encourage others to commit the offense.

22     Defendant's act or acts need not further aid, assist,

23     facilitate or encourage every part of or phase of the offense

24     charged.  It is enough that the defendant's act or acts further

25     aided, assisted, facilitated or encouraged only one or some

1   part or phases of the offense.  Also, defendant's acts need not

2   themselves be against the law.

3         In deciding whether the defendant had the required

4   knowledge and intent to satisfy the fourth requirement for

5   aiding and abetting, you may consider both direct and

6   circumstantial evidence, including the defendant's words and

7   actions and other facts and circumstances.  However, evidence

8   that the defendant merely associated with persons involved in a

9   criminal venture or was merely a knowing spectator during

10  commission of the offense is not enough for you to find the

11  defendant guilty as an aider and abetter.

12        If the defendant shows that defendant knew the offense

13  was being committed or was about to be committed, but does not

14  prove beyond a reasonable doubt that it was defendant's intent

15  and purpose to aid, assist, encourage, facilitate, or otherwise

16  associate the defendant with the offense, you may not find the

17  defendant guilty of obstruction of an official proceeding as an

18  aider and abetter.

19        The government must prove beyond a reasonable doubt

20  that the defendant in some way participated in the offense

21  committed by others as something the defendant wished to bring

22  about and to make succeed.

23        The defendant may be found guilty of the offense

24  charged in 7 if the defendant obstructed an official

25  proceeding, attempted to obstruct an official proceeding, or

1    aided and abetted obstruction of an official proceeding.  Each

2    of these three ways of committing the offense is described in

3    the instructions I have just given you.  If you find beyond a

4    reasonable doubt that the defendant committed the offense of

5    obstruction of an official proceeding in any of these three

6    ways, you should find the defendant guilty of Count 7 and you

7    need not consider whether the defendant committed the offense

8    of obstruction of an official proceeding in the other two ways.

9           Count 8, entering and remaining in a restricted

10   building or grounds in violation of 18 U.S.C. Section

11   1752(a)(1) charges all three defendants, Gregory Richard Purdy,

12   Jr., Matthew Purdy and Robert Turner with entering and

13   remaining in a restricted building or grounds, which is a

14   violation of federal law.  In order to find each of the

15   defendants guilty of this offense, you must find that the

16   government proved each of the following elements beyond a

17   reasonable doubt.

18          First, the defendant entered or remained in a

19   restricted building or grounds without lawful authority to do

20   so.

21          Second, the defendant did so knowingly.

22          The term "restricted building or grounds" means any

23   posted, cordoned, or otherwise restricted area of a building or

24   grounds where a person protected by the Secret Service is or

25   will be temporarily visiting.  The term "person protected by

the Secret Service" includes the Vice President and the
immediate family of the Vice President.

The term "knowingly" has the same meaning as described
in the instructions for Count 1.  The defendant knowingly
enters or remains in a restricted building or grounds if he
knows it is in a posted, cordoned off, or otherwise restricted
area and knows that a person protected by the Secret Service is
or will be temporarily visiting that posted, cordoned off, or
otherwise restricted area.

Count 9, disorderly and disruptive conduct in
restricted buildings and grounds in violation of 18 U.S.C.
Section 1752(a)(2).  All three defendants are charged in
Count 9 of the indictment.  Gregory Richard Purdy, Jr.,
Matthew Purdy and Robert Turner, are charged with disorderly
and disruptive conduct in a -- in a restricted building or
grounds in violation of federal law.  In order to find each of
the defendants guilty of this offense, you must find the
government has proved each of the following elements beyond a
reasonable doubt.

First, the defendant engaged in disorderly or
disruptive conduct in or in proximity to any restricted
building or grounds.

Second, the defendant did so knowingly with the intent
to impede and disrupt the orderly conduct of government
business or official functions.

1    Third, the defendant's conduct occurred when or so

2    that their conduct, in fact, impeded or disrupted the orderly

3    conduct of government business or functions.

4    Disorderly conduct is conduct which tends to disturb

5    the public peace or undermine public safety.  Even passive,

6    quiet, and nonviolent conduct can be disorderly if the conduct

7    is likely to cause a public disturbance.

8    Disruptive conduct is conduct that when viewed in the

9    circumstances in which it takes place tends to interfere with

10   or inhibit unusual -- usual proceedings.  This includes conduct

11   which causes a disorder or turmoil, or that stops or prevents

12   the normal continuance of an activity.

13   Whether particular conduct is disruptive depends on

14   the context and surrounding circumstances, includes conduct

15   that is out of place for the time or setting where it occurs.

16   The term "restricted building or grounds" and

17   "knowingly" have the same meanings as described in Count 8.

18   Count 10, engaging in physical violence in a

19   restricted building or grounds in violation of 18 U.S.C.

20   Section 7252 -- 18 U.S.C. Section 1752(a)(4).  In this one,

21   only Gregory Richard Purdy, Jr. and Robert Turner are named.

22   They are charged with engaging with physical violence in a

23   restricted building or grounds in violation of federal law.  In

24   order to find each of the defendants guilty of this offense,

25   you must find the government proved each of the following

1    elements beyond a reasonable doubt.

2          First, the defendant engaged in an act of physical

3    violence against a person or property in a restricted building

4    or grounds.

5          And second, the defendant did so knowingly.

6          The term "act of physical violence" means any act

7    involving assault or infliction of bodily harm on the -- an

8    individual, or damage to or destruction of real or personal

9    property.

10         The term "restricted building or grounds" and

11   "knowingly" have the same meaning described in the instruction

12   for Count 8.

13         Count 11, disorderly conduct in a Capitol building in

14   violation of 40 U.S.C. Section 5104(e)(2)(D), in which all

15   three defendants are charged.  Gregory Richard Purdy, Jr.,

16   Matthew Purdy, and Robert Turner are charged with disorderly

17   and disruptive conduct in a Capitol building or grounds, which

18   is a violation of federal law.

19         In order to find each of the defendants guilty of this

20   offense, you must find that the government proved each of the

21   following elements beyond a reasonable doubt.

22         First, that defendant engaged in disorderly or

23   disruptive conduct in any of the United States Capitol

24   buildings or grounds.

25         Second, the defendant did so with the intent to

1    impede, disrupt, or disturb the orderly conduct of a session of

2    Congress or House of Congress.

3           Third, the defendant acted willfully and knowingly.

4           The term "Capitol buildings" includes the United

5    States Capitol located at First Street Southeast in Washington,

6    DC.  The term "Capitol buildings" are defined in United States

7    code, which refers to a 1946 map on file in the Office of the

8    Surveyor of the District of Columbia.  The boundaries of the

9    Capitol grounds include all additions added by law after that

10   map was recorded.

11          The Capitol grounds include the portions of

12   Pennsylvania Avenue Northwest from the west curb of the First

13   Street Northwest to the curb of Third Street Northwest.

14          The term "House of Congress" means United States

15   Senate or the United States House of Representatives.

16          "Disorderly conduct" and "disruptive conduct" have the

17   same meaning as included in the instructions for Count 9.

18          For purposes of this offense, the orderly conduct of

19   the session of Congress or either house of Congress includes

20   the actions of Congress's joint session to certify the

21   electoral college vote.

22          A person acts willfully if he acts with the intent to

23   do something that the law forbids, that is, to disobey or

24   disregard the law.  While the government must show that the

25   defendant knew the conduct was unlawful, the government need

1   not prove that the defendant was aware of the specific

2   conduct -- of the specific law that his conduct violated.

3          The term "knowingly" has the same meaning as

4   prescribed in the instruction for Count 1.

5          We're almost here.

6          Count 12, active physical violence in Capitol grounds

7   or buildings in violation of 40 U.S.C. Section 5104(e)(2)(F).

8          Count 4 charges the defendants Gregory Richard Purdy,

9   Jr. and Robert Turner with an act of physical violence in the

10  Capitol building or grounds, which is a violation of federal

11  law.  In order to find each of the defendants guilty of this

12  offense, you must find that the government proved each of the

13  following elements beyond a reasonable doubt.

14         First, the defendant engaged in an act of physical

15  violence within the Capitol building or grounds.

16         And second, the defendant acted willfully and

17  knowingly.

18         The term "act of physical violence" means any act

19  involving an assault or other infliction or threat of

20  infliction of death or bodily harm on an individual, or

21  involving damage to or destruction of real or personal

22  property.  For purposes of this offense, unlike the offense in

23  Count 6, the threat of infliction of bodily harm is sufficient

24  to meet this definition.

25         The term "knowingly" has the same meaning described in

1    the instruction for Count 1.

2         The terms "Capitol building" and "Capitol grounds" and

3    "willfully" have the same meaning described in the instructions

4    for Count 11.

5         Count 13, parading, demonstrating, or picketing in a

6    Capitol building in violation of 40 U.S.C. Section

7    5104(e)(2)(G).

8         Count 13 alleges defendants Gregory Richard Purdy,

9    Jr., Matthew Purdy, and Robert Turner, all three, with

10   parading, demonstrating, or picketing in a Capitol building,

11   which is a violation of federal law.

12        In order to find each of the defendants guilty of this

13   offense, you must find that the government proved each of the

14   following elements beyond a reasonable doubt.

15        First, the defendants paraded, demonstrated, or

16   picketed in any of the United States Capitol buildings.

17        Second, the defendants acted willfully and knowingly.

18        The term "parade" and "picket" have their ordinary

19   meanings.  The term "demonstrate" refers to conduct that would

20   disrupt the orderly business of Congress, for example, by

21   impeding or obstructing passageways, hearings or meetings, but

22   does not include activities such as quiet parading.

23        The term "knowingly" has the same meaning described in

24   the instructions for Count 1.

25        The term "Capitol buildings" and "willfully" have the

1    same meaning as described in the instruction for Count 11.

2         That was a mouthful, wasn't it?

3         Okay.  Just a few more items.

4         There will be a verdict sheet I will send with you

5    with your instructions, which you will have with you in the

6    jury room, which will have point by point so you can go through

7    them point by point.

8         Someone's intent, knowledge, or other state of mind

9    ordinarily cannot be proved directly because there is no way of

10   knowing what a person is actually thinking.  But you may infer

11   someone's intent, knowledge, or other state of mind from the

12   surrounding circumstances.

13        You may consider any statement made or acts done or

14   omitted by Gregory Richard Purdy, Jr., Matthew Purdy, or

15   Robert Turner, and all of the facts and circumstances received

16   in evidence which indicate his intent, knowledge, or other

17   state of mind.  You may infer, but you're not required to

18   infer, that a person intends the natural and probable

19   consequences of acts that he intentionally did or intentionally

20   did not do.  It is entirely up to you, however, to decide what

21   facts to find from the evidence received during this trial.

22        You should consider all of the circumstances and

23   evidence that you think are relevant in determining whether the

24   government has proved beyond a reasonable doubt that Gregory

25   Richard Purdy, Jr. Matthew Purdy, or Robert Turner acted with

1    the necessary state of mind.

2            Each count of the indictment charges a separate

3    offense.  Moreover, each defendant is entitled to have the

4    issue of his guilt as to each of the crimes for which he's on

5    trial determined from his own conduct and from the evidence

6    that applies to him as if he were being tried alone.  You

7    should, therefore, consider separately each offense and the

8    evidence which applies to it, and you should return separate

9    verdicts as to each count of the indictment, as well as to each

10   defendant, unless I separately instruct you to do otherwise.

11           The fact that you may find any one defendant guilty or

12   not guilty on any one count of the indictment should not

13   influence your verdict with respect to any other count of the

14   indictment for that defendant, nor should it influence your

15   verdict with respect to any other defendant as to that count or

16   any other count in the indictment.

17           Thus, you may find one or more of the defendants

18   guilty or not guilty on any one or more counts in the

19   indictment and you may return different verdicts as to the

20   verdict as to different defendants and as to different counts.

21           At any time during your deliberations, you may return

22   your verdict guilty or not guilty with respect to any

23   defendants on any count.

24           A verdict must represent the considered judgment of

25   each juror.  In order to return a verdict, each juror must

1    agree on the verdict.  In other words, the jury verdict must be

2    unanimous as to each and every count.

3          I will give you a verdict form for you to use when

4    you've completed your deliberations.  The form is not evidence

5    in the case.  Nothing in it should be taken by you to suggest

6    or convey any opinion by me as to what your verdict should be.

7    Nothing in the verdict form replaces the instructions of law I

8    have just read to you, or nothing in it replaces or modifies

9    the instructions about the elements of law which the government

10    must prove beyond a reasonable doubt.  The form is only meant

11    to assist you in returning your verdict.

12          I will send into the jury room with you the exhibits

13    that have been admitted into evidence.  You may examine any or

14    all of them as you consider your verdict.  Keep in mind that

15    exhibits that were only marked for identification but not

16    admitted into evidence will not be given to you to examine or

17    consider in reaching your verdict.  If you wish to see or hear

18    those portions of exhibits submitted into evidence, you may

19    review those in the jury room.

20          When you return to the jury room to begin your

21    deliberations, you first should select a foreperson to preside

22    over your deliberations and be your spokesperson here in court.

23    There are no specific rules regarding how you should select a

24    foreperson.  That's up to you.  However, as go about the task,

25    be mindful of your mission to reach a fair and just verdict

1    based on the evidence.

2          Consider selecting a foreperson who will be able to

3    facilitate your discussion, who can help you organize the

4    evidence, who will encourage civility and mutual respect among

5    all of you, who will invite each juror to speak up regarding

6    his or her views about the evidence, and who will promote a

7    full and fair consideration of all the evidence.

8          The question of possible punishment of the defendant

9    in the event of conviction is not a concern of jurors in the

10   federal system and should not enter into and influence your

11   deliberations in any way.  The duty of imposing sentence in the

12   event of conviction rests exclusively with me.

13         Your verdict should be based solely on the evidence in

14   this case.  You should not consider the matter of punishment at

15   all.

16         I would like to remind you that in some cases,

17   although not necessarily this one, there may be reports in the

18   newspaper, radio, or television concerning this case.  If there

19   are any such media coverage in this case, you may be tempted to

20   read, listen to, or watch it.  You must not read, listen to, or

21   watch any such reports because you must decide this case solely

22   on the evidence presented in the courtroom.  If publicity about

23   the trial inadvertently comes to your attention, do not discuss

24   it with jurors or anyone else.  Just let me know, or the clerk

25   or the marshal, who will be outside the door, you need to speak

1   to me.

2           As you retire to the jury room to deliberate, I want

3   to remind you of the instruction I gave you at the beginning of

4   the trial.  During deliberations, you may not communicate with

5   anyone not on the jury about the case.  That includes

6   electronic communications such as email or text or blogging

7   about the case.  You may not conduct any independent

8   investigation during deliberations.  You may not conduct any

9   research, in person or electronically, about email or internet

10  or any other way.

11          If it becomes necessary during your deliberations to

12  communicate with me, you may send a note by the clerk or

13  marshal signed by your foreperson or by any one or more members

14  of the jury.  No member should try to communicate with me other

15  than by signed note.  I will not communicate with any members

16  of the jury on any matter touching on the merits of the case

17  except in writing or orally here in court.

18          So if I get a note from you, I have to consult with

19  the parties and the defendants before I respond, so there may

20  be some delay in responding.  I can't respond and I can't have

21  any discussion with you until the verdict is reached unless I

22  consult with the parties and the defendants before I respond.

23          Bear in mind that you're never, under any

24  circumstances, to reveal to any person, not the clerk, the

25  marshal or me, how jurors are voting until after you've reached

1    a unanimous verdict.  This means, do not put in a writing, in a

2    note, or any other way how the jury has voted, for example,

3    6-6, 7-5 or 11-1.  I don't want to know.  Don't put it in a

4    note to me.  It's totally improper and I don't want to know

5    about it.

6           The attitude and conduct of jurors at the beginning of

7    their deliberation are matters of considerable importance.  It

8    may not be useful for a juror upon entering the jury room to

9    voice a strong expression of an opinion on the case or to

10   announce a determination to stand for a certain verdict.  When

11   one does that at the outset, a sense of pride may cause that

12   juror to hesitate, to back away from an announced position

13   after a discussion of the case.

14          Furthermore, many jurors find it useful it avoid an

15   initial vote upon retiring to the jury room.  Commonly,

16   reviewing and discussing the evidence in the case at the

17   beginning of their deliberations is often a more useful way to

18   proceed.  Remember you're not partisans or advocates.  You're

19   judges.  You're judges of the facts.

20          The last thing I have to do before you begin your

21   deliberations will be to excuse the alternate jurors.  As I

22   told you before, the selection of the alternates was a random

23   process.  It's nothing personal.  We selected you to be

24   alternates, and the rest of you remained healthy and attentive

25   and avoided mail trucks and other such things, and everybody

1    else stayed healthy, more or less.  I will be able to excuse

2    the alternates before we leave here today, but I will ask them

3    to tear out a page from your notebook and write down your name

4    and daytime phone number.  And do I this and ask you to

5    continue to follow the instructions about not speaking to

6    anyone about the case.  I have had to seat an alternate if

7    something happened during deliberations.  It's very unusual,

8    but it has happened.

9         So I'll ask you to not discuss the case and continue

10   to not read or listen to anything about the case in case some

11   disaster occurred and we had to restart deliberations.  I have,

12   upon rare occasions, put an alternate in at that stage.  I

13   certainly hope not to do it.  And I hope to also -- we will

14   call you and tell you whatever happened because, otherwise, you

15   have no way to find out whatever happened, unless we call you

16   and tell you whatever happened in the case.  But I do want to,

17   if you give me a minute to thank you for your service before

18   you leave, after we recess.

19        I have to consult with counsel now to see if I misread

20   anything in the final instructions.  My earlier instruction,

21   though, about don't communicate about the case, to the

22   alternates, I want to keep in place until -- let me talk to

23   counsel about whether I misread anything as I read the final.

24        (Begin bench conference)

25             MR. PALLAS:  Judge, the only thing I noticed was that

1    you referred to Gregory Purdy sometimes as George Purdy

2    alternately.  But as given, you read them correctly; although,

3    I do have the objections I made earlier, and I would -- I think

4    the rules require that I say I object at this point.

5         MR. BARKET:  Same.  I just renew my objections from

6    earlier, and the "George" thing.

7         MS. ISAAK:  The same thing about the "George."

8         MR. McWATERS:  Other than that, nothing from the

9    government.

10    (End bench conference)

11         THE COURT:  There are no additional objections that

12    weren't already made.  Apparently, I misread and said "George"

13    sometimes rather than "Gregory Purdy."  You all probably heard

14    that.  I don't have any others.

15         With that, my practice is, don't rush yourselves.  You

16    all decide at what pace you want to go.  I can stay late or

17    we'll come back tomorrow.  It's up to the jury.  I'm in no

18    rush.  But I also can stay late, so it's up to the jury to

19    decide your pace of deliberations and how much evidence you

20    want to look at and what you all do.  If you want to just go at

21    5:00 p.m. and come back tomorrow, it's fine by me.  What we do

22    in that situation is we don't have to reconvene in the

23    courtroom if you decide to just come back tomorrow.

24         You can't talk about the case unless all 12 of you are

25    there.  So once you elect a foreman, your foreman is going to

1    preside.  I just release you to come back tomorrow at 10:00.

2    You resume your deliberations at 10:00.  If you want to do

3    something today or send me a note today, I'll respond.  I'll

4    tell counsel to remain here, and we'll respond.  If you do send

5    me a note, sometimes there's a delay because I have to consult

6    before I respond to a note, as I said.  And if you want to do

7    something further today.  Otherwise, we'll reconvene at 10:00

8    tomorrow.

9         And once all 12 of you are in the room, you can have

10   deliberations.  If somebody goes to the bathroom, even, you

11   have to stop.  All 12 of you need to be in the room for

12   deliberations, and the foreman is the one that enforces that.

13   Otherwise, when I talk to you, it will be here in the courtroom

14   with everybody present.

15        With that, you'll be excused and the court will be in

16   recess.

17        (Jury absent)

18        (Proceedings recessed at 3:30 p.m.)

19

20

21

22

23

24

25

1                          CERTIFICATE

2        I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
3    Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript from the original stenographic
4    record in the above-entitled matter and that the transcript
     page format is in conformance with the regulations of the
5    Judicial Conference of the United States.

6        Dated this 30th day of June, 2024.

7

8                              /s/ Sonja L. Reeves
                           SONJA L. REEVES, RDR-CRR
9                          FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$30,000** [1] - 95:13

**/**

**/s** [1] - 141:8

**1**

**1** [37] - 17:17, 17:18, 18:5, 18:7, 18:8, 18:11, 18:13, 18:23, 21:23, 27:18, 27:20, 28:1, 28:3, 28:7, 35:17, 38:10, 40:4, 41:10, 43:5, 46:23, 47:2, 47:22, 62:22, 62:25, 65:22, 93:25, 108:11, 110:15, 110:18, 116:7, 118:1, 121:14, 122:20, 126:4, 130:4, 131:1, 131:24
**10** [9] - 1:11, 19:16, 26:14, 26:21, 36:24, 36:25, 59:9, 93:24, 127:18
**100** [1] - 33:21
**1001** [1] - 48:3
**1003** [1] - 48:4
**1033** [1] - 34:4
**10:00** [3] - 140:1, 140:2, 140:7
**10:08** [2] - 1:11, 3:1
**11** [11] - 27:15, 27:19, 27:22, 37:10, 59:18, 59:24, 93:7, 93:8, 128:13, 131:4, 132:1
**11-1** [1] - 137:3
**111** [7] - 5:24, 6:12, 6:24, 15:8, 15:9, 20:7, 20:21
**111(a** [8] - 8:4, 21:3, 23:13, 25:9, 32:5, 66:7, 67:18, 75:4
**111(a)** [1] - 38:15
**111(a)'s** [1] - 75:4
**111(a)(1** [3] - 10:13, 23:19, 23:25
**111(a)(1)s** [1] - 21:6
**111(b** [1] - 21:6
**111s** [2] - 17:25, 32:5
**12** [7] - 36:24, 36:25, 60:11, 130:6, 139:24, 140:9, 140:11
**12:28** [1] - 84:17
**12:53** [4] - 72:13, 79:12, 79:16, 89:23

**12:57** [3] - 72:12, 72:13, 89:23
**13** [6] - 27:25, 35:13, 37:10, 61:9, 131:5, 131:8
**14** [2] - 20:17, 28:9
**1400** [1] - 1:15
**15** [2] - 26:14, 26:21
**1512** [1] - 5:17
**1512(c** [1] - 120:5
**1512(c)(2** [1] - 10:6
**1512(c)(2)** [1] - 24:1
**16** [4] - 28:13, 28:16, 28:19, 28:20
**1620** [1] - 1:15
**17** [3] - 23:3, 24:5, 29:7
**1752** [11] - 7:23, 8:22, 8:23, 9:20, 10:5, 11:18, 12:8, 12:13, 25:14, 25:15, 88:24
**1752(a)(1** [1] - 125:11
**1752(a)(2)** [1] - 126:12
**1752(a)(4)** [1] - 127:20
**18** [7] - 12:13, 38:18, 120:5, 125:10, 126:11, 127:19, 127:20
**19** [2] - 93:17, 93:19
**1946** [1] - 129:7
**1:22-cr-00019-RCL** [1] - 1:5
**1:45** [2] - 84:13, 84:15
**1:53** [1] - 84:17

**2**

**2** [23] - 15:16, 15:19, 15:24, 20:18, 21:14, 21:24, 23:21, 28:10, 28:11, 35:17, 38:11, 40:6, 43:5, 48:15, 50:2, 56:1, 65:22, 90:1, 93:25, 116:25, 119:6
**2)** [1] - 120:6
**20** [3] - 6:11, 26:18, 27:3
**20/20** [1] - 74:11
**20001** [2] - 1:19, 1:24
**2020** [4] - 50:10, 51:24, 70:14, 70:16
**2021** [11] - 19:20, 33:16, 35:11, 70:14, 70:16, 84:22, 93:7, 93:8, 97:19, 112:25,

121:5
**2024** [4] - 1:11, 63:11, 63:23, 141:6
**22-019** [1] - 3:3
**220** [4] - 29:10, 29:13, 30:3, 30:9
**231** [9] - 6:13, 6:24, 8:12, 8:13, 8:14, 12:6, 18:21, 68:20, 92:24
**231(a)(3** [3] - 11:1, 24:1, 38:18
**231s** [2] - 17:25, 18:2
**2420** [1] - 2:9
**26** [1] - 29:8
**262-8200** [1] - 2:7
**29** [3] - 5:6, 9:7, 9:18
**2:00** [3] - 34:3, 42:5, 82:11
**2:10** [2] - 12:4, 36:10
**2:11** [2] - 36:10, 79:13
**2:13** [1] - 73:10
**2:13:50** [1] - 69:10
**2:13:51** [1] - 69:10
**2:15** [2] - 71:16, 73:2
**2:16** [2] - 73:10, 82:11

**3**

**3** [27] - 12:5, 16:11, 17:17, 17:18, 18:5, 18:7, 18:8, 18:11, 18:14, 18:23, 21:24, 28:1, 28:3, 28:7, 38:10, 40:4, 41:10, 43:21, 46:23, 47:5, 47:22, 66:21, 93:25, 110:15, 110:19, 116:7, 118:1
**3-27-24** [1] - 93:10
**30** [4] - 26:10, 26:18, 27:2
**30,000** [1] - 95:22
**302** [1] - 67:9
**303.9** [2] - 53:12, 55:3
**305** [2] - 2:3, 2:10
**30th** [1] - 141:6
**31** [1] - 29:20
**33130** [1] - 2:3
**33145** [1] - 2:10
**333** [1] - 1:24
**334** [1] - 2:7
**36103** [1] - 2:6
**373-6711** [1] - 2:3
**3:30** [6] - 1:11, 36:15, 44:20, 44:23, 45:24, 140:18

**4**

**4** [37] - 17:17, 17:18, 17:22, 18:7, 18:11, 18:15, 18:17, 18:22, 18:23, 18:24, 19:4, 19:14, 27:21, 28:7, 36:13, 36:17, 38:10, 40:4, 41:10, 44:24, 46:23, 47:7, 47:22, 67:18, 92:18, 92:24, 93:25, 110:21, 110:24, 110:25, 113:13, 113:16, 116:12, 116:22, 130:8
**40** [5] - 12:13, 26:11, 128:14, 130:7, 131:6
**402** [1] - 1:16
**411.1** [1] - 52:1
**412.1** [1] - 9:24
**42** [1] - 42:8
**426.1** [1] - 99:3
**431.1** [1] - 53:5
**438.1** [1] - 53:19
**44** [1] - 52:18
**440.1** [1] - 53:2
**442.1** [1] - 52:18
**4894** [1] - 2:6

**5**

**5** [15] - 17:1, 17:2, 20:18, 21:14, 23:21, 36:13, 38:11, 40:6, 45:22, 48:15, 50:2, 93:25, 116:25, 117:4, 119:6
**50** [1] - 27:3
**506.2** [2] - 100:21, 100:22
**5104** [2] - 8:24, 12:13
**5104(e)(2)(D** [1] - 128:14
**5104(e)(2)(F)** [1] - 130:7
**5104(e)(2)(G** [1] - 13:4
**5104(e)(2)(G)** [1] - 131:7
**511.2** [1] - 45:2
**5:00** [1] - 139:21
**5th** [6] - 11:16, 39:13, 70:13, 70:14, 70:15, 70:16

**6**

**6** [26] - 1:10, 19:20, 20:18, 21:16, 33:16, 35:11, 36:13, 38:11,

40:6, 48:15, 50:2, 70:14, 71:19, 84:22, 90:17, 93:2, 93:16, 93:25, 97:19, 112:25, 116:25, 117:6, 119:6, 121:5, 130:23
**6-6** [1] - 137:3
**601** [1] - 1:18
**601.3** [1] - 42:17
**602.2** [1] - 43:8
**603.9** [2] - 9:24, 97:11
**604.6** [1] - 46:13
**606.12** [1] - 98:7
**66** [1] - 2:2
**661-3700** [1] - 1:16
**68102** [1] - 1:16
**6th** [27] - 10:4, 11:16, 12:4, 37:8, 39:8, 39:12, 39:17, 42:3, 43:1, 43:6, 47:18, 48:5, 49:7, 50:8, 51:3, 52:11, 54:12, 60:10, 70:15, 70:16, 71:18, 75:19, 75:21, 78:22, 97:7, 97:9, 100:5

**7**

**7** [13] - 36:24, 37:5, 50:5, 69:1, 93:25, 120:4, 120:6, 120:9, 122:16, 122:19, 124:24, 125:6
**7-5** [1] - 137:3
**700** [1] - 51:2
**701** [1] - 51:2
**709** [1] - 51:3
**7252** [1] - 127:20
**752** [2] - 5:8, 5:16
**7th** [3] - 2:2, 11:16, 39:13

**8**

**8** [6] - 37:10, 57:14, 93:25, 125:9, 127:17, 128:12
**856-8580** [1] - 2:10

**9**

**9** [7] - 17:17, 37:10, 58:11, 93:25, 126:10, 126:13, 129:17
**9/11** [1] - 85:2
**902-5977** [1] - 1:19
**918** [1] - 1:19

# A

**a.m** [2] - 1:11, 3:1
**abets** [1] - 113:21
**abetted** [9] - 111:7, 113:18, 113:19, 113:25, 114:4, 116:15, 120:15, 122:23, 125:1
**abetter** [4] - 115:19, 116:1, 124:11, 124:18
**abetting** [20] - 18:22, 19:7, 23:13, 23:16, 23:19, 23:23, 27:16, 27:20, 28:10, 28:11, 29:2, 111:3, 113:13, 115:12, 120:5, 120:11, 122:16, 122:19, 124:5
**ability** [4] - 40:18, 71:4, 118:7, 118:12
**able** [9] - 35:7, 36:12, 40:2, 46:8, 101:11, 119:25, 135:2, 138:1
**above-entitled** [1] - 141:4
**absent** [2] - 4:24, 140:17
**absolute** [1] - 110:8
**absolutely** [4] - 8:1, 8:10, 69:4, 69:8
**accept** [4] - 29:17, 29:18, 102:13, 109:16
**acceptable** [1] - 106:17
**access** [2] - 38:8, 75:11
**accident** [4] - 62:10, 86:25, 89:5, 113:6
**accommodate** [1] - 4:13
**accompanied** [1] - 3:9
**accomplice** [2] - 113:20
**account** [3] - 53:3, 53:20, 58:7
**accountable** [1] - 42:4
**accuracy** [1] - 109:1
**accurate** [4] - 27:13, 108:19, 109:17, 141:3
**accurately** [1] - 108:8
**accuse** [1] - 67:23
**accusing** [1] - 104:7
**achieved** [1] - 43:19
**acknowledging** [1] - 52:22
**acquittal** [7] - 5:6,

5:23, 6:1, 6:12, 6:18, 7:20, 9:8
**act** [42] - 8:14, 9:4, 38:19, 38:22, 46:24, 47:13, 59:15, 60:11, 60:16, 71:6, 87:19, 96:9, 105:19, 111:13, 111:17, 113:6, 114:13, 114:16, 114:19, 114:23, 115:1, 115:4, 115:6, 121:16, 121:17, 121:25, 122:4, 122:7, 123:7, 123:10, 123:13, 123:16, 123:20, 123:22, 123:24, 128:2, 128:6, 130:9, 130:14, 130:18
**acted** [18] - 41:7, 49:18, 50:13, 50:14, 50:17, 54:1, 54:7, 60:2, 60:4, 60:21, 113:7, 117:24, 120:23, 121:1, 129:3, 130:16, 131:17, 132:25
**acting** [4] - 118:25, 121:21, 122:5
**action** [3] - 34:10, 67:3, 112:11
**actions** [18] - 12:23, 35:3, 35:17, 36:9, 40:16, 42:4, 47:7, 47:9, 49:8, 51:5, 54:6, 60:7, 60:9, 75:18, 99:9, 115:14, 124:7, 129:20
**active** [1] - 34:21, 130:6
**activities** [1] - 131:22
**activity** [2] - 8:25, 127:12
**acts** [43] - 33:19, 36:25, 37:4, 37:6, 37:15, 37:23, 38:2, 40:11, 40:20, 40:23, 46:18, 49:4, 49:6, 54:15, 61:9, 111:25, 113:4, 114:13, 114:16, 114:19, 114:23, 115:2, 115:4, 115:6, 115:9, 117:17, 117:18, 118:2, 118:8, 119:11, 119:12, 123:7, 123:10, 123:13, 123:16, 123:20, 123:22, 123:24, 124:1, 129:22, 132:13,

132:19
**actual** [5] - 36:3, 41:24, 106:3, 111:16, 118:4
**actus** [1] - 12:17
**ad** [1] - 88:22
**Adam** [1] - 74:16
**add** [4] - 8:4, 21:12, 74:24, 75:24
**added** [1] - 129:9
**adding** [2] - 16:10, 70:25
**addition** [3] - 10:9, 27:15, 48:6
**additional** [3] - 7:11, 57:25, 139:11
**additions** [1] - 129:9
**address** [9] - 11:7, 12:9, 35:17, 35:25, 36:13, 39:10, 41:2, 50:18, 100:1
**addressed** [3] - 11:19, 12:7, 37:9
**addresses** [1] - 13:9
**addressing** [1] - 9:19
**adds** [1] - 17:16
**administration** [1] - 112:19
**admissible** [1] - 107:15
**admitted** [10] - 9:5, 64:2, 64:7, 67:5, 68:23, 102:18, 103:20, 103:22, 134:13, 134:16
**adopt** [3] - 7:23, 8:12, 8:21
**adopted** [2] - 11:17, 12:6
**advanced** [1] - 14:14
**advantage** [1] - 122:6
**adverse** [4] - 6:20, 11:7, 11:9, 11:15
**adversely** [6] - 39:1, 39:8, 39:16, 47:24, 48:9, 111:21
**advocates** [1] - 137:18
**affair** [1] - 95:14
**affect** [4] - 39:1, 107:3, 107:6, 109:23
**affected** [6] - 39:9, 39:17, 47:24, 48:5, 48:9, 111:21
**affects** [1] - 108:15
**afield** [1] - 96:5
**afternoon** [2] - 71:17, 84:21
**AG** [17] - 15:11,

20:20, 20:21, 21:15, 32:6, 32:9, 62:25, 63:8, 110:18, 111:14, 111:17, 117:2, 117:15, 117:20, 117:24, 119:10, 119:14
**age** [2] - 15:20, 103:6
**agencies** [1] - 78:9
**agency** [2] - 112:12, 112:18
**Agent** [14] - 4:12, 4:16, 35:5, 39:11, 39:23, 43:22, 43:25, 51:7, 52:2, 53:6, 54:24, 77:18, 82:24
**agent** [3] - 77:8, 80:8, 80:16
**ago** [2] - 64:15, 93:11
**agree** [4] - 16:15, 16:19, 101:5, 134:1
**agreed** [1] - 28:9
**agreement** [2] - 8:6, 8:10
**ahead** [2] - 44:20, 84:11
**aid** [9] - 8:6, 8:9, 42:10, 101:22, 115:2, 115:4, 115:22, 123:22, 124:15
**aided** [11] - 111:7, 113:17, 113:19, 113:25, 114:4, 115:7, 116:14, 120:14, 122:23, 123:25, 125:1
**aider** [4] - 115:19, 115:25, 124:11, 124:18
**aiding** [22] - 18:22, 19:7, 23:13, 23:16, 23:18, 23:23, 27:16, 27:19, 28:10, 28:11, 29:2, 111:2, 113:13, 114:16, 115:12, 120:5, 120:11, 122:16, 122:19, 123:10, 124:5
**aids** [1] - 113:21
**Alabama** [1] - 2:6
**alarm** [1] - 57:10
**alive** [1] - 95:4
**allege** [1] - 23:18
**alleged** [10] - 5:25, 6:14, 9:10, 15:9, 20:21, 37:24, 61:14, 92:19, 92:24, 93:4
**allegedly** [1] - 32:8
**alleges** [11] - 32:6, 32:9, 62:25, 66:1,

69:2, 113:10, 113:15, 122:13, 122:18, 131:8
**alleging** [1] - 75:2
**allow** [1] - 107:5
**allowed** [2] - 57:12, 120:1
**almost** [4] - 34:13, 57:16, 87:25, 130:5
**alone** [12] - 64:6, 67:24, 68:6, 86:8, 88:6, 93:2, 96:21, 101:8, 102:19, 102:20, 108:5, 133:6
**Alphonso** [1] - 35:20
**alternate** [3] - 137:21, 138:6, 138:12
**alternately** [1] - 139:2
**alternates** [4] - 137:22, 137:24, 138:2, 138:22
**Amendment** [1] - 90:12
**AMERICA** [1] - 1:3
**America** [1] - 3:3
**ammunitions** [1] - 29:22
**analogy** [2] - 95:10, 95:18
**analysis** [1] - 83:13
**anger** [1] - 86:2
**angle** [2] - 43:9
**announce** [1] - 137:10
**announced** [1] - 137:12
**answer** [5] - 3:22, 84:6, 107:18, 107:20, 107:21
**answered** [2] - 40:19, 107:19
**anti** [2] - 85:10
**anti-Biden** [1] - 85:10
**anti-Trump** [1] - 85:10
**anticipate** [1] - 26:21
**anticipated** [1] - 80:2
**anticipates** [1] - 26:9
**Antifa** [1] - 85:10
**anyway** [2] - 52:22, 88:19
**apologized** [1] - 43:2
**apparent** [2] - 71:4, 118:11
**Appeals** [1] - 20:14
**appear** [4] - 6:2, 6:16, 10:14, 10:16
**appearance** [1] - 3:7
**appeared** [1] - 6:15

**applies** [9] - 18:22, 19:2, 19:3, 88:6, 88:8, 89:1, 102:12, 133:6, 133:8
**apply** [1] - 110:5
**appreciate** [1] - 61:6
**approach** [1] - 3:6
**apt** [2] - 46:5, 97:24
**area** [32] - 12:1, 12:19, 13:1, 29:10, 29:12, 35:6, 37:1, 37:2, 42:7, 44:21, 51:14, 54:22, 55:12, 55:15, 55:18, 56:11, 56:21, 57:11, 57:23, 58:1, 59:21, 60:24, 77:25, 78:9, 83:22, 99:11, 99:21, 101:12, 125:23, 126:7, 126:9
**Area** [1] - 89:16
**areas** [4] - 19:22, 30:5, 54:17, 113:3
**argue** [1] - 33:6
**argument** [12] - 7:24, 8:13, 10:5, 10:21, 12:15, 32:2, 61:20, 61:22, 63:3, 63:9, 66:11, 107:10
**arguments** [12] - 8:22, 9:20, 11:3, 11:17, 11:18, 12:6, 13:9, 26:20, 33:4, 87:1, 104:3
**arms** [1] - 93:22
**army** [2] - 99:7, 99:8
**arrest** [1] - 90:12
**arrested** [3] - 68:11, 90:14, 90:15
**arrive** [2] - 95:22, 103:3
**arrived** [1] - 34:2
**article** [3] - 39:2, 47:25, 111:22
**AS** [37] - 5:25, 6:2, 6:14, 10:14, 10:19, 10:20, 10:25, 20:20, 21:16, 22:11, 22:13, 22:14, 22:19, 22:20, 68:23, 92:25, 93:1, 93:3, 93:4, 93:16, 95:3, 95:7, 95:8, 95:21, 96:12, 96:13, 110:24, 111:14, 111:17, 117:7, 117:16, 117:20, 117:24, 119:10, 119:14
**AS's** [1] - 10:18
**asleep** [1] - 106:15
**ASP** [1] - 82:23

**assault** [37] - 7:13, 7:15, 8:13, 10:16, 10:20, 10:25, 20:7, 20:8, 36:3, 40:9, 41:12, 41:14, 41:20, 41:21, 41:22, 45:23, 48:25, 50:3, 59:11, 64:23, 66:9, 66:20, 67:19, 71:2, 71:7, 75:6, 90:20, 93:16, 98:24, 118:10, 118:13, 119:4, 119:6, 119:23, 128:7, 130:19
**assaulted** [20] - 6:4, 32:15, 34:14, 40:13, 40:17, 43:2, 48:17, 48:22, 63:4, 63:21, 64:4, 66:2, 68:16, 97:19, 99:1, 100:15, 117:14, 118:21, 119:1, 119:8
**assaulting** [16] - 21:14, 21:16, 32:8, 35:15, 36:5, 40:6, 46:15, 48:15, 66:7, 67:23, 93:3, 95:2, 117:1, 117:5, 117:6, 119:20
**assaults** [3] - 36:21, 74:22, 75:4
**asserts** [1] - 106:3
**assist** [8] - 104:4, 115:2, 115:5, 115:22, 123:20, 123:22, 124:15, 134:11
**Assistant** [2] - 3:9, 3:10
**assisted** [2] - 115:7, 123:25
**assisting** [10] - 40:25, 41:4, 49:14, 49:15, 114:16, 117:20, 118:22, 118:25, 119:15, 123:10
**associate** [2] - 115:23, 124:16
**associated** [4] - 111:5, 115:15, 120:13, 124:8
**assume** [5] - 29:22, 80:6, 106:7, 106:11, 110:13
**attack** [1] - 46:8
**attempt** [11] - 7:9, 7:10, 18:12, 19:7, 19:8, 19:10, 71:3, 80:12, 111:1, 118:10, 120:10
**attempted** [11] -

19:13, 50:12, 111:6, 111:12, 111:17, 116:9, 116:13, 118:2, 120:19, 120:21, 124:25
**attempting** [6] - 28:18, 28:21, 29:2, 29:3, 50:7
**attempts** [2] - 118:8, 121:20
**attendance** [1] - 78:21
**attention** [8] - 62:23, 76:6, 82:5, 82:9, 82:12, 84:8, 90:11, 135:23
**attentive** [1] - 137:24
**attitude** [1] - 137:6
**Attorney** [4] - 1:14, 1:17, 3:9, 3:10
**attorneys** [2] - 3:23, 103:16
**audio** [2] - 53:5, 74:18
**authority** [1] - 57:19, 112:19, 125:19
**available** [1] - 78:15
**Avenue** [1] - 1:24, 129:12
**avoid** [1] - 137:14
**avoided** [1] - 137:25
**aware** [5] - 50:15, 102:24, 103:1, 113:5, 130:1
**awareness** [2] - 120:23, 121:19

**B**

**background** [3] - 34:15, 44:6, 81:5
**backyard** [1] - 83:2
**bad** [1] - 74:20
**baffled** [1] - 72:6
**ballot** [1] - 37:7
**ballots** [1] - 59:5
**bar** [1] - 65:2
**Barket** [14] - 2:1, 3:12, 7:22, 11:19, 15:14, 26:16, 26:21, 32:21, 46:4, 61:21, 76:4, 79:1, 94:14, 97:21
**BARKET** [25] - 2:2, 3:12, 7:23, 13:14, 21:21, 22:6, 25:9, 25:13, 25:15, 25:22, 26:4, 26:18, 30:3, 30:9, 30:13, 30:19, 30:23, 32:3, 32:22,

61:23, 67:14, 68:15, 73:17, 74:19, 139:5
**Barket's** [1] - 8:22
**barricade** [1] - 72:21
**barricades** [7] - 12:2, 55:19, 69:6, 69:7, 72:24, 83:25, 99:19
**barriers** [3] - 11:21, 72:13, 80:1
**based** [16] - 6:1, 6:5, 47:9, 69:23, 79:20, 79:25, 80:14, 80:15, 87:7, 87:8, 105:12, 105:20, 105:21, 135:1, 135:13
**bathroom** [1] - 140:10
**baton** [1] - 98:14
**battery** [1] - 7:10
**BB** [19] - 15:11, 20:20, 20:21, 21:15, 32:6, 32:9, 32:16, 62:25, 65:23, 110:18, 111:14, 111:17, 117:2, 117:15, 117:20, 117:24, 119:9, 119:14
**beanie** [2] - 83:7, 83:11
**bear** [1] - 136:23
**beautiful** [1] - 93:21
**becomes** [1] - 136:11
**BEFORE** [1] - 1:10
**began** [1] - 64:17
**Begin** [1] - 138:24
**begin** [3] - 11:25, 134:20, 137:20
**beginning** [7] - 55:11, 61:23, 101:21, 108:12, 136:3, 137:6, 137:17
**behalf** [2] - 3:17, 5:4
**behavior** [2] - 59:22, 108:17
**behind** [2] - 49:6, 56:20
**beings** [1] - 102:22
**belabor** [1] - 88:23
**beliefs** [5] - 15:17, 15:22, 16:6, 16:8, 103:8
**believability** [1] - 102:21
**believable** [1] - 100:6
**believes** [2] - 31:7, 31:9
**bench** [2] - 138:24, 139:10

**benefit** [2] - 55:11, 122:6
**best** [15] - 8:17, 64:8, 64:9, 64:10, 64:15, 64:22, 64:25, 65:21, 66:4, 71:10, 75:11
**bet** [1] - 93:7
**better** [1] - 43:9
**between** [7] - 6:24, 44:21, 79:15, 109:3, 109:7, 109:10, 112:6
**beyond** [52] - 37:21, 38:1, 46:21, 48:6, 54:10, 58:23, 60:14, 61:8, 62:5, 62:7, 62:17, 64:11, 76:19, 86:14, 86:19, 86:20, 87:6, 100:12, 100:14, 101:15, 104:14, 104:19, 104:24, 105:5, 105:10, 105:22, 105:24, 108:2, 111:11, 113:23, 114:5, 115:21, 116:2, 116:19, 117:13, 118:14, 118:24, 119:7, 120:18, 121:10, 122:24, 124:14, 124:19, 125:3, 125:16, 126:18, 128:1, 128:21, 130:13, 131:14, 132:24, 134:10
**bias** [3] - 15:17, 108:14, 109:22
**biased** [1] - 109:20
**biases** [5] - 15:25, 102:23, 102:25, 103:1, 103:2
**Biden** [1] - 85:10
**Biden's** [1] - 51:25
**big** [7] - 16:12, 65:5, 66:3, 66:23, 66:24, 69:3
**bike** [21] - 12:4, 34:24, 35:4, 36:11, 44:13, 47:5, 55:13, 56:18, 57:7, 69:6, 69:7, 71:19, 78:18, 78:19, 79:4, 91:7, 91:8, 100:19, 100:20, 100:22, 100:23
**bill** [1] - 21:10
**bit** [5] - 37:5, 41:24, 44:20, 80:10, 87:3
**blended** [1] - 20:18
**block** [1] - 121:2
**Blockburger** [1] -

11:4
**blogging** [1] - 136:6
**blue** [5] - 82:21, 93:6, 93:10, 93:12, 93:13
**board** [2] - 89:17, 112:19
**bodily** [7] - 48:25, 71:7, 118:7, 118:8, 128:7, 130:20, 130:23
**body** [7] - 10:18, 10:19, 42:18, 43:7, 46:11, 46:12, 98:24
**body-worn** [7] - 10:18, 10:19, 42:18, 43:7, 46:11, 46:12, 98:24
**book** [2] - 15:1, 24:12
**bored** [1] - 94:6
**bother** [1] - 68:23
**bottom** [4] - 27:20, 35:18, 47:3, 57:3
**boundaries** [1] - 129:8
**Box** [1] - 2:6
**boy** [4] - 65:5, 65:6, 80:5, 94:12
**Boys** [1] - 62:1
**branch** [2] - 112:15, 112:17
**Brandon** [7] - 35:20, 43:7, 63:1, 63:2, 63:3, 63:6, 65:25
**breach** [1] - 55:16
**breached** [10] - 57:13, 78:23, 79:11, 79:15, 79:16, 89:23, 90:2, 100:17, 101:2
**breaches** [1] - 51:6
**break** [9] - 22:1, 24:22, 33:9, 61:18, 61:19, 61:20, 81:22, 98:5, 98:15
**breaking** [2] - 53:14, 85:13
**Brian** [3] - 35:20, 42:8, 56:3
**Brian's** [1] - 43:7
**bribing** [1] - 122:2
**briefly** [3] - 5:8, 30:3, 37:19
**bring** [12] - 3:18, 3:19, 27:7, 27:8, 30:24, 31:2, 31:14, 32:17, 97:9, 97:23, 116:4, 124:21
**bringing** [2] - 85:14, 85:16
**brings** [1] - 44:22

**broad** [1] - 36:4
**broke** [3] - 21:22, 85:21, 100:25
**broken** [9] - 53:16, 53:17, 56:25, 57:1, 57:4, 57:5, 57:9, 81:2, 81:7
**brother** [2] - 83:9, 83:10
**brought** [2] - 30:17, 85:21
**brush** [2] - 8:17, 65:2
**brushed** [4] - 64:25, 65:21, 71:11, 75:11
**brushing** [2] - 64:22, 99:5
**buddy's** [1] - 95:10
**Buffalo** [1] - 82:22
**building** [87] - 13:4, 34:8, 35:7, 35:12, 36:12, 36:15, 37:12, 38:8, 42:6, 42:25, 43:18, 44:19, 45:17, 45:20, 48:10, 51:6, 51:10, 53:18, 53:22, 54:3, 54:17, 55:2, 55:5, 55:7, 55:22, 56:5, 56:8, 57:12, 57:13, 57:15, 57:18, 57:21, 58:12, 58:14, 58:24, 59:4, 59:10, 59:14, 59:18, 59:22, 60:12, 60:18, 61:3, 69:12, 69:15, 69:17, 69:18, 70:24, 73:17, 73:19, 78:6, 81:2, 81:4, 81:20, 81:25, 82:2, 82:13, 98:6, 99:20, 100:25, 101:1, 101:6, 101:9, 101:12, 113:1, 125:10, 125:13, 125:19, 125:22, 125:23, 126:5, 126:15, 126:22, 127:16, 127:19, 127:23, 128:3, 128:10, 128:13, 128:17, 130:10, 130:15, 131:2, 131:6, 131:10
**buildings** [10] - 40:1, 60:1, 60:20, 126:11, 128:24, 129:4, 129:6, 130:7, 131:16, 131:25
**bum** [2] - 99:5, 99:6
**bumped** [1] - 44:17
**burden** [18] - 5:20, 6:19, 9:3, 9:9, 9:17, 17:5, 17:10, 37:21, 62:5, 62:8, 62:12,

75:14, 84:3, 84:4, 86:20, 104:14, 105:3, 105:24
**bureau** [1] - 112:20
**burglary** [4] - 7:6, 7:7, 7:12
**buried** [1] - 83:2
**business** [9] - 11:16, 39:12, 58:16, 58:18, 59:6, 59:8, 126:25, 127:3, 131:20
**busy** [1] - 42:2
**but..** [1] - 22:24
**butterfly** [1] - 93:21
**BY** [6] - 1:10, 1:15, 1:18, 2:2, 2:5, 2:9
**Byron** [5] - 63:1, 63:2, 63:3, 63:6, 65:25

# C

**camera** [9] - 10:18, 10:19, 42:18, 43:7, 46:11, 46:12, 91:15, 98:24
**cameras** [1] - 81:10
**canned** [1] - 80:18
**cannot** [4] - 83:23, 87:10, 105:15, 132:9
**capability** [1] - 109:23
**Capitol** [136] - 5:15, 8:1, 8:8, 9:22, 10:1, 10:2, 10:11, 11:13, 12:3, 13:6, 19:19, 19:21, 19:25, 20:9, 29:9, 29:11, 29:12, 30:5, 30:6, 33:22, 34:2, 34:7, 34:20, 34:25, 35:7, 35:12, 35:19, 36:11, 36:12, 36:24, 37:4, 39:8, 40:1, 41:4, 41:5, 42:6, 42:9, 42:10, 42:25, 43:17, 43:18, 43:20, 44:6, 44:19, 45:10, 45:17, 45:20, 48:9, 48:10, 51:6, 51:9, 52:11, 52:15, 53:21, 53:22, 54:3, 54:12, 54:16, 54:17, 55:2, 55:14, 55:22, 56:5, 56:7, 56:9, 56:18, 57:8, 57:21, 58:9, 59:4, 59:18, 59:21, 59:22, 60:11, 60:17, 60:18, 60:20, 61:3, 72:8, 72:11, 72:22, 77:14, 78:9, 79:4,

79:15, 79:22, 80:5, 81:2, 81:20, 81:25, 82:2, 82:13, 88:21, 89:9, 89:11, 89:17, 89:21, 89:23, 90:1, 90:2, 90:3, 91:5, 91:15, 92:12, 98:22, 99:10, 100:4, 101:6, 101:9, 110:20, 111:15, 111:17, 112:23, 112:24, 113:1, 128:13, 128:17, 128:23, 129:4, 129:5, 129:6, 129:9, 129:11, 130:6, 130:10, 130:15, 131:2, 131:6, 131:10, 131:16, 131:25
**Capitol's** [1] - 60:1
**captured** [1] - 98:18
**car** [2] - 62:10, 86:24
**care** [1] - 53:8
**careful** [6] - 87:9, 87:18, 91:9, 96:8, 105:14, 105:18
**carefully** [3] - 71:1, 75:1, 93:17
**Carhartt** [4] - 82:25, 83:3, 83:7, 83:10
**Carneysha** [1] - 91:21
**carried** [1] - 112:11
**carry** [1] - 118:19
**carrying** [4] - 80:23, 80:25, 118:23
**case** [69] - 4:23, 15:2, 17:25, 22:2, 33:11, 61:24, 62:1, 62:4, 62:9, 62:11, 62:19, 63:10, 74:13, 76:21, 80:20, 80:22, 84:14, 84:15, 85:9, 86:8, 86:9, 86:16, 86:24, 87:9, 87:23, 87:24, 88:18, 88:19, 93:1, 96:16, 96:20, 101:23, 102:12, 102:17, 103:12, 103:14, 103:17, 103:21, 104:11, 105:13, 106:1, 106:23, 107:7, 107:9, 108:23, 108:25, 110:3, 110:8, 113:10, 118:9, 122:13, 134:5, 135:14, 135:18, 135:19, 135:21, 136:5, 136:7, 136:16, 137:9, 137:13, 137:16, 138:6, 138:9,

138:10, 138:16, 138:21, 139:24
**CASE** [1] - 1:5
**Case** [1] - 3:2
**cases** [12] - 17:23, 74:10, 80:18, 86:14, 86:21, 86:23, 87:3, 87:4, 105:6, 105:7, 105:8, 135:16
**caused** [1] - 51:6
**causes** [3] - 112:1, 112:2, 127:11
**CDU** [1] - 42:8
**celebrated** [1] - 44:16
**certain** [9] - 35:16, 37:14, 37:15, 40:7, 48:16, 66:8, 75:2, 95:3, 137:10
**certainly** [3] - 65:6, 66:15, 138:13
**certainty** [2] - 105:23, 106:22
**CERTIFICATE** [1] - 141:1
**certification** [11] - 10:4, 10:7, 10:12, 37:7, 50:9, 52:24, 53:25, 59:5, 74:7, 101:7, 101:10
**Certified** [1] - 1:23
**certified** [2] - 51:25, 52:21
**certify** [4] - 33:23, 121:4, 129:20, 141:3
**cetera** [1] - 15:20
**Chamber** [2] - 69:13, 69:14
**chance** [2] - 33:6, 96:23
**change** [2] - 91:11, 91:12
**changed** [4] - 18:24, 21:19, 21:23, 93:14
**changes** [2] - 30:15, 30:18
**characteristic** [2] - 103:5, 103:9
**characteristics** [2] - 16:4, 16:8
**charge** [39] - 7:20, 8:22, 10:13, 10:15, 11:1, 13:5, 17:19, 17:24, 18:21, 21:22, 22:1, 32:9, 35:14, 36:8, 36:19, 44:24, 64:24, 66:9, 66:12, 66:19, 71:6, 73:13, 87:23, 88:24, 88:25, 89:6, 90:4, 91:13,

92:18, 92:25, 107:2,
107:5, 110:15, 117:8,
119:25, 120:1
   **charged** [46] - 7:3,
8:23, 9:4, 9:7, 17:21,
18:2, 18:14, 19:11,
21:14, 21:15, 23:15,
23:21, 28:3, 31:11,
31:16, 36:20, 49:12,
61:9, 64:23, 76:16,
76:17, 76:18, 89:15,
90:4, 90:24, 91:4,
93:3, 100:11, 104:21,
113:13, 114:9,
114:23, 115:6, 116:7,
116:11, 118:1,
122:15, 123:3,
123:17, 123:24,
124:24, 126:12,
126:14, 127:22,
128:15, 128:16
   **charges** [50] - 7:17,
7:19, 8:24, 12:11,
12:12, 12:14, 12:17,
14:23, 18:5, 18:7,
18:8, 18:11, 18:21,
21:3, 22:2, 23:25,
28:11, 31:15, 32:13,
35:20, 36:22, 37:5,
37:9, 40:9, 40:11,
46:1, 50:3, 50:4, 50:6,
54:14, 59:12, 88:2,
88:11, 88:12, 88:13,
90:6, 98:6, 101:16,
107:3, 108:2, 110:21,
110:25, 117:1, 117:4,
117:6, 120:6, 120:9,
125:11, 130:8, 133:2
   **child** [1] - 80:5
   **chips** [1] - 96:17
   **chock** [1] - 62:19
   **chock-full** [1] - 62:19
   **chose** [1] - 110:14
   **chosen** [1] - 110:10
   **Christopher** [6] -
6:15, 6:16, 36:21,
45:24, 92:25, 93:6
   **chronologically** [2] -
38:12
   **church** [2] - 62:2,
66:17
   **Circle** [4] - 30:5,
30:6, 89:24
   **circle** [2] - 42:6,
89:25
   **circled** [1] - 91:18
   **circumstances** [12] -
17:13, 106:5, 109:2,
109:4, 115:14, 124:7,
127:9, 127:14,

132:12, 132:15,
132:22, 136:24
   **circumstantial** [9] -
106:2, 106:6, 106:14,
106:17, 106:20,
106:21, 106:25,
115:13, 124:6
   **citizens** [1] - 78:4
   **civil** [56] - 6:13,
17:20, 18:14, 27:17,
28:5, 35:15, 35:21,
35:22, 35:24, 36:8,
36:9, 36:17, 38:14,
38:18, 38:24, 38:25,
39:7, 39:20, 40:1,
44:24, 45:1, 47:15,
47:20, 47:23, 48:14,
49:24, 50:4, 66:21,
67:18, 68:20, 86:21,
90:20, 92:18, 95:2,
105:6, 110:17,
110:23, 111:2,
111:19, 111:20,
111:24, 113:12,
114:3, 114:8, 114:11,
114:18, 114:21,
115:25, 116:8,
116:10, 116:13,
116:14, 116:16,
116:20, 116:23
   **civility** [1] - 135:4
   **CK** [16] - 6:15, 20:20,
20:22, 21:15, 32:7,
32:8, 32:15, 110:24,
111:14, 111:18,
117:5, 117:16,
117:20, 117:24,
119:10, 119:14
   **claim** [1] - 12:10
   **claims** [1] - 31:7
   **clarification** [1] -
21:17
   **clear** [2] - 11:15,
101:11
   **clearly** [5] - 13:6,
47:9, 48:20, 58:25,
72:25
   **CLERK** [1] - 3:2
   **clerk** [4] - 26:3,
135:24, 136:12,
136:24
   **Click** [1] - 74:16
   **client** [4] - 31:15,
31:20, 74:20, 85:24
   **clip** [2] - 91:3, 97:16
   **close** [4] - 39:16,
44:10, 57:2, 62:23
   **closed** [11] - 14:12,
30:6, 33:3, 55:12,
55:15, 55:19, 56:21,

58:1, 89:11, 89:12,
89:16
   **closely** [2] - 66:19,
68:19
   **closer** [4] - 34:7,
34:20, 42:24, 57:8
   **closet** [1] - 83:6
   **closing** [12] - 26:8,
30:14, 31:5, 31:19,
32:2, 33:4, 64:13,
84:12, 96:24, 97:23,
99:12, 101:3
   **closings** [2] - 30:16,
33:9
   **club** [1] - 94:24
   **clubbed** [1] - 94:19
   **clumps** [1] - 32:9
   **co** [2] - 6:7, 26:14
   **co-defendant** [1] -
6:7
   **co-defendants** [1] -
26:14
   **code** [1] - 129:7
   **Code** [1] - 51:12
   **collectively** [1] - 3:25
   **college** [1] - 129:21
   **College** [1] - 121:5
   **colloquially** [1] -
40:9
   **colored** [1] - 109:22
   **Columbia** [6] -
84:24, 112:7, 112:8,
112:9, 129:8, 141:3
   **COLUMBIA** [1] - 1:1
   **coming** [4] - 31:8,
54:20, 69:10, 81:17
   **comment** [5] - 23:19,
31:10, 31:15, 31:19,
44:18
   **comments** [4] -
10:10, 27:9, 31:24,
34:16
   **commerce** [14] -
6:20, 11:8, 11:10,
39:2, 39:3, 39:9,
47:24, 47:25, 48:5,
111:21, 111:22,
112:6, 112:9
   **commission** [4] -
49:23, 112:19,
115:17, 124:10
   **commit** [29] - 7:2,
7:4, 7:8, 7:9, 7:10,
7:12, 7:14, 10:20,
19:10, 19:14, 25:11,
41:8, 49:19, 66:13,
100:10, 111:1, 111:3,
111:13, 114:20,
114:25, 115:3, 116:9,
116:14, 117:24,

120:12, 123:14,
123:19, 123:21
   **committed** [36] -
19:13, 28:4, 37:23,
38:2, 38:17, 38:19,
41:20, 46:24, 60:16,
61:9, 111:12, 113:12,
113:16, 113:22,
113:24, 114:7,
114:11, 114:12,
115:20, 115:21,
116:4, 116:7, 116:12,
116:19, 116:23,
118:13, 122:15,
122:19, 123:1, 123:5,
123:6, 124:13,
124:21, 125:4, 125:7
   **committing** [14] -
37:4, 113:14, 113:18,
113:19, 114:1, 114:4,
114:8, 114:17,
116:17, 122:16,
122:23, 123:2,
123:11, 125:2
   **commodity** [3] -
39:2, 47:25, 111:22
   **commonly** [1] -
137:15
   **communicate** [5] -
136:4, 136:12,
136:14, 136:15,
138:21
   **communications** [1]
- 136:6
   **community** [1] -
96:19
   **compact** [1] - 8:6
   **company** [1] - 62:10
   **compared** [2] -
11:16, 70:13
   **compilation** [1] -
89:22
   **completed** [2] -
83:21, 134:4
   **concern** [3] - 7:1,
15:8, 135:9
   **concerned** [3] - 32:5,
32:14, 108:25
   **concerning** [2] -
32:11, 135:18
   **concerns** [4] - 15:15,
110:18, 110:19,
110:24
   **conclude** [1] - 9:9
   **concluded** [1] - 4:16
   **concurrent** [1] - 51:1
   **condones** [1] - 85:12
   **conduct** [65] - 35:11,
36:1, 37:11, 39:3,
39:21, 43:1, 47:25,

48:8, 50:16, 58:11,
58:13, 58:15, 58:17,
58:18, 59:1, 59:6,
59:7, 59:8, 59:18,
59:25, 60:3, 85:12,
86:7, 86:8, 88:5, 90:5,
91:11, 102:10,
111:23, 113:5,
120:24, 122:4,
122:12, 126:10,
126:15, 126:21,
126:24, 127:1, 127:2,
127:3, 127:4, 127:6,
127:8, 127:10,
127:13, 127:14,
128:13, 128:17,
128:23, 129:1,
129:16, 129:18,
129:25, 130:2,
131:19, 133:5, 136:7,
136:8, 137:6
   **conducts** [1] - 36:13
   **conference** [2] -
138:24, 139:10
   **Conference** [1] -
141:5
   **conformance** [1] -
141:4
   **conforming** [1] -
28:1
   **confrontation** [1] -
44:21
   **confronted** [6] -
34:3, 34:9, 34:13,
35:19, 43:20, 44:4
   **confusing** [1] -
14:18, 15:12, 62:24
   **Congress** [15] - 5:19,
33:23, 60:3, 60:4,
69:3, 69:11, 69:20,
73:12, 73:14, 92:8,
92:9, 101:4, 112:22,
129:2, 129:14,
129:19, 131:20
   **Congress's** [2] -
121:4, 129:20
   **Congressional** [1] -
50:25
   **congressmen** [1] -
53:9
   **congressperson** [1]
- 92:5
   **conscience** [1] -
96:19
   **consciously** [1] -
103:1
   **consciousness** [2] -
121:17, 121:18
   **consequences** [1] -
132:19

**consider** [43] - 17:12, 66:12, 73:5, 74:25, 88:7, 102:5, 102:13, 102:25, 103:19, 103:22, 104:8, 104:9, 106:24, 107:6, 107:25, 108:3, 108:14, 108:16, 109:2, 109:6, 109:9, 109:11, 109:14, 109:17, 109:21, 113:7, 115:12, 116:22, 117:9, 117:10, 119:18, 119:19, 119:23, 120:1, 124:5, 125:7, 132:13, 132:22, 133:7, 134:14, 134:17, 135:2, 135:14
**considerable** [1] - 137:7
**consideration** [5] - 87:10, 103:7, 103:10, 105:14, 135:7
**considered** [1] - 133:24
**consistencies** [2] - 109:7, 109:9
**consists** [1] - 103:21
**constantly** [1] - 85:20
**constitution** [1] - 75:22
**Constitution** [9] - 1:24, 33:18, 33:20, 34:15, 35:9, 51:11, 51:22, 70:1, 70:6
**Constitutional** [1] - 70:7
**constitutional** [1] - 121:23
**construction** [3] - 5:13, 34:21, 89:12
**Construction** [2] - 95:21, 95:24
**consult** [4] - 136:18, 136:22, 138:19, 140:5
**contact** [12] - 15:11, 41:9, 49:21, 49:25, 66:10, 66:19, 68:11, 68:15, 68:16, 117:23, 118:4, 118:5
**contacted** [1] - 41:19
**contemplated** [2] - 51:11
**context** [1] - 127:14
**continuance** [1] - 127:12
**continue** [4] - 59:2, 84:11, 138:5, 138:9

**contraband** [1] - 29:22
**contradicted** [1] - 109:18
**contrast** [1] - 122:1
**contributed** [2] - 33:19, 44:2
**control** [1] - 103:18
**convergence** [1] - 6:24
**convey** [2] - 93:19, 134:6
**convict** [1] - 96:15
**convicted** [1] - 7:19
**conviction** [2] - 135:9, 135:12
**convinced** [2] - 87:11, 105:15
**cop** [1] - 90:13
**cops** [3] - 63:18, 64:14, 90:9
**copy** [3] - 30:13, 62:20, 102:2
**Coral** [1] - 2:9
**cordoned** [4] - 13:1, 125:23, 126:6, 126:8
**corner** [1] - 81:15
**correct** [5] - 18:18, 18:20, 18:25, 19:12, 22:15
**correctly** [1] - 139:2
**correspond** [1] - 37:11
**corrupt** [1] - 54:8
**corruptly** [14] - 5:21, 50:17, 54:2, 54:5, 54:7, 92:10, 92:11, 120:7, 121:1, 121:15, 121:21, 121:25, 122:4, 122:5
**costs** [1] - 62:11
**counsel** [8] - 4:5, 4:14, 4:22, 14:9, 31:9, 138:19, 138:23, 140:4
**count** [59] - 5:23, 5:24, 5:25, 6:12, 6:13, 6:14, 15:9, 19:4, 19:14, 32:13, 32:16, 36:8, 36:17, 37:5, 37:8, 45:22, 47:5, 50:6, 50:8, 50:9, 57:24, 59:6, 59:9, 59:18, 60:11, 62:25, 66:21, 67:18, 69:1, 88:2, 88:9, 92:18, 92:24, 93:2, 93:16, 110:19, 110:21, 110:24, 110:25, 117:4, 120:4, 120:6, 120:9, 121:6, 125:9,

126:10, 128:13, 130:6, 130:8, 131:5, 133:2, 133:9, 133:12, 133:13, 133:15, 133:16, 133:23, 134:2
**Count** [54] - 12:5, 17:22, 18:15, 18:17, 18:22, 18:23, 18:24, 21:16, 21:23, 21:24, 23:21, 27:18, 27:20, 27:21, 28:7, 28:11, 43:21, 44:24, 47:2, 47:7, 50:5, 57:14, 58:11, 59:24, 62:22, 62:25, 110:18, 113:13, 113:16, 116:12, 116:22, 116:25, 117:6, 121:14, 122:16, 122:19, 122:20, 125:6, 126:4, 126:13, 127:17, 127:18, 128:12, 129:17, 130:4, 130:23, 131:1, 131:4, 131:8, 131:24, 132:1
**countdown** [5] - 6:9, 45:4, 45:12, 93:24, 94:5
**counted** [3] - 93:17, 93:24, 97:25
**country** [3] - 52:17, 62:9, 75:25
**Counts** [20] - 17:17, 21:14, 28:1, 28:3, 36:24, 37:10, 38:10, 38:11, 40:4, 40:6, 41:10, 43:5, 46:23, 47:22, 48:15, 50:2, 116:7, 116:25, 118:1, 119:6
**counts** [26] - 15:9, 15:10, 17:18, 17:22, 20:18, 21:10, 35:13, 35:17, 36:7, 36:13, 37:19, 38:3, 40:5, 40:7, 45:25, 51:20, 57:24, 59:20, 61:13, 65:22, 75:3, 108:11, 110:15, 133:18, 133:20
**couple** [4] - 35:25, 58:21, 62:4, 93:11
**coupled** [2] - 71:4, 118:11
**course** [9] - 35:24, 37:25, 41:11, 44:25, 61:10, 89:18, 99:17, 107:16, 118:25
**court** [27] - 34:1,

42:21, 43:11, 44:15, 45:5, 46:2, 46:16, 52:4, 52:9, 64:25, 66:2, 74:18, 84:15, 90:19, 94:8, 94:11, 97:12, 97:17, 98:11, 99:4, 100:13, 106:9, 121:22, 122:2, 134:22, 136:17, 140:15
**COURT** [111] - 1:1, 3:18, 4:1, 4:6, 4:11, 4:21, 4:25, 5:3, 7:22, 8:20, 9:12, 13:10, 13:15, 13:18, 13:20, 14:1, 14:5, 14:8, 14:21, 14:24, 15:23, 16:7, 16:10, 16:15, 16:21, 17:7, 17:15, 18:3, 18:5, 18:8, 18:11, 18:19, 18:23, 19:1, 19:5, 19:10, 19:18, 19:25, 20:5, 20:10, 20:14, 20:23, 21:19, 22:5, 22:9, 22:13, 22:16, 22:22, 22:25, 23:5, 23:9, 23:11, 23:22, 24:4, 24:6, 24:10, 24:15, 24:18, 24:21, 24:24, 25:3, 25:7, 25:12, 25:18, 25:21, 26:5, 26:7, 26:12, 26:16, 26:19, 26:22, 27:1, 27:4, 27:11, 27:22, 27:24, 28:12, 28:15, 28:19, 28:21, 28:24, 29:2, 29:5, 29:7, 29:19, 29:24, 30:2, 30:8, 30:11, 30:15, 30:21, 30:25, 32:17, 32:19, 32:23, 32:25, 33:2, 52:13, 61:16, 67:13, 68:14, 73:16, 76:4, 84:9, 84:19, 95:18, 96:4, 96:23, 101:17, 139:11, 141:9
**Court** [7] - 1:23, 3:1, 5:18, 20:14, 27:13, 141:2, 141:2
**courtroom** [5] - 3:15, 103:3, 135:22, 139:23, 140:13
**courts** [1] - 86:13
**coverage** [1] - 135:19
**covered** [1] - 17:15
**COVID** [4] - 5:12, 70:16, 89:11
**crap** [2] - 20:16,

24:22
**crazy** [3] - 53:23, 85:13, 94:17
**created** [1] - 78:10
**credibility** [7] - 17:16, 102:21, 108:4, 108:7, 108:13, 108:15, 110:4
**credible** [1] - 100:6
**credit** [2] - 109:11, 109:18
**crime** [7] - 27:16, 31:13, 104:8, 111:1, 113:22, 113:24, 114:1
**crimes** [15] - 11:5, 12:18, 23:17, 37:14, 38:14, 41:24, 42:2, 60:15, 61:9, 76:18, 88:4, 100:10, 100:11, 117:9, 133:4
**criminal** [7] - 86:14, 87:4, 104:11, 105:8, 110:8, 115:16, 124:9
**Criminal** [2] - 3:2, 5:6
**cross** [7] - 3:24, 4:13, 4:15, 64:8, 76:22, 76:23, 77:4
**cross-examination** [4] - 3:24, 4:13, 4:15, 64:8
**cross-examine** [3] - 76:22, 76:23, 77:4
**crowd** [23] - 8:15, 34:8, 34:11, 38:6, 42:13, 42:14, 44:1, 45:3, 45:9, 45:11, 45:14, 54:23, 54:24, 56:14, 64:13, 64:16, 64:18, 65:16, 72:18, 81:14, 81:19, 94:25
**CRR** [1] - 141:8
**curb** [2] - 129:12, 129:13
**cut** [1] - 68:12

# D

**damage** [5] - 61:24, 112:2, 112:4, 128:8, 130:21
**danger** [2] - 112:1, 112:2
**Dated** [1] - 141:6
**DAY** [1] - 1:10
**days** [2] - 74:12, 74:17
**daytime** [1] - 138:4
**DC** [7] - 1:12, 1:19, 1:24, 19:22, 78:4,

113:2, 129:6
**dealing** [2] - 21:7, 74:9
**deals** [1] - 45:22
**death** [1] - 130:20
**decide** [21] - 20:6, 29:15, 35:9, 70:5, 75:12, 85:23, 85:25, 86:8, 86:9, 102:18, 102:19, 102:20, 103:12, 106:19, 132:20, 135:21, 139:16, 139:19, 139:23
**decided** [4] - 3:25, 13:23, 14:1, 89:6
**deciding** [3] - 113:6, 115:10, 124:3
**decision** [2] - 53:9, 110:11
**decisions** [1] - 110:13
**Declaration** [2] - 24:20, 24:21
**declaration** [1] - 24:24
**defend** [1] - 43:18
**DEFENDANT** [6] - 2:1, 2:4, 2:8, 13:24, 14:3, 14:6
**defendant** [141] - 5:5, 5:9, 5:16, 5:19, 6:1, 6:6, 6:7, 7:11, 7:18, 12:19, 13:20, 14:10, 14:11, 15:2, 15:3, 15:4, 25:22, 28:2, 28:4, 31:11, 32:20, 32:22, 33:5, 36:14, 40:12, 40:16, 40:20, 40:23, 41:7, 46:4, 46:23, 48:17, 49:4, 49:18, 50:12, 50:13, 58:14, 59:15, 73:25, 74:1, 87:24, 88:3, 88:9, 89:4, 91:10, 104:11, 104:13, 108:2, 110:8, 110:13, 111:6, 111:7, 111:12, 113:7, 113:8, 113:25, 114:10, 114:13, 114:15, 114:19, 114:25, 115:10, 115:15, 115:18, 115:20, 115:23, 115:24, 116:3, 116:4, 116:6, 116:7, 116:11, 116:12, 116:19, 116:21, 116:22, 117:14, 117:17, 117:18, 117:23,

118:13, 118:14, 118:20, 119:1, 119:8, 119:11, 119:12, 119:19, 119:21, 119:22, 120:19, 120:21, 120:23, 121:1, 121:12, 121:15, 121:17, 122:7, 122:22, 123:4, 123:7, 123:9, 123:13, 123:16, 123:18, 124:3, 124:8, 124:11, 124:12, 124:16, 124:17, 124:20, 124:21, 124:23, 124:24, 125:4, 125:6, 125:7, 125:18, 125:21, 126:4, 126:20, 126:23, 128:2, 128:5, 128:22, 128:25, 129:3, 129:25, 130:1, 130:14, 130:16, 133:3, 133:10, 133:11, 133:14, 133:15, 135:8
**Defendant** [6] - 3:3, 3:4, 6:7, 110:15, 122:14
**defendant's** [20] - 61:19, 61:21, 87:11, 104:10, 105:16, 111:16, 115:1, 115:4, 115:6, 115:8, 115:13, 115:22, 122:10, 123:20, 123:22, 123:24, 124:1, 124:6, 124:14, 127:1
**Defendants** [5] - 1:8, 110:21, 110:25, 120:6, 120:9
**defendants** [106] - 4:25, 7:25, 9:19, 9:22, 9:25, 11:23, 13:3, 13:11, 14:15, 14:20, 14:23, 17:19, 17:24, 18:21, 26:14, 28:11, 31:6, 31:24, 33:16, 33:21, 34:6, 34:23, 35:12, 36:22, 37:6, 37:10, 37:22, 38:1, 38:10, 38:17, 38:19, 41:18, 42:2, 42:16, 42:19, 43:19, 44:2, 44:9, 44:16, 46:19, 48:20, 49:8, 50:14, 50:17, 51:9, 51:16, 54:2, 56:8, 57:2, 57:17, 57:18, 57:19, 57:21, 58:1, 58:12, 58:23, 59:3, 59:17,

59:25, 60:2, 60:4, 60:7, 60:15, 60:19, 60:20, 60:22, 61:3, 61:9, 72:7, 78:1, 97:1, 99:8, 100:10, 100:15, 101:15, 111:9, 113:11, 113:16, 114:2, 114:4, 114:22, 117:11, 119:5, 119:14, 120:14, 120:16, 122:18, 122:21, 125:11, 125:15, 126:12, 126:17, 127:24, 128:15, 128:19, 130:8, 130:11, 131:8, 131:12, 131:15, 131:17, 133:17, 133:20, 133:23, 136:19, 136:22
**defendants'** [7] - 13:10, 38:22, 40:10, 47:13, 54:6, 58:16, 59:7
**defending** [2] - 42:10, 43:17
**defense** [16] - 3:13, 4:14, 4:23, 14:16, 21:11, 24:16, 26:13, 31:9, 35:5, 40:8, 44:14, 66:25, 84:12, 98:4, 98:13
**defense's** [1] - 13:9
**defensive** [5] - 6:10, 55:1, 73:8, 73:9, 94:21
**define** [1] - 71:2
**defined** [2] - 122:20, 129:6
**definition** [7] - 29:4, 29:8, 29:11, 41:6, 41:12, 41:14, 130:24
**definitions** [3] - 39:5, 111:5, 120:13
**degree** [6] - 39:1, 47:23, 86:14, 86:15, 106:22, 111:21
**delay** [3] - 39:1, 136:20, 140:5
**delayed** [2] - 47:24, 111:21
**deleted** [1] - 17:7
**deliberate** [1] - 136:2
**deliberation** [1] - 137:7
**deliberations** [26] - 28:14, 39:15, 88:14, 101:20, 102:3, 103:19, 107:22, 107:25, 120:2,

133:21, 134:4, 134:21, 134:22, 135:11, 136:4, 136:8, 136:11, 137:17, 137:21, 138:7, 138:11, 139:19, 140:2, 140:10, 140:12
**Deliberations** [1] - 28:20
**demeanor** [2] - 73:6, 108:16
**demonstrate** [1] - 131:19
**demonstrated** [4] - 13:6, 60:19, 61:4, 131:15
**demonstrating** [4] - 13:5, 60:17, 131:5, 131:10
**denied** [1] - 13:10
**denying** [1] - 24:9
**Department** [10] - 8:7, 19:20, 40:15, 48:19, 110:19, 110:25, 112:15, 112:25, 117:16, 119:10
**department** [3] - 112:12, 112:14, 112:18
**departments** [1] - 112:14
**depicted** [1] - 29:12
**DEPUTY** [1] - 3:2
**described** [12] - 97:21, 108:9, 116:18, 121:13, 125:2, 126:3, 127:17, 128:11, 130:25, 131:3, 131:23, 132:1
**description** [2] - 46:5, 97:24
**deserve** [2] - 16:3, 103:4
**desire** [1] - 109:23
**destruction** [4] - 71:7, 71:9, 128:8, 130:21
**details** [1] - 109:5
**determination** [3] - 22:19, 31:13, 137:10
**determine** [9] - 17:13, 20:3, 102:16, 103:9, 106:1, 108:5, 109:21, 111:6, 120:14
**determined** [2] - 88:5, 133:5
**determining** [5] - 37:20, 38:17, 108:1, 109:16, 132:23

**difference** [2] - 21:8, 109:13
**different** [24] - 8:23, 11:5, 12:12, 21:10, 30:4, 35:21, 37:5, 38:14, 39:23, 40:10, 42:2, 43:9, 46:10, 47:17, 58:20, 59:11, 83:22, 87:2, 89:14, 99:13, 103:17, 133:19, 133:20
**differentiate** [1] - 21:9
**dime** [1] - 67:3
**din** [2] - 45:8, 45:11
**Diplomate** [1] - 1:22
**direct** [11] - 4:16, 20:5, 106:1, 106:4, 106:10, 106:16, 106:20, 106:23, 106:24, 115:12, 124:5
**directing** [1] - 20:4
**directly** [3] - 59:20, 65:23, 132:9
**disability** [2] - 15:20, 103:6
**disappearing** [1] - 64:20
**disaster** [1] - 138:11
**discount** [1] - 63:2
**discuss** [2] - 135:23, 138:9
**discussed** [1] - 24:3
**discussing** [2] - 53:20, 137:16
**discussion** [3] - 135:3, 136:21, 137:13
**dislikes** [1] - 102:23
**dismissal** [1] - 10:14
**disobey** [1] - 129:23
**disorder** [54] - 6:13, 17:20, 18:14, 27:17, 28:5, 35:15, 35:21, 35:22, 35:24, 36:8, 36:9, 36:17, 38:15, 38:18, 38:24, 38:25, 39:7, 39:20, 40:2, 44:24, 45:1, 47:15, 47:20, 47:23, 48:14, 49:24, 50:4, 66:21, 67:18, 90:20, 92:18, 95:2, 110:17, 110:23, 111:2, 111:19, 111:20, 111:24, 113:13, 114:3, 114:8, 114:11, 114:18, 114:21, 115:25, 116:8, 116:10, 116:13, 116:14, 116:16, 116:20,

116:24, 127:11

**disorderly** [15] - 58:11, 58:13, 59:1, 59:18, 59:25, 68:20, 126:10, 126:14, 126:20, 127:4, 127:6, 128:13, 128:16, 128:22, 129:16

**disregard** [1] - 129:24

**disrupt** [6] - 58:15, 59:8, 60:2, 126:24, 129:1, 131:20

**disrupted** [2] - 58:18, 127:2

**disruptive** [12] - 58:11, 58:13, 58:25, 59:25, 126:10, 126:15, 126:21, 127:8, 127:13, 128:17, 128:23, 129:16

**distress** [1] - 34:5

**DISTRICT** [3] - 1:1, 1:1, 1:10

**District** [7] - 84:24, 112:7, 112:8, 112:9, 129:8, 141:2

**disturb** [3] - 60:2, 127:4, 129:1

**disturbance** [2] - 111:24, 127:7

**documents** [2] - 77:10

**Dodge** [1] - 1:15

**domestic** [1] - 7:9

**done** [7] - 9:10, 25:23, 69:4, 73:18, 100:14, 103:11, 132:13

**door** [10] - 53:14, 53:16, 54:20, 54:21, 55:5, 56:25, 57:1, 81:3, 92:4, 135:25

**doors** [3] - 81:8, 91:6

**double** [3] - 7:1, 11:2, 11:4

**doubt** [87] - 37:21, 38:1, 46:21, 54:10, 55:12, 58:23, 60:15, 61:8, 62:5, 62:7, 62:17, 62:18, 64:6, 64:11, 65:13, 66:3, 66:5, 67:25, 68:6, 69:5, 70:12, 72:3, 73:4, 76:20, 86:10, 86:12, 86:15, 86:19, 86:21, 87:7, 87:8, 87:12, 87:13, 87:14, 87:15, 87:17, 94:15,

94:16, 96:7, 100:12, 100:15, 101:15, 104:14, 104:19, 104:25, 105:5, 105:10, 105:11, 105:12, 105:16, 105:17, 105:20, 105:21, 105:23, 105:24, 108:2, 111:11, 113:24, 114:6, 115:21, 116:2, 116:19, 117:13, 118:14, 118:24, 119:7, 120:18, 121:11, 122:24, 124:14, 124:19, 125:4, 125:17, 126:19, 128:1, 128:21, 130:13, 131:14, 132:24, 134:10

**doubts** [1] - 72:7

**down** [29] - 4:16, 21:22, 22:1, 31:1, 34:15, 35:1, 35:2, 39:16, 44:5, 44:8, 45:12, 45:25, 51:21, 56:6, 63:21, 65:15, 65:20, 68:24, 72:13, 72:19, 77:14, 78:20, 83:25, 86:13, 92:6, 93:8, 93:24, 97:25, 138:3

**dozen** [1] - 45:7

**draw** [2] - 103:23, 104:10

**drawn** [1] - 106:5

**dressed** [1] - 22:20

**drew** [1] - 71:18

**drove** [1] - 78:17

**drugs** [1] - 29:22

**During** [1] - 103:19

**during** [44] - 17:20, 27:17, 28:4, 31:18, 31:15, 35:24, 38:24, 44:25, 46:3, 47:15, 64:5, 67:5, 76:21, 101:17, 101:20, 102:3, 102:19, 103:18, 107:16, 110:17, 110:23, 111:2, 111:19, 113:12, 114:3, 114:8, 114:11, 114:18, 114:21, 115:17, 115:25, 116:8, 116:9, 116:13, 116:15, 116:20, 116:23, 124:9, 132:21, 133:21, 136:4, 136:8,

136:11, 138:7

**duties** [12] - 19:21, 35:24, 38:24, 41:2, 45:1, 47:15, 47:20, 49:16, 111:19, 113:1, 117:22, 119:16

**duty** [8] - 52:23, 102:13, 103:15, 104:22, 104:25, 118:23, 118:25, 135:11

**Dylan** [1] - 3:12

**DYLAN** [1] - 2:2

---

# E

**earlier..** [1] - 15:18

**east** [1] - 72:5

**easy** [2] - 22:8, 74:10

**eat** [1] - 77:13

**education** [2] - 80:10, 103:8

**effect** [8] - 6:20, 11:7, 11:9, 11:15, 41:6, 50:15, 60:9, 120:24

**efficient** [1] - 102:11

**efforts** [1] - 119:24

**either** [11] - 8:15, 9:25, 11:9, 20:22, 25:10, 50:7, 60:3, 109:20, 110:6, 122:6, 129:19

**either/or** [1] - 49:22

**elapsed** [1] - 109:3

**elbow** [1] - 8:17, 64:10, 64:23, 65:1, 65:21, 71:11, 75:11

**elect** [1] - 139:25

**election** [6] - 33:24, 50:10, 51:24, 51:25, 52:22, 74:7

**electoral** [3] - 37:7, 50:9, 129:21

**Electoral** [1] - 121:4

**electronic** [1] - 136:6

**electronically** [1] - 136:9

**element** [19] - 5:21, 5:22, 38:16, 39:6, 39:18, 39:20, 40:12, 40:20, 40:22, 41:2, 41:10, 47:12, 47:21, 57:25, 86:17, 86:18, 104:19, 104:24, 117:25

**elements** [42] - 11:5, 21:5, 21:7, 35:22, 35:25, 37:14, 37:15, 37:19, 37:21, 38:13,

40:5, 42:1, 46:20, 46:22, 48:12, 50:11, 54:10, 57:15, 57:20, 60:15, 61:8, 68:19, 111:4, 111:11, 114:6, 114:8, 117:8, 117:9, 117:13, 119:7, 120:12, 120:18, 122:25, 123:2, 125:16, 126:18, 128:1, 128:21, 130:13, 131:14, 134:9

**elevator** [2] - 65:1, 97:25, 99:6

**eliminate** [2] - 94:15, 94:16

**email** [4] - 26:4, 89:9, 136:6, 136:9

**emails** [1] - 77:10

**embarrassment** [1] - 86:1

**emboldened** [1] - 99:9

**employee** [1] - 112:13

**encourage** [8] - 68:8, 115:2, 115:5, 115:23, 123:21, 123:23, 124:15, 135:4

**encouraged** [4] - 114:25, 115:7, 123:19, 123:25

**encouraging** [3] - 91:14, 114:17, 123:11

**end** [5] - 16:7, 27:17, 28:16, 28:24, 31:7

**End** [1] - 139:10

**ended** [1] - 100:4

**enforcement** [8] - 38:21, 38:23, 47:1, 47:11, 47:14, 89:10, 110:16, 110:22

**enforces** [1] - 140:12

**enforcing** [2] - 19:22, 113:2

**engage** [2] - 59:9, 77:1, 81:22

**engaged** [16] - 38:23, 41:1, 47:14, 49:16, 58:12, 58:25, 59:13, 59:15, 59:25, 111:18, 117:21, 119:15, 126:20, 128:2, 128:22, 130:14

**engaging** [4] - 36:25, 122:3, 127:18, 127:22

**enhancement** [1] - 21:7

**enlightening** [1] - 67:21

**enter** [1] - 135:10

**entered** [10] - 5:10, 7:6, 51:6, 53:16, 53:17, 55:4, 57:17, 57:19, 90:3, 125:18

**entering** [8] - 12:17, 54:16, 55:7, 57:14, 73:11, 125:9, 125:12, 137:8

**enters** [3] - 7:5, 91:15, 126:5

**entertain** [1] - 4:25

**entire** [3] - 63:10, 79:20, 101:12

**entirely** [1] - 132:20

**entitled** [7] - 88:3, 95:9, 96:19, 104:1, 110:1, 133:3, 141:4

**entity** [1] - 112:21

**entry** [4] - 5:22, 44:19, 91:5, 91:22

**epicenter** [1] - 100:4

**equal** [2] - 26:24, 106:21

**errors** [1] - 15:7

**especially** [3] - 79:6, 80:3, 87:23

**essential** [1] - 79:14

**essentially** [2] - 8:13, 39:15

**established** [1] - 118:23

**establishment** [1] - 112:19

**et** [1] - 15:20

**ethnic** [3] - 15:20, 16:5, 103:6

**evaluate** [1] - 108:13

**evaluated** [1] - 110:2

**evaluating** [3] - 108:7, 109:1, 110:3

**event** [7] - 109:2, 109:3, 109:4, 109:5, 110:5, 135:9, 135:12

**everyday** [2] - 61:2, 118:19

**evidence** [131] - 6:5, 8:3, 9:2, 9:15, 10:6, 10:17, 11:21, 11:23, 11:24, 12:1, 12:21, 12:24, 14:12, 15:3, 15:4, 17:2, 17:13, 22:16, 29:9, 29:16, 29:21, 31:8, 31:23, 31:24, 32:20, 33:3, 37:19, 39:12, 51:17, 53:1, 60:6, 60:14, 60:21, 61:11, 62:6, 62:21, 67:12, 70:8, 71:8, 72:25, 74:1,

74:2, 75:12, 76:8, 78:5, 78:6, 79:7, 80:14, 82:19, 83:8, 85:19, 87:9, 87:10, 88:5, 88:7, 88:11, 96:13, 96:17, 96:20, 97:14, 98:8, 99:23, 99:24, 101:22, 101:24, 101:25, 102:19, 102:20, 103:10, 103:17, 103:18, 103:20, 103:22, 103:23, 104:1, 104:4, 104:5, 104:6, 104:9, 104:18, 105:13, 105:15, 105:25, 106:1, 106:2, 106:4, 106:6, 106:10, 106:14, 106:16, 106:17, 106:18, 106:20, 106:22, 106:23, 106:24, 107:6, 107:11, 107:14, 107:24, 109:10, 109:18, 110:3, 113:8, 115:13, 115:15, 115:19, 124:6, 124:7, 132:16, 132:21, 132:23, 133:5, 133:8, 134:4, 134:13, 134:16, 134:18, 135:1, 135:4, 135:6, 135:7, 135:13, 135:22, 137:16, 139:19

**exact** [1] - 78:3
**exactly** [5] - 22:2, 42:19, 54:6, 60:23, 70:2
**examination** [4] - 3:24, 4:13, 4:15, 64:8
**examine** [6] - 3:25, 76:22, 76:23, 77:4, 134:13, 134:16
**examiners** [1] - 94:22
**example** [10] - 7:4, 7:5, 8:14, 62:25, 68:20, 106:7, 108:16, 121:21, 131:20, 137:2
**exceeded** [1] - 9:17
**except** [2] - 28:7, 136:17
**exclusive** [1] - 103:15
**exclusively** [1] - 135:12
**excuse** [5] - 4:16, 4:22, 43:1, 137:21, 138:1

**excused** [1] - 140:15
**executive** [1] - 112:15
**exercise** [1] - 110:10
**exercising** [1] - 16:1
**Exhibit** [20] - 9:24, 29:10, 29:13, 30:3, 30:9, 42:17, 43:8, 45:2, 46:13, 52:18, 53:2, 53:5, 53:12, 53:19, 55:3, 97:11, 98:7, 99:3, 100:22
**exhibit** [3] - 73:21, 97:14, 98:8
**exhibits** [7] - 39:12, 71:12, 103:22, 107:23, 134:12, 134:15, 134:18
**Exhibits** [2] - 48:3, 51:2
**exist** [1] - 70:16
**existed** [2] - 70:17, 88:22
**exit** [3] - 69:21, 91:19, 92:6
**exited** [1] - 91:21
**expect** [6] - 13:12, 26:7, 26:24, 77:25, 78:3
**expected** [1] - 26:23
**expecting** [1] - 26:17
**experience** [1] - 103:25
**experienced** [1] - 45:10
**explain** [9] - 4:1, 4:6, 35:21, 80:12, 111:4, 111:6, 117:8, 120:12, 120:14
**explained** [3] - 102:22, 114:9, 123:3
**explaining** [1] - 15:25
**explanation** [3] - 49:9, 70:15, 95:5
**expressed** [1] - 103:13
**expression** [2] - 103:7, 137:9
**extended** [1] - 82:9
**extensively** [1] - 14:18
**extent** [3] - 10:5, 59:1, 108:6
**exterior** [1] - 99:16
**eyes** [1] - 94:7
**eyewitness** [1] - 106:2

**F**

**face** [4] - 82:20, 93:22, 94:18, 98:6
**faces** [3] - 12:11, 12:12, 12:14
**facilitate** [7] - 115:2, 115:5, 115:23, 123:21, 123:23, 124:15, 135:3
**facilitated** [2] - 115:7, 123:25
**facilitating** [2] - 114:17, 123:11
**facing** [10] - 35:12, 36:23, 54:14, 94:2, 94:5, 94:9, 101:16
**fact** [25] - 6:3, 6:5, 6:20, 31:10, 31:11, 43:1, 51:4, 53:21, 58:17, 59:7, 59:21, 60:16, 77:4, 77:5, 86:22, 89:10, 89:11, 91:16, 100:2, 105:7, 106:3, 106:18, 118:24, 127:2, 133:11
**facts** [14] - 9:11, 17:12, 75:12, 102:17, 103:9, 103:23, 106:1, 106:4, 115:14, 124:7, 132:15, 132:21, 137:19
**factually** [1] - 10:22
**failed** [6] - 5:19, 5:20, 6:19, 9:3, 9:8, 104:24
**failure** [3] - 6:2, 6:5, 10:14
**failures** [1] - 85:6
**fair** [9] - 16:3, 79:24, 102:11, 103:4, 103:10, 107:4, 107:7, 134:25, 135:7
**fairly** [2] - 104:1, 109:25
**fall** [1] - 96:17
**falling** [2] - 106:8, 106:10
**falls** [2] - 25:19, 41:5
**falsehood** [1] - 109:13
**family** [2] - 89:3, 126:2
**far** [3] - 73:6, 81:12, 96:5
**fast** [2] - 94:12, 98:9
**fathers** [1] - 62:12
**favor** [2] - 52:1, 106:18
**favorable** [2] - 9:11,

9:16
**FBI** [2] - 64:24, 93:9
**FBI's** [1] - 67:9
**FEDERAL** [1] - 141:9
**federal** [25] - 1:23, 8:8, 10:15, 19:22, 20:7, 23:17, 35:13, 41:4, 64:23, 64:24, 64:25, 110:17, 110:23, 113:2, 117:3, 118:22, 118:25, 120:8, 125:14, 126:16, 127:23, 128:18, 130:10, 131:11, 135:10
**Federal** [2] - 5:6, 141:2
**federally** [11] - 11:10, 11:12, 39:3, 39:21, 39:24, 40:3, 48:1, 48:7, 48:8, 111:23, 112:10
**feelings** [2] - 85:3, 86:4
**feet** [2] - 45:7, 90:17
**fellow** [1] - 75:8
**fellows** [1] - 15:12
**felony** [13] - 7:14, 7:15, 25:11, 41:8, 41:10, 49:19, 49:23, 66:13, 66:19, 73:14, 75:7, 117:25
**felt** [2] - 35:8, 84:25
**fences** [2] - 57:6, 99:18
**fencing** [6] - 55:13, 55:24, 71:24, 78:19, 78:20, 79:4
**few** [4] - 4:22, 42:2, 42:19, 55:5, 59:20, 97:13, 99:15, 101:1, 132:3
**fifth** [3] - 114:19, 117:23, 123:13
**fight** [2] - 33:25
**fighting** [2] - 23:1
**file** [3] - 25:5, 89:6, 129:7
**filed** [2] - 21:11, 24:17
**fill** [2] - 63:12, 63:14
**filmed** [1] - 92:3
**filming** [3] - 85:20, 91:14
**final** [6] - 17:2, 30:13, 33:7, 96:24, 138:20, 138:23
**finally** [7] - 6:13, 13:3, 37:9, 38:25, 41:7, 49:18, 53:5

**Finally** [1] - 47:23
**fine** [3] - 21:16, 23:18, 139:21
**finish** [1] - 27:4
**finished** [1] - 57:16
**Firm** [1] - 2:5
**firmly** [2] - 87:11, 105:15
**first** [62] - 11:22, 18:8, 20:24, 24:10, 24:14, 26:16, 27:19, 28:16, 29:1, 33:5, 33:13, 34:13, 35:13, 35:18, 36:7, 38:16, 40:12, 43:19, 43:23, 48:16, 50:19, 55:4, 56:15, 56:19, 59:24, 61:19, 61:21, 63:10, 63:23, 64:5, 77:11, 77:24, 78:13, 79:17, 82:10, 86:6, 86:14, 86:15, 89:20, 89:22, 97:23, 99:12, 101:1, 111:4, 111:12, 114:7, 117:14, 119:8, 119:19, 119:25, 120:12, 120:19, 123:1, 125:18, 126:20, 128:2, 128:22, 130:14, 131:15, 134:21
**First** [3] - 90:12, 129:5, 129:12
**first-degree** [2] - 86:14, 86:15
**fist** [1] - 44:17
**five** [3] - 64:20, 74:12, 74:17
**Flagler** [1] - 2:2
**flew** [1] - 95:8
**floor** [2] - 69:13, 69:14
**Floor** [1] - 2:2
**Florida** [2] - 2:3, 2:10
**focus** [1] - 78:2
**focused** [1] - 93:20
**folks** [3] - 77:24, 80:2, 81:12
**follow** [9] - 10:23, 28:19, 51:22, 63:18, 64:7, 102:6, 102:15, 138:5
**followed** [4] - 6:7, 6:9, 10:22, 63:16
**following** [17] - 10:9, 44:7, 46:15, 56:6, 72:18, 111:11, 114:6, 117:12, 119:7, 120:18, 122:25, 125:16, 126:18,

127:25, 128:21, 130:13, 131:14
**footage** [1] - 81:11
**football** [2] - 46:5, 97:22
**footsteps** [1] - 10:23
**FOR** [5] - 1:1, 1:14, 2:1, 2:4, 2:8
**forbids** [1] - 129:23
**force** [7] - 40:21, 49:5, 91:25, 118:2, 118:3, 118:4
**forceable** [1] - 8:14
**forced** [4] - 34:10, 54:4, 91:23, 91:24
**forcibly** [9] - 6:4, 40:21, 49:4, 117:17, 118:2, 118:9, 118:21, 119:1, 119:11
**foregoing** [1] - 141:3
**foreman** [3] - 139:25, 140:12
**foreperson** [4] - 134:21, 134:24, 135:2, 136:13
**foreseeable** [1] - 121:11
**form** [9] - 10:24, 67:9, 68:18, 106:18, 120:2, 134:3, 134:4, 134:7, 134:10
**formal** [2] - 104:7, 112:21
**format** [1] - 141:4
**formed** [1] - 36:14
**former** [2] - 10:3, 95:7
**forward** [7] - 45:15, 63:24, 65:11, 67:22, 76:9, 79:12, 98:9
**founded** [1] - 75:25
**founding** [1] - 62:12
**four** [9] - 12:12, 12:14, 19:10, 32:10, 32:12, 37:9, 50:11, 54:9, 92:21
**fourth** [8] - 40:25, 114:15, 115:11, 117:20, 119:14, 121:1, 123:9, 124:4
**free** [5] - 49:13, 69:20, 76:1, 102:7, 108:14
**Friday** [2] - 13:21, 23:8
**friendly** [1] - 42:15
**friendship** [1] - 108:24
**fringe** [1] - 61:25
**frivolous** [3] - 24:22,

24:25, 25:4
**front** [12] - 4:6, 5:18, 21:22, 34:8, 34:11, 34:23, 42:19, 44:10, 49:12, 56:1, 56:17, 56:19
**fulfill** [1] - 40:22
**fulfilled** [1] - 40:11
**full** [2] - 62:19, 135:7
**function** [14] - 11:10, 11:13, 39:4, 39:22, 39:25, 40:3, 48:1, 48:7, 48:8, 102:10, 102:16, 111:23, 112:10, 112:11
**functions** [5] - 58:16, 58:19, 59:7, 126:25, 127:3
**funny** [1] - 64:1
**furtherance** [4] - 114:14, 114:23, 123:8, 123:17
**furthermore** [1] - 137:14

# G

**gain** [3] - 38:8, 44:19, 108:23
**games** [1] - 23:2
**gas** [1] - 85:15
**Gazelle** [9] - 11:12, 39:24, 50:20, 51:8, 51:14, 55:14, 69:25, 101:7
**Gbatu** [27] - 8:14, 8:16, 34:18, 35:20, 38:4, 40:15, 42:7, 42:11, 42:24, 43:8, 43:13, 47:16, 56:3, 63:8, 63:9, 63:24, 64:16, 65:18, 65:23, 66:4, 71:10, 71:21, 72:24, 75:10, 83:25, 90:10
**Gbatu's** [3] - 8:16, 42:18, 65:14
**gee** [1] - 83:6
**gender** [1] - 103:7
**general** [2] - 17:15, 58:3
**generally** [3] - 37:11, 61:1, 102:24
**genius** [1] - 67:1
**gentlemen** [5] - 4:11, 33:2, 84:10, 84:21, 101:17
**GEORGE** [2] - 2:2, 2:9
**George** [14] - 2:8,

3:16, 18:5, 18:9, 18:11, 104:20, 104:25, 105:3, 113:11, 117:1, 139:1, 139:6, 139:7, 139:12
**given** [6] - 12:23, 26:2, 116:18, 125:3, 134:16, 139:2
**Glavey** [6] - 39:24, 51:7, 58:2, 73:23, 73:24, 89:2
**Glavey's** [1] - 77:18
**goal** [2] - 43:19, 103:3
**God** [1] - 67:4
**governance** [1] - 75:23
**GOVERNMENT** [1] - 1:14
**Government** [3] - 48:3, 53:12, 99:3
**government** [139] - 3:6, 3:20, 4:8, 4:18, 4:19, 5:9, 5:19, 6:19, 7:25, 9:1, 9:2, 9:5, 9:8, 9:11, 9:16, 9:17, 9:20, 10:10, 10:17, 11:9, 11:11, 11:14, 12:18, 12:24, 16:15, 18:17, 19:15, 21:9, 21:17, 23:7, 23:14, 23:22, 26:2, 26:8, 26:9, 26:25, 29:9, 31:7, 31:9, 31:20, 31:22, 32:1, 33:4, 33:6, 33:13, 37:13, 37:20, 37:24, 37:25, 38:9, 39:6, 39:11, 39:17, 39:19, 40:8, 41:25, 46:21, 47:12, 47:21, 48:12, 48:24, 50:11, 53:10, 54:1, 54:9, 54:13, 55:8, 55:9, 58:16, 58:18, 58:22, 59:6, 59:8, 59:24, 60:14, 60:25, 61:7, 61:14, 62:3, 64:3, 64:12, 66:23, 67:15, 68:3, 69:2, 69:8, 69:22, 70:20, 72:10, 74:14, 75:15, 76:12, 76:13, 76:14, 76:19, 78:23, 83:15, 86:19, 95:5, 95:6, 96:11, 96:23, 98:5, 100:11, 101:14, 104:13, 104:18, 104:23, 105:3, 105:22, 108:1, 111:10, 112:22,

113:10, 113:15, 114:5, 114:24, 116:2, 117:12, 120:17, 121:10, 122:13, 122:18, 122:24, 123:17, 124:19, 125:16, 126:18, 126:24, 127:3, 127:25, 128:20, 129:24, 129:25, 130:12, 131:13, 132:24, 134:9, 139:9
**government's** [6] - 20:24, 51:2, 79:17, 84:13, 87:5, 105:9
**Government's** [10] - 29:12, 52:1, 52:18, 53:2, 53:12, 53:19, 55:3, 97:11, 98:7, 100:21
**grab** [1] - 82:23
**grabbed** [1] - 98:14
**granted** [2] - 30:25
**graver** [3] - 87:19, 96:9, 105:19
**gray** [2] - 83:7, 83:11
**great** [2] - 89:13, 95:20
**greater** [2] - 106:22, 110:6
**greatest** [1] - 33:20
**greatly** [1] - 42:13
**Greg** [42] - 10:22, 10:23, 11:17, 15:8, 17:25, 19:15, 20:19, 33:24, 38:4, 44:4, 53:7, 53:15, 56:5, 58:6, 59:10, 62:15, 64:13, 64:15, 64:19, 65:7, 65:8, 65:9, 65:10, 65:11, 65:16, 65:23, 67:3, 67:10, 67:15, 67:16, 67:21, 68:4, 68:9, 68:11, 69:2, 69:11, 70:3, 74:4, 93:24, 94:4
**GREGORY** [3] - 1:6, 2:1, 13:24
**Gregory** [89] - 3:3, 3:13, 6:8, 13:13, 13:23, 14:9, 17:19, 19:3, 19:5, 21:4, 21:13, 28:2, 32:21, 33:21, 34:13, 35:3, 35:14, 35:17, 36:1, 36:7, 36:9, 36:18, 36:23, 37:22, 40:17, 42:23, 43:6, 43:9, 43:13, 44:3, 44:12, 44:17, 44:21, 45:3,

45:8, 45:12, 45:18, 45:20, 45:23, 45:25, 46:8, 46:14, 47:2, 47:5, 48:13, 49:6, 49:11, 50:1, 50:6, 51:20, 52:3, 52:14, 52:20, 52:22, 53:1, 53:13, 54:10, 54:14, 55:6, 56:16, 57:4, 60:13, 61:12, 88:16, 90:7, 91:17, 97:5, 97:18, 100:23, 104:16, 110:9, 110:15, 110:21, 110:25, 117:4, 120:6, 120:9, 122:14, 125:11, 126:13, 127:21, 128:15, 130:8, 131:8, 132:14, 132:24, 139:1, 139:13
**groceries** [1] - 70:19
**ground** [7] - 6:18, 55:21, 68:24, 79:15, 99:18, 106:12, 106:13
**grounds** [54] - 8:1, 9:22, 10:14, 19:22, 29:9, 29:11, 29:12, 33:22, 34:2, 35:12, 35:19, 36:24, 37:4, 37:12, 40:1, 42:9, 57:15, 57:18, 58:12, 58:14, 58:24, 59:10, 59:14, 59:19, 59:22, 60:1, 60:12, 60:17, 79:4, 79:11, 90:2, 113:2, 125:10, 125:13, 125:19, 125:22, 125:24, 126:5, 126:11, 126:16, 126:22, 127:16, 127:19, 127:23, 128:4, 128:10, 128:17, 128:24, 129:9, 129:11, 130:6, 130:10, 130:15, 131:2
**group** [3] - 36:22, 62:2, 66:17
**groups** [1] - 111:25
**guarding** [1] - 54:22
**guess** [6] - 3:22, 13:12, 17:8, 26:2, 98:4, 98:13
**guesswork** [1] - 105:21
**guidelines** [1] - 110:4
**guilt** [10] - 31:14, 75:15, 87:11, 88:4, 104:10, 105:16,

105:22, 105:24, 133:4
**guilty** [57] - 5:16, 9:10, 28:3, 32:8, 32:15, 37:13, 38:3, 40:11, 48:13, 51:17, 61:13, 61:15, 62:16, 73:11, 73:12, 75:25, 76:1, 86:20, 96:22, 101:16, 104:14, 104:22, 105:1, 105:4, 110:14, 111:9, 113:17, 114:2, 115:19, 115:24, 116:6, 116:11, 116:21, 117:11, 119:5, 119:20, 119:21, 119:22, 119:23, 120:16, 122:21, 124:11, 124:17, 124:23, 125:6, 125:15, 126:17, 127:24, 128:19, 130:11, 131:12, 133:11, 133:12, 133:18, 133:22
**guy** [17] - 22:21, 23:1, 65:8, 66:1, 66:13, 66:22, 67:16, 69:15, 72:19, 74:22, 85:15, 93:10, 93:11, 93:13, 95:12, 95:20, 96:2
**guys** [12] - 39:14, 62:1, 66:25, 72:23, 74:11, 74:15, 74:21, 76:7, 77:10, 83:4, 94:3, 96:16

## H

**hair** [1] - 82:21
**half** [5] - 69:16, 70:24, 81:21, 84:23, 93:14
**hall** [1] - 92:6
**hallway** [1] - 92:16
**hand** [7] - 6:9, 57:3, 80:25, 87:16, 92:22, 104:23, 106:4
**hands** [11] - 35:3, 44:13, 90:8, 91:15, 91:16, 94:19, 94:20, 94:21, 94:22, 98:13, 98:14
**happy** [1] - 22:6
**Harbor** [1] - 85:2
**harder** [1] - 40:2
**hardest** [1] - 52:6
**harm** [6] - 71:7,

118:7, 118:8, 128:7, 130:20, 130:23
**hat** [5] - 91:3, 93:6, 93:10, 93:12, 93:14
**healthy** [2] - 137:24, 138:1
**hear** [19] - 14:16, 34:16, 37:16, 41:13, 44:5, 44:17, 45:12, 49:20, 54:5, 61:18, 62:8, 63:13, 65:17, 65:18, 89:20, 96:20, 98:25, 134:17
**heard** [46] - 9:25, 10:2, 34:18, 35:4, 37:2, 38:4, 39:22, 41:3, 41:5, 41:6, 42:11, 43:22, 43:25, 45:9, 46:6, 47:16, 47:18, 48:19, 49:5, 50:20, 50:22, 51:7, 51:13, 51:19, 52:2, 54:21, 54:23, 55:14, 55:16, 55:25, 56:5, 57:10, 58:2, 59:1, 61:11, 63:11, 68:6, 70:10, 71:14, 98:17, 99:7, 99:17, 100:9, 101:7, 139:13
**hearing** [1] - 99:24
**hearings** [1] - 131:21
**heckle** [1] - 90:11
**heckling** [1] - 90:9
**held** [2] - 65:10, 87:25
**help** [3] - 43:18, 94:14, 135:3
**hereby** [1] - 141:3
**herself** [1] - 109:19
**hesitate** [4] - 87:19, 96:9, 105:19, 137:12
**hesitation** [1] - 75:23
**high** [2] - 62:12, 84:3
**highest** [2] - 62:8, 84:4
**highly** [5] - 62:14, 62:16, 75:15, 86:23, 105:8
**himself** [2] - 88:20, 98:18
**hindsight** [2] - 74:10, 74:11
**hints** [1] - 17:6
**hit** [1] - 68:2
**hold** [4] - 42:3, 87:20, 107:12, 110:11
**holding** [3] - 65:10, 98:3, 98:4
**hole** [3] - 69:3, 69:8, 73:9

holes [1] - 62:6
**home** [2] - 7:5, 87:1
**Homeland** [1] - 112:15
**honest** [2] - 87:9, 105:14
**honestly** [2] - 22:11, 77:19
**Honor** [53] - 3:8, 3:12, 3:16, 4:4, 4:19, 5:8, 6:8, 6:22, 8:4, 8:19, 8:21, 9:13, 10:13, 11:1, 12:9, 12:22, 13:8, 13:14, 13:16, 13:19, 13:24, 14:3, 14:6, 15:16, 16:17, 17:11, 18:16, 19:8, 21:1, 21:12, 21:25, 22:7, 23:24, 24:8, 25:19, 26:9, 26:18, 27:8, 27:12, 30:1, 31:4, 31:6, 31:12, 31:21, 32:22, 32:24, 33:1, 52:12, 67:11, 73:15, 84:20, 95:16, 96:3
**Honor's** [1] - 31:18
**HONORABLE** [1] - 1:10
**hope** [2] - 138:13
**horns** [1] - 82:22
**hospital** [1] - 95:4
**hostile** [1] - 42:14
**hostility** [1] - 108:24
**hour** [4] - 79:20, 84:10, 90:1, 95:1
**hour's** [1] - 79:13
**hours** [2] - 95:6
**house** [3] - 60:3, 95:11, 129:19
**House** [4] - 69:13, 129:2, 129:14, 129:15
**huge** [2] - 70:11, 73:13
**human** [1] - 102:22
**hundreds** [2] - 55:12, 86:13

## I

**idea** [5] - 68:1, 72:2, 73:25
**identification** [1] - 134:15
**identified** [2] - 6:17, 113:23
**identity** [2] - 10:19, 103:7
**ignorance** [1] - 113:6
**ignore** [5] - 102:6,

102:14, 103:14, 107:17, 107:20
**illegally** [1] - 7:7
**imaginary** [2] - 88:21, 105:20
**imagine** [4] - 26:15, 77:11, 78:4, 78:13
**immediate** [3] - 112:1, 112:2, 126:2
**immediately** [3] - 34:3, 69:19, 69:21
**impact** [1] - 67:16
**impacted** [1] - 70:17
**impactful** [2] - 84:22, 84:23
**impartial** [5] - 87:9, 103:4, 105:14, 107:4, 107:7
**impede** [17] - 7:15, 50:14, 50:16, 58:15, 59:7, 60:2, 67:7, 118:18, 120:10, 120:20, 120:21, 120:25, 121:2, 121:20, 121:24, 126:24, 129:1
**impeded** [14] - 6:4, 40:13, 40:17, 48:17, 58:18, 63:4, 63:22, 63:25, 64:4, 117:15, 118:21, 119:2, 119:9, 127:2
**impedes** [2] - 74:22, 122:1
**impeding** [24] - 6:21, 7:13, 21:15, 28:17, 28:24, 29:1, 35:16, 36:4, 38:20, 40:7, 41:22, 46:25, 47:7, 48:16, 66:8, 67:19, 68:21, 95:2, 111:14, 117:2, 117:5, 117:7, 119:20, 131:21
**implicit** [4] - 15:17, 15:25, 23:17, 102:25
**implies** [2] - 87:7, 105:11
**importance** [1] - 137:7
**important** [9] - 18:1, 69:1, 87:19, 87:22, 88:23, 95:14, 96:9, 105:19
**importantly** [2] - 48:6, 48:24
**impose** [1] - 63:19
**imposed** [1] - 119:2
**imposing** [1] - 135:11
**impossible** [2] -

62:13, 69:16
**impresses** [1] - 108:18
**improbability** [1] - 109:15
**improper** [4] - 31:10, 32:1, 110:12, 137:4
**improperly** [2] - 7:6, 17:5
**inadvertently** [1] - 135:23
**inauguration** [2] - 5:14, 89:13
**incident** [4] - 6:23, 38:24, 47:15, 111:19
**include** [5] - 23:25, 76:24, 129:9, 129:11, 131:22
**included** [9] - 15:18, 15:21, 16:6, 66:9, 75:3, 75:5, 76:25, 119:4, 129:17
**includes** [13] - 29:12, 30:5, 79:11, 112:14, 112:16, 112:18, 112:21, 126:1, 127:10, 127:14, 129:4, 129:19, 136:5
**including** [20] - 6:5, 12:3, 31:10, 35:19, 37:16, 39:23, 41:16, 42:15, 44:2, 51:9, 59:4, 92:6, 109:2, 112:7, 112:8, 113:2, 113:8, 115:13, 118:16, 124:6
**income** [1] - 103:8
**inconsistencies** [3] - 109:6, 109:9, 109:11
**incorporated** [1] - 19:9
**incrimination** [1] - 121:23
**Independence** [3] - 24:20, 24:21, 24:24
**independent** [2] - 112:18, 136:7
**independently** [2] - 121:16, 122:3
**indicate** [1] - 132:16
**indicated** [1] - 103:13
**indicating** [1] - 103:12
**indictment** [22] - 21:3, 21:9, 23:18, 23:25, 32:13, 62:20, 62:23, 65:22, 75:2, 88:2, 88:9, 104:7, 104:8, 116:25, 120:6,

126:13, 133:2, 133:9, 133:12, 133:14, 133:16, 133:19

**individual** [11] - 12:14, 21:3, 36:20, 41:23, 53:21, 101:8, 112:2, 112:4, 122:1, 128:8, 130:20

**individual's** [2] - 112:3, 112:4

**individually** [1] - 110:16

**individuals** [1] - 51:8

**infer** [3] - 132:10, 132:17, 132:18

**inference** [1] - 104:10

**inferences** [2] - 103:24, 106:5

**inflict** [5] - 71:3, 118:7, 118:8, 118:11, 118:15

**infliction** [5] - 71:7, 128:7, 130:19, 130:20, 130:23

**influence** [3] - 133:13, 133:14, 135:10

**information** [1] - 79:13

**informed** [1] - 4:14

**inhibit** [1] - 127:10

**initial** [2] - 55:16, 137:15

**initials** [4] - 21:1, 21:8, 93:1, 93:4

**initiated** [3] - 68:12, 68:15, 68:16

**injured** [1] - 62:11

**injury** [11] - 41:15, 41:16, 48:25, 71:3, 112:1, 112:3, 118:11, 118:15, 118:16

**innocence** [3] - 31:14, 104:12, 104:17

**innocent** [2] - 76:1, 104:12

**input** [1] - 78:9

**inside** [11] - 13:4, 13:7, 51:9, 53:22, 57:10, 57:12, 59:4, 61:3, 69:16, 81:4, 92:2

**Inspector** [17] - 39:23, 47:16, 51:7, 55:14, 55:16, 55:25, 58:3, 78:7, 78:16, 79:9, 79:24, 80:8, 80:15, 80:18, 83:20, 88:18, 91:22

**Instacart** [1] - 70:19

**Instagram** [5] - 52:3, 53:3, 53:20, 58:7, 74:4

**instance** [1] - 90:23

**instead** [2] - 28:7, 73:18

**instituted** [2] - 121:7, 121:10

**instruct** [9] - 27:5, 86:2, 86:9, 88:10, 102:12, 102:13, 117:7, 119:17, 133:10

**instructed** [1] - 108:12

**instruction** [21] - 15:2, 15:5, 15:10, 22:1, 22:3, 22:4, 22:14, 23:15, 25:17, 32:5, 32:7, 41:14, 88:1, 121:14, 122:20, 128:11, 130:4, 131:1, 132:1, 136:3, 138:20

**instructions** [44] - 14:13, 14:14, 14:15, 15:14, 15:21, 21:18, 21:23, 27:9, 30:14, 31:4, 33:7, 33:10, 33:12, 37:17, 39:5, 49:21, 54:5, 61:1, 62:24, 66:7, 68:17, 71:2, 73:5, 75:1, 83:14, 96:25, 102:2, 102:4, 102:5, 102:7, 102:8, 102:14, 116:18, 125:3, 126:4, 129:17, 131:3, 131:24, 132:5, 134:7, 134:9, 138:5, 138:20

**instructs** [1] - 15:16

**instrumental** [1] - 54:25

**instrumentality** [2] - 112:12, 112:21

**insurance** [1] - 62:9

**intend** [1] - 12:22

**intended** [10] - 9:4, 38:20, 46:24, 60:23, 68:21, 69:11, 101:25, 104:4, 111:13, 118:14

**intends** [1] - 132:18

**intent** [46] - 6:6, 7:4, 7:8, 7:14, 9:1, 9:2, 10:11, 10:21, 10:25, 12:22, 25:11, 37:16, 38:2, 41:7, 47:10, 49:19, 50:13, 52:7, 53:10, 54:8, 58:15, 60:2, 65:2, 66:12, 69:19, 75:7, 76:13,

76:19, 83:15, 114:20, 115:11, 115:22, 117:24, 122:6, 122:8, 122:10, 123:14, 124:4, 124:14, 126:23, 128:25, 129:22, 132:8, 132:11, 132:16

**intention** [2] - 37:6, 65:12

**intentional** [3] - 71:3, 109:13, 118:10

**intentionally** [8] - 40:24, 49:9, 113:25, 117:19, 119:1, 119:13, 132:19

**intentions** [1] - 74:20

**interact** [1] - 56:2

**interaction** [4] - 6:23, 12:3, 20:21, 43:4

**interactions** [4] - 36:19, 36:24, 45:23, 49:11

**interest** [2] - 108:22, 109:21

**interfere** [11] - 7:15, 47:11, 67:7, 69:11, 69:19, 69:23, 70:5, 82:18, 118:19, 121:2, 127:9

**interfered** [22] - 6:4, 11:11, 11:14, 35:23, 36:11, 40:2, 40:14, 40:18, 44:25, 45:18, 47:3, 48:18, 48:21, 63:22, 63:25, 70:13, 100:16, 100:23, 117:15, 118:22, 119:2, 119:9

**interfering** [9] - 6:21, 7:13, 35:15, 36:5, 38:20, 46:25, 49:24, 68:21, 111:14

**internet** [1] - 136:9

**interrupted** [2] - 4:13, 4:17

**interstate** [3] - 6:20, 11:8, 11:9

**interview** [2] - 64:2

**interviewed** [4] - 67:10, 93:7, 93:8, 93:9

**intimidate** [1] - 118:18

**intimidated** [7] - 40:13, 40:18, 48:18, 117:15, 118:21, 119:2, 119:9

**intimidating** [1] -

36:5

**introduced** [6] - 10:10, 11:14, 29:9, 39:11, 52:2, 97:14

**introductory** [1] - 15:21

**invasion** [1] - 19:23

**investigation** [2] - 85:5, 136:8

**invite** [1] - 135:5

**invoking** [1] - 121:22

**involve** [3] - 20:22, 87:2, 121:21

**involved** [2] - 115:16, 124:8

**involvement** [1] - 74:7

**involves** [1] - 122:5

**involving** [5] - 71:7, 111:25, 128:7, 130:19, 130:21

**ironic** [2] - 63:17, 75:20

**irony** [1] - 75:20

**Isaak** [13] - 2:5, 3:14, 8:20, 9:14, 12:9, 26:5, 26:19, 31:10, 31:14, 31:19, 76:5, 84:9, 100:2

**ISAAK** [9] - 2:5, 3:14, 8:21, 13:16, 26:6, 26:20, 32:24, 76:6, 139:7

**issue** [7] - 11:5, 11:22, 20:16, 23:4, 25:25, 88:3, 133:4

**items** [2] - 14:18, 132:3

**itself** [4] - 46:17, 72:3, 73:4, 107:3

**J**

**jacket** [3] - 65:8, 82:25, 83:4

**January** [42] - 10:4, 11:16, 12:4, 19:20, 33:16, 35:11, 37:8, 39:8, 39:12, 39:13, 39:17, 42:3, 43:1, 43:6, 47:18, 48:5, 49:7, 50:8, 51:3, 52:11, 54:12, 60:10, 70:13, 70:14, 70:15, 70:16, 71:18, 71:19, 75:19, 75:21, 78:22, 84:22, 97:7, 97:9, 97:19, 100:5, 112:25, 121:5

**jargon** [1] - 39:4

**jean** [1] - 65:8

**Jeng** [7] - 3:21, 4:12, 4:16, 39:11, 52:2, 53:7, 82:24

**jeopardy** [3] - 7:1, 11:2, 11:4

**job** [8] - 39:25, 45:20, 78:24, 80:12, 84:1, 95:23, 96:1

**jobs** [1] - 59:2

**join** [1] - 10:9

**joined** [1] - 43:20

**joins** [1] - 3:13

**joint** [2] - 121:4, 129:20

**joke** [3] - 25:1, 25:2, 25:3

**Jr** [27] - 19:4, 88:16, 90:7, 91:17, 97:5, 104:16, 104:20, 105:1, 105:4, 110:9, 110:16, 110:22, 111:1, 113:11, 117:1, 117:4, 120:7, 120:10, 122:14, 125:12, 126:13, 127:21, 128:15, 130:9, 131:9, 132:14, 132:25

**JR** [2] - 1:6, 2:1

**judge** [19] - 37:17, 39:4, 41:13, 49:20, 54:5, 57:24, 60:25, 66:7, 68:17, 71:2, 83:13, 85:8, 86:1, 86:2, 86:9, 86:21, 87:5, 87:25, 96:6

**JUDGE** [1] - 1:10

**Judge** [33] - 3:22, 5:4, 7:23, 14:17, 15:8, 15:19, 16:9, 16:12, 16:25, 17:10, 19:6, 19:23, 20:3, 20:13, 20:17, 20:18, 21:21, 21:22, 21:25, 22:7, 23:3, 23:10, 24:7, 25:5, 25:6, 25:24, 26:23, 29:14, 30:3, 30:7, 30:20, 86:6, 138:25

**judges** [5] - 25:20, 102:17, 108:4, 137:19

**judging** [1] - 108:6

**judgment** [12] - 5:5, 5:23, 6:1, 6:11, 6:18, 7:19, 9:7, 94:4, 104:1, 108:15, 109:25, 133:24

**Judicial** [1] - 141:5

**judicial** [2] - 16:12, 16:18

**jump** [1] - 72:17
**jumped** [2] - 72:21, 81:7
**jumping** [1] - 72:17
**jumps** [1] - 79:12
**June** [4] - 1:11, 93:7, 93:8, 141:6
**jurisdiction** [1] - 8:8
**juror** [5] - 133:25, 135:5, 137:8, 137:12
**jurors** [9] - 75:8, 101:18, 101:24, 135:9, 135:24, 136:25, 137:6, 137:14, 137:21
**jury** [49] - 3:19, 4:2, 4:6, 4:22, 8:1, 9:9, 11:19, 11:24, 14:13, 19:24, 20:3, 20:5, 22:18, 24:25, 27:7, 27:8, 27:9, 29:15, 29:16, 29:17, 29:21, 30:14, 31:2, 31:3, 32:7, 32:14, 32:17, 84:21, 88:14, 93:19, 95:9, 96:19, 101:19, 102:16, 107:2, 132:6, 134:1, 134:12, 134:19, 134:20, 136:2, 136:5, 136:14, 136:16, 137:2, 137:8, 137:15, 139:17, 139:18
**JURY** [1] - 1:10
**Jury** [5] - 4:10, 4:24, 32:18, 84:18, 140:17
**jury's** [2] - 19:23, 31:13
**justice** [2] - 86:5, 96:16
**justification** [1] - 33:15
**justified** [2] - 35:8, 103:25
**justify** [2] - 66:14, 75:18

## K

**keep** [8] - 16:13, 23:11, 56:7, 56:9, 56:12, 70:22, 134:14, 138:22
**Keepers** [1] - 62:1
**keeps** [1] - 70:6
**Kennedy** [1] - 85:10
**kept** [1] - 71:17
**kick** [1] - 69:5
**kicked** [1] - 81:3
**kind** [9] - 17:5,

20:16, 28:1, 41:15, 87:14, 87:17, 96:7, 104:9, 105:17
**kinds** [2] - 85:14, 92:15
**kitchen** [2] - 95:12, 95:13
**knowing** [4] - 61:4, 115:17, 124:9, 132:10
**knowingly** [31] - 25:22, 38:19, 46:24, 50:14, 53:11, 57:19, 58:14, 59:17, 60:5, 60:21, 111:12, 113:4, 113:7, 113:25, 114:15, 120:23, 121:13, 123:9, 125:21, 126:3, 126:4, 126:23, 127:17, 128:5, 128:11, 129:3, 130:3, 130:17, 130:25, 131:17, 131:23
**knowledge** [19] - 5:9, 5:10, 9:21, 10:1, 25:15, 25:20, 58:4, 76:13, 76:19, 77:9, 77:12, 89:4, 89:7, 106:3, 115:11, 124:4, 132:8, 132:11, 132:16
**known** [8] - 42:6, 77:17, 77:21, 77:24, 83:19, 84:2, 113:21
**knows** [6] - 12:22, 31:12, 81:16, 81:17, 126:6, 126:7
**Kurland** [18] - 6:15, 6:16, 36:21, 45:9, 45:24, 46:6, 46:14, 47:17, 67:19, 67:20, 68:22, 68:23, 71:9, 75:9, 92:25, 93:6, 97:20, 98:18
**Kurland's** [2] - 45:25, 46:7
**KYLE** [1] - 1:18
**Kyle** [1] - 3:9

## L

**lack** [2] - 6:6, 105:13
**lacking** [1] - 14:19
**ladies** [5] - 4:11, 33:2, 84:10, 84:21, 101:17
**lady** [1] - 94:6
**laid** [2] - 70:1, 70:7
**LAMBERTH** [1] - 1:10
**Lamberth** [1] - 86:6

**landing** [3] - 43:23, 56:15
**landlord** [1] - 86:24
**landlord-tenant** [1] - 86:24
**language** [3] - 16:19, 29:20, 36:4
**lapse** [1] - 109:12
**laptop** [1] - 69:15
**last** [19] - 19:17, 21:23, 23:9, 29:6, 29:10, 30:17, 33:6, 35:5, 37:9, 44:14, 52:10, 52:16, 59:20, 66:24, 76:7, 76:8, 82:11, 96:23, 137:20
**last-minute** [1] - 30:17
**late** [2] - 139:16, 139:18
**laugh** [1] - 72:18
**law** [45] - 10:15, 19:22, 20:2, 26:3, 33:7, 38:21, 38:22, 46:25, 47:11, 47:13, 75:22, 87:2, 89:9, 89:14, 90:13, 102:11, 102:12, 102:13, 104:16, 106:16, 106:18, 110:16, 110:17, 110:22, 110:23, 113:2, 115:9, 117:3, 120:8, 124:2, 125:14, 126:16, 127:23, 128:18, 129:9, 129:23, 129:24, 130:2, 130:11, 131:11, 134:7, 134:9
**Law** [1] - 2:5
**lawful** [6] - 38:23, 47:14, 47:19, 57:18, 111:18, 125:19
**lawfully** [2] - 35:23, 45:1
**lawn** [6] - 35:18, 42:5, 42:6, 47:4, 100:16
**laws** [3] - 35:13, 75:19, 112:11
**lawyer** [2] - 107:11, 107:12
**lawyer's** [1] - 107:17
**lawyers** [5] - 86:10, 96:14, 104:3, 104:6, 107:9
**Lawyers** [1] - 2:1
**lawyers'** [1] - 107:13
**layer** [1] - 55:24
**layers** [3] - 54:3,

99:13, 99:15
**LEA** [1] - 2:5
**leading** [1] - 91:13
**learned** [1] - 34:4
**least** [8] - 7:1, 12:16, 45:7, 48:21, 90:1, 94:1, 114:25, 123:18
**leave** [3] - 70:24, 138:2, 138:18
**leaves** [1] - 92:13
**led** [3] - 8:2, 11:20, 11:23
**left** [13] - 15:17, 41:8, 49:19, 62:2, 69:19, 69:22, 73:1, 77:16, 82:3, 91:18, 91:25, 92:6
**legal** [4] - 16:3, 39:4, 84:4, 103:5
**legislative** [1] - 112:17
**less** [4] - 91:21, 92:1, 92:17, 138:1
**lesser** [6] - 66:9, 75:3, 75:5, 110:6, 119:4, 119:5, 119:22, 120:1
**letting** [1] - 52:5
**level** [2] - 40:21, 103:8
**liberty** [4] - 62:11, 63:6, 72:1, 87:2
**lied** [1] - 66:16
**life** [7] - 62:11, 74:17, 87:20, 93:20, 95:15, 96:10, 105:20
**light** [3] - 9:15, 84:10, 103:25
**likely** [8] - 37:18, 62:15, 62:16, 75:15, 86:22, 105:7, 127:7
**likewise** [1] - 107:23
**line** [36] - 10:23, 30:5, 34:23, 35:5, 36:14, 36:19, 42:20, 44:10, 44:14, 45:4, 45:13, 46:4, 46:9, 47:8, 49:12, 56:4, 56:17, 63:21, 66:25, 68:25, 71:18, 78:11, 78:14, 81:16, 88:21, 88:22, 92:21, 94:18, 97:22, 98:1, 98:16, 98:19, 98:21, 99:16, 99:18, 100:17
**list** [4] - 16:5, 37:15, 89:2
**listed** [2] - 32:10, 32:12
**listen** [6] - 20:16,

23:11, 44:5, 135:20, 138:10
**listening** [1] - 58:7
**listing** [1] - 20:20
**literal** [2] - 35:5, 44:13
**literally** [7] - 35:4, 67:4, 69:15, 74:14, 75:16, 77:2, 80:24
**live** [5] - 77:24, 77:25, 78:1, 80:3, 80:9
**lives** [1] - 23:1
**Liz** [1] - 89:2
**located** [1] - 129:5
**look** [32] - 25:24, 38:16, 39:14, 43:4, 46:23, 48:4, 52:20, 56:19, 66:18, 66:25, 68:18, 69:4, 69:16, 70:11, 71:1, 72:14, 75:1, 75:2, 75:3, 79:22, 83:6, 88:11, 88:12, 91:23, 93:25, 94:19, 94:22, 95:20, 97:9, 98:2, 98:7, 139:20
**looked** [4] - 46:19, 97:20, 106:7, 106:11
**looking** [3] - 57:4, 66:12, 74:25
**looks** [6] - 29:16, 82:8, 94:3, 94:4, 94:6
**loose** [1] - 68:12
**lose** [1] - 63:6
**losing** [1] - 54:25
**lost** [1] - 75:20
**love** [1] - 74:23
**lower** [1] - 94:1
**lowered** [3] - 34:18, 38:4, 43:13
**lunch** [7] - 27:5, 33:9, 33:10, 37:18, 77:13, 84:11
**lunged** [1] - 65:11
**Lynnett** [2] - 3:8, 18:16
**LYNNETT** [1] - 1:15

## M

**mail** [1] - 137:25
**majority** [1] - 72:16
**man** [7] - 62:11, 63:6, 64:17, 64:23, 67:23, 74:4, 76:1
**man's** [1] - 72:1
**maneuver** [2] - 6:10, 94:21
**manner** [2] - 102:11,

155

108:18
**map** [2] - 129:7, 129:10
**March** [3] - 63:11, 63:23
**Mark** [4] - 11:12, 39:24, 51:8, 69:25
**mark** [1] - 31:1
**marked** [1] - 134:15
**marshal** [3] - 135:25, 136:13, 136:25
**mask** [1] - 85:15
**mass** [1] - 77:14
**massive** [2] - 69:4, 69:8
**mathematical** [1] - 105:23
**matter** [6] - 5:2, 9:4, 107:2, 135:14, 136:16, 141:4
**matters** [7] - 44:12, 87:20, 96:9, 105:19, 108:9, 108:21, 137:7
**MATTHEW** [3] - 1:6, 2:4, 14:3
**Matthew** [69] - 3:4, 3:14, 8:23, 9:3, 9:6, 9:10, 12:8, 12:11, 12:25, 13:15, 13:16, 14:1, 32:23, 33:21, 37:23, 38:5, 44:3, 53:15, 55:6, 56:17, 61:13, 76:10, 76:24, 76:25, 77:5, 77:8, 77:13, 77:21, 77:23, 78:2, 78:8, 79:7, 79:17, 80:4, 80:11, 80:17, 80:21, 81:4, 81:11, 81:18, 82:2, 82:8, 82:10, 82:11, 82:17, 83:1, 83:2, 83:23, 83:24, 84:2, 88:17, 91:18, 97:5, 100:1, 100:2, 100:7, 104:17, 104:21, 105:1, 105:4, 110:10, 125:12, 126:14, 128:16, 131:9, 132:14, 132:25
**McWaters** [34] - 1:18, 3:9, 9:12, 9:13, 21:1, 23:12, 23:24, 26:9, 26:13, 27:8, 31:3, 33:13, 33:14, 34:2, 42:22, 43:12, 44:16, 45:6, 46:3, 46:17, 52:5, 52:10, 52:14, 67:11, 68:13, 73:15, 95:16, 96:3, 97:1, 97:13, 97:18,

98:12, 99:5, 139:8
**mean** [54] - 5:19, 10:24, 17:22, 26:23, 30:19, 61:1, 62:2, 62:18, 63:1, 63:13, 64:6, 64:18, 65:1, 65:5, 65:6, 65:10, 65:11, 65:16, 65:23, 66:1, 66:2, 66:12, 66:13, 66:17, 66:23, 66:25, 67:1, 67:4, 67:5, 67:6, 67:15, 67:22, 67:24, 68:12, 68:23, 68:24, 69:20, 70:9, 70:10, 70:19, 72:6, 72:20, 73:3, 74:5, 74:23, 75:8, 84:25, 85:13, 93:20, 94:7, 94:15, 94:18, 95:4
**meaning** [11] - 50:14, 61:2, 121:13, 126:3, 128:11, 129:17, 130:3, 130:25, 131:3, 131:23, 132:1
**meaningful** [1] - 108:21
**meanings** [3] - 118:19, 127:17, 131:19
**means** [27] - 19:21, 34:5, 35:23, 41:4, 41:15, 41:16, 54:6, 62:6, 71:3, 92:11, 106:17, 108:7, 111:24, 112:6, 112:8, 112:10, 113:1, 118:10, 118:15, 121:2, 121:16, 121:18, 125:22, 128:6, 129:14, 130:18, 137:1
**meant** [1] - 134:10
**meanwhile** [1] - 38:5
**mechanical** [1] - 68:7
**media** [2] - 10:10, 135:19
**medical** [1] - 94:22
**meet** [5] - 5:20, 9:8, 39:18, 39:19, 130:24
**meetings** [1] - 131:21
**Melissa** [1] - 3:14
**MELISSA** [1] - 2:5
**member** [3] - 43:25, 54:24, 136:14
**members** [4] - 42:8, 89:3, 136:13, 136:15

**memory** [8] - 101:22, 101:23, 101:25, 103:17, 103:18, 108:19, 109:1, 109:12
**men** [1] - 61:24, 76:1
**Mendoza** [25] - 30:4, 39:23, 47:16, 51:8, 55:14, 55:16, 55:25, 58:3, 71:14, 71:15, 71:25, 72:13, 72:25, 73:6, 78:7, 78:16, 79:9, 79:24, 80:8, 80:15, 80:18, 83:20, 88:18, 91:21, 91:22
**Mendoza's** [1] - 73:4
**mention** [2] - 71:16, 73:23
**mentioned** [1] - 97:23
**mere** [4] - 53:14, 90:14, 90:15, 90:16
**merely** [9] - 104:7, 110:7, 113:15, 115:15, 115:16, 115:17, 122:17, 124:8, 124:9
**merge** [2] - 7:17, 8:24
**merges** [1] - 8:13
**merits** [1] - 136:16
**met** [10] - 9:17, 35:25, 37:14, 37:20, 41:25, 46:22, 47:21, 48:12, 60:15, 64:3
**metal** [1] - 12:3
**Metro** [1] - 95:8
**Metropolitan** [10] - 8:6, 19:20, 19:25, 40:14, 48:18, 110:19, 110:24, 112:25, 117:16, 119:10
**metropolitan** [1] - 8:7
**Miami** [2] - 2:3, 2:10
**Michael** [1] - 3:21
**Michigan** [1] - 95:8
**middle** [2] - 16:2, 94:4
**might** [6] - 16:1, 17:9, 39:10, 40:15, 62:24, 91:20
**Mike** [1] - 72:10
**million** [2] - 65:15, 68:1
**mind** [10] - 7:5, 37:16, 55:18, 69:17, 132:8, 132:11, 132:17, 133:1, 134:14, 136:23
**mindful** [1] - 134:25

**minute** [13] - 27:11, 30:17, 35:22, 53:17, 61:17, 79:10, 79:19, 81:6, 81:12, 101:1, 138:17
**minutes** [15] - 26:10, 26:11, 26:14, 26:18, 26:21, 62:4, 64:15, 69:16, 70:25, 73:17, 81:21, 91:22, 92:1, 92:2, 92:17
**miscarriage** [1] - 86:5
**misdemeanors** [1] - 31:12
**misread** [3] - 138:19, 138:23, 139:12
**missing** [1] - 22:3
**mission** [1] - 134:25
**mistake** [2] - 109:12, 113:6
**misunderstanding** [1] - 109:12
**mob** [6] - 65:9, 65:24, 85:17, 85:24, 96:12, 99:8
**mobster** [1] - 82:17
**modifies** [1] - 134:8
**moment** [2] - 55:4, 85:11
**moments** [2] - 4:22, 55:6
**Monday** [2] - 74:12, 74:13
**money** [2] - 86:25, 95:14
**montage** [1] - 89:22
**Montgomery** [1] - 2:6
**months** [1] - 93:11
**MORAN** [1] - 1:18
**moreover** [2] - 88:3, 133:3
**morning** [6] - 3:8, 3:12, 3:16, 4:11, 30:22, 61:7
**most** [7] - 9:11, 9:15, 37:18, 69:1, 73:7, 84:25, 85:19
**motion** [2] - 4:25, 21:10
**motions** [3] - 7:21, 13:10, 26:1
**motivated** [1] - 109:21
**Mott** [7] - 10:17, 45:9, 94:20, 95:8, 95:24, 98:17, 98:19
**Mott's** [3] - 10:18, 46:12, 46:13

**mouse** [1] - 91:1
**mouth** [1] - 9:14
**mouthful** [1] - 132:2
**move** [10] - 5:5, 5:22, 6:1, 6:11, 6:18, 7:19, 9:7, 20:17, 50:4, 81:12
**movement** [3] - 39:2, 47:25, 111:22
**movements** [1] - 68:7
**moving** [4] - 40:6, 50:3, 77:9, 81:16
**Moving** [1] - 48:15
**MPD** [14] - 34:3, 35:19, 36:14, 41:3, 44:22, 47:3, 47:7, 57:6, 117:2, 117:5, 117:7, 117:15, 117:20, 117:23
**MR** [114] - 3:12, 3:16, 3:22, 4:3, 5:2, 5:4, 7:23, 9:13, 13:14, 13:19, 14:17, 14:22, 14:25, 15:24, 16:9, 16:11, 16:25, 17:9, 17:17, 18:4, 18:7, 18:10, 18:13, 19:6, 19:13, 19:19, 20:3, 20:7, 20:13, 20:17, 21:1, 21:21, 22:6, 22:10, 22:15, 22:18, 22:24, 23:3, 23:7, 23:10, 23:12, 23:20, 23:24, 24:3, 24:5, 24:7, 24:13, 24:17, 24:19, 24:23, 25:2, 25:5, 25:9, 25:13, 25:14, 25:15, 25:17, 25:19, 25:22, 25:23, 26:4, 26:9, 26:13, 26:18, 26:23, 27:2, 27:8, 29:14, 30:3, 30:9, 30:13, 30:19, 30:23, 31:3, 32:3, 32:22, 33:1, 33:14, 34:2, 42:22, 43:12, 44:16, 45:6, 46:3, 46:17, 52:5, 52:10, 52:12, 52:14, 61:23, 67:11, 67:14, 68:13, 68:15, 73:15, 73:17, 74:19, 84:20, 90:20, 94:9, 94:12, 94:15, 95:16, 95:20, 96:3, 96:6, 97:1, 97:13, 97:18, 98:12, 99:5, 138:25, 139:5, 139:8
**MS** [33] - 3:8, 3:14, 3:20, 4:4, 4:9, 4:19,

8:21, 13:16, 16:17,
17:11, 18:16, 18:20,
18:25, 19:3, 19:8,
26:6, 26:20, 27:12,
27:23, 27:25, 28:13,
28:16, 28:20, 28:22,
28:25, 29:3, 29:6,
29:8, 29:20, 29:25,
32:24, 76:6, 139:7
**multi** [1] - 15:2
**multi-defendant** [1] -
15:2
**multiple** [7] - 14:20,
14:22, 14:23, 25:10,
39:22, 48:23, 64:3
**multiplicity** [1] - 11:2
**murder** [2] - 86:14,
86:15
**must** [50] - 5:9,
19:24, 86:17, 87:5,
87:6, 103:11, 104:8,
104:9, 105:9, 105:10,
107:5, 107:6, 107:12,
107:18, 107:25,
108:3, 110:11,
110:13, 111:10,
114:5, 114:24, 115:1,
116:2, 117:9, 117:12,
118:9, 118:14, 119:6,
120:17, 121:10,
121:15, 121:17,
122:7, 122:23,
123:17, 123:19,
124:19, 125:15,
126:17, 127:25,
128:20, 129:24,
130:12, 131:13,
133:24, 133:25,
134:1, 134:10,
135:20, 135:21
**mutual** [3] - 8:6, 8:9,
135:4

# N

**name** [5] - 87:7,
95:12, 95:21, 105:11,
138:3
**named** [3] - 18:13,
59:13, 127:21
**Nancy** [2] - 69:14,
92:15
**nation** [1] - 85:1
**national** [3] - 15:19,
16:5, 103:6
**natural** [4] - 12:23,
50:15, 120:24, 132:18
**nature** [3] - 11:24,
107:5, 113:5
**nauseam** [1] - 88:22

**near** [1] - 62:13
**Nebraska** [1] - 1:16
**necessarily** [1] -
135:17
**necessary** [9] - 38:2,
66:20, 86:22, 105:6,
113:21, 118:20,
133:1, 136:11
**neck** [1] - 94:24
**need** [20] - 20:6,
21:18, 22:13, 38:16,
61:18, 79:14, 91:25,
92:10, 98:25, 115:4,
115:9, 116:22, 121:6,
122:8, 123:22, 124:1,
125:7, 129:25,
135:25, 140:11
**needed** [1] - 63:15
**needs** [2] - 22:18,
29:15
**negated** [1] - 122:11
**nephew** [2] - 6:8,
94:17
**never** [23] - 6:14,
6:16, 7:25, 24:11,
24:12, 24:15, 24:18,
64:3, 65:9, 65:12,
65:20, 65:25, 69:17,
72:1, 73:1, 73:19,
73:24, 81:25, 82:1,
90:14, 90:15, 104:15,
136:23
**new** [1] - 98:4
**newspaper** [1] -
135:18
**next** [15] - 16:11,
17:1, 17:17, 22:9,
22:22, 22:25, 24:6,
28:25, 36:8, 36:22,
58:5, 61:17, 73:8,
90:18, 92:6
**nice** [2] - 95:11
**nickel** [1] - 67:2
**night** [3] - 21:23,
73:1, 78:16
**nitpick** [1] - 67:2
**NO** [1] - 1:5
**nobody** [4] - 22:19,
22:20, 93:1, 93:3
**noise** [1] - 45:11
**none** [3] - 13:16,
77:20, 95:5
**nonsense** [1] - 23:2
**nonviolent** [1] -
127:6
**normal** [2] - 61:2,
127:12
**northwest** [7] -
34:21, 35:18, 36:10,
38:8, 43:21, 56:13,

56:16
**Northwest** [3] -
129:12, 129:13
**note** [11] - 6:19,
102:1, 102:8, 136:12,
136:15, 136:18,
137:2, 137:4, 140:3,
140:5, 140:6
**notebook** [1] - 138:3
**notebooks** [1] -
101:19
**notes** [7] - 15:6,
93:8, 97:21, 101:19,
101:21, 101:24,
101:25
**nothing** [20] - 26:6,
30:22, 31:3, 72:23,
79:18, 80:17, 80:24,
84:5, 85:9, 89:17,
90:6, 90:21, 134:5,
134:7, 134:8, 137:23,
139:8
**notice** [3] - 16:12,
16:18, 45:6
**noticed** [3] - 14:19,
31:22, 138:25
**number** [4] - 11:6,
11:25, 17:3, 138:4
**Number** [1] - 11:7
**numbers** [2] - 27:13,
101:8
**NW** [2] - 1:18, 1:24

# O

**o'clock** [2] - 56:1,
90:1
**Oath** [1] - 62:1
**object** [6] - 29:14,
32:1, 70:1, 95:17,
107:14, 139:4
**objected** [2] - 70:4,
107:9
**objecting** [3] - 31:18,
31:21, 107:11
**objection** [8] - 23:13,
52:12, 67:11, 68:13,
73:15, 96:4, 107:17,
107:24
**objections** [5] -
14:16, 107:12, 139:3,
139:5, 139:11
**objective** [4] - 43:16,
45:16, 70:23, 70:24
**observe** [1] - 108:21
**observed** [3] - 76:21,
79:6, 108:9
**obstruct** [22] - 18:12,
39:1, 50:7, 50:12,
50:13, 50:16, 54:11,

67:7, 92:5, 92:8, 92:9,
101:4, 120:10,
120:19, 120:21,
120:25, 121:2,
121:20, 121:24,
122:8, 122:10, 124:25
**obstructed** [8] -
39:21, 47:24, 48:7,
50:20, 50:23, 101:6,
111:21, 124:24
**obstructing** [27] -
17:20, 19:11, 27:17,
28:4, 38:20, 46:25,
68:21, 69:3, 110:16,
110:22, 111:2,
111:13, 113:12,
114:3, 114:7, 114:10,
114:18, 114:20,
115:25, 116:8, 116:9,
116:13, 116:15,
116:20, 116:23,
120:7, 131:21
**obstruction** [20] -
5:18, 18:9, 19:10,
50:5, 73:12, 73:13,
73:14, 75:4, 116:14,
120:4, 122:15,
122:22, 123:1, 123:4,
123:12, 123:14,
124:17, 125:1, 125:5,
125:8
**obstructs** [2] -
74:22, 122:1
**obvious** [3] - 8:9,
69:22, 70:15
**obviously** [4] -
31:12, 31:17, 74:19,
84:22
**occasions** [1] -
138:12
**occurred** [6] - 10:16,
39:7, 48:25, 58:17,
127:1, 138:11
**occurring** [2] - 37:8,
52:25
**occurs** [1] - 127:15
**OF** [3] - 1:1, 1:3, 1:10
**offense** [99] - 5:17,
5:21, 5:22, 7:2, 7:3,
7:4, 28:3, 28:4, 41:19,
66:9, 75:3, 75:5,
86:17, 86:19, 88:2,
88:7, 104:20, 104:22,
104:24, 105:2, 111:3,
111:5, 111:7, 111:8,
111:10, 113:12,
113:14, 113:16,
113:17, 113:18,
113:19, 114:4, 114:9,
114:14, 114:17,

114:20, 114:23,
115:1, 115:3, 115:6,
115:8, 115:18,
115:20, 115:24,
116:3, 116:6, 116:8,
116:9, 116:11,
116:12, 116:14,
116:15, 116:17,
116:20, 116:23,
117:11, 119:4, 119:5,
119:21, 119:22,
120:12, 120:13,
120:15, 120:17,
121:8, 122:17,
122:19, 122:23,
123:3, 123:8, 123:11,
123:14, 123:17,
123:19, 123:21,
123:23, 124:1,
124:10, 124:12,
124:16, 124:20,
124:23, 125:2, 125:4,
125:7, 125:15,
126:17, 127:24,
128:20, 129:18,
130:12, 130:22,
131:13, 133:3, 133:7
**offenses** [7] - 5:8,
5:16, 7:8, 7:11, 86:18,
118:1, 119:18
**offensive** [4] - 41:17,
49:2, 73:7, 118:16
**offered** [1] - 107:10
**office** [3] - 1:14,
92:4, 92:15
**Office** [1] - 1:17,
129:7
**officer** [48] - 7:14,
7:16, 8:6, 8:7, 8:16,
20:8, 22:19, 22:20,
22:22, 22:23, 23:2,
34:5, 36:6, 40:7, 43:2,
63:1, 63:8, 63:20,
64:16, 64:24, 66:4,
68:22, 71:9, 71:10,
71:15, 71:21, 71:23,
72:13, 72:24, 72:25,
73:6, 73:20, 74:23,
75:9, 75:10, 83:25,
91:6, 95:7, 98:20,
98:21, 110:7, 112:13,
116:15, 118:3,
118:24, 118:25, 119:3
**Officer** [69] - 8:14,
8:16, 10:17, 10:18,
10:19, 10:20, 10:25,
11:12, 21:16, 22:11,
32:7, 32:8, 34:18,
36:21, 38:4, 39:24,
40:15, 42:7, 42:8,

42:11, 42:18, 42:24, 43:6, 43:8, 43:13, 45:9, 45:23, 45:25, 46:6, 46:7, 46:12, 46:13, 46:14, 46:15, 47:16, 47:17, 50:20, 51:13, 55:14, 56:3, 63:24, 65:14, 65:18, 67:1, 67:10, 67:19, 67:20, 68:22, 69:25, 71:14, 71:25, 73:4, 73:23, 94:20, 97:20, 98:14, 98:16, 98:17, 98:18, 98:19, 98:24, 101:7, 117:5, 117:7
**officer's** [2] - 110:2, 110:4
**Officers** [10] - 32:6, 35:20, 36:21, 65:23, 111:17, 117:2, 117:15, 117:20, 117:24, 119:9
**officers** [94] - 17:20, 27:17, 28:4, 28:17, 28:24, 29:1, 32:10, 32:12, 32:13, 32:14, 34:4, 34:9, 34:14, 34:25, 35:1, 35:16, 35:19, 35:23, 38:21, 38:23, 40:14, 40:25, 41:5, 41:9, 41:19, 43:10, 43:14, 43:17, 43:20, 44:4, 44:7, 44:11, 44:22, 44:25, 45:13, 45:15, 45:19, 47:1, 47:3, 47:11, 47:14, 47:17, 48:16, 48:18, 48:21, 48:23, 49:13, 49:14, 49:15, 54:4, 56:14, 56:15, 59:1, 66:8, 75:2, 75:9, 77:2, 80:16, 95:3, 97:20, 98:23, 100:15, 100:16, 100:24, 110:16, 110:18, 110:19, 110:22, 110:24, 111:2, 111:14, 113:12, 114:3, 114:7, 114:11, 114:18, 114:21, 115:25, 116:8, 116:9, 116:13, 116:20, 116:23, 117:16, 117:21, 118:22, 119:10, 119:15, 119:20
**offices** [1] - 69:13
**OFFICIAL** [1] - 141:9
**Official** [2] - 1:23, 141:2

**official** [54] - 19:21, 38:24, 41:2, 47:15, 49:16, 50:5, 50:7, 50:12, 50:16, 50:19, 50:21, 50:23, 51:4, 51:10, 51:15, 54:11, 58:16, 58:19, 59:5, 59:6, 73:13, 82:18, 111:18, 113:1, 117:22, 118:23, 119:16, 120:4, 120:8, 120:11, 120:20, 120:22, 120:25, 121:3, 121:5, 121:6, 121:9, 121:11, 121:21, 122:8, 122:11, 122:15, 122:22, 123:2, 123:5, 123:12, 123:15, 124:17, 124:24, 124:25, 125:1, 125:5, 125:8, 126:25
**often** [2] - 113:20, 137:17
**older** [1] - 83:9
**Omaha** [1] - 1:16
**omitted** [1] - 132:14
**once** [7] - 7:6, 34:22, 42:20, 43:19, 64:3, 139:25, 140:9
**one** [105] - 5:15, 5:17, 6:14, 6:22, 11:6, 11:8, 14:19, 15:4, 15:9, 15:15, 16:11, 16:12, 17:1, 17:21, 17:23, 21:4, 22:3, 23:14, 23:15, 24:10, 25:23, 26:1, 27:9, 28:1, 29:6, 32:3, 32:5, 32:6, 32:13, 33:24, 36:1, 38:21, 46:25, 47:11, 50:19, 55:8, 58:20, 60:12, 61:18, 62:17, 63:19, 65:7, 65:18, 65:19, 66:18, 69:1, 69:3, 69:4, 69:8, 72:17, 72:19, 73:5, 73:21, 74:20, 75:16, 75:23, 76:1, 76:10, 79:9, 80:2, 83:4, 83:12, 84:12, 85:11, 85:15, 86:6, 87:4, 88:15, 89:15, 89:21, 90:1, 90:18, 91:7, 91:8, 92:16, 94:1, 97:19, 100:25, 101:8, 105:9, 106:18, 107:1, 112:7, 112:14, 115:7, 118:9, 122:5, 123:25, 127:20, 133:11,

133:12, 133:17, 133:18, 135:17, 136:13, 137:11, 140:12
**One** [2] - 3:3, 59:15
**ones** [4] - 22:7, 22:8, 24:8, 30:17
**oneself** [1] - 122:7
**open** [20] - 34:1, 42:21, 43:11, 44:15, 45:5, 46:2, 46:16, 52:4, 52:9, 57:1, 62:4, 74:18, 81:3, 90:19, 94:8, 94:11, 97:12, 97:17, 98:11, 99:4
**open-and-shut** [1] - 62:4
**opening** [10] - 12:9, 12:15, 31:25, 46:3, 55:5, 64:12, 64:22, 76:11, 81:8, 97:21
**openings** [2] - 31:6, 31:9
**operates** [1] - 112:22
**operation** [1] - 112:11
**opinion** [3] - 103:13, 134:6, 137:9
**opinions** [2] - 83:18, 102:23
**opportunity** [4] - 33:5, 63:4, 101:5, 108:21
**oppose** [1] - 118:18
**opposed** [8] - 40:13, 40:18, 45:19, 48:17, 48:22, 117:14, 118:21, 119:9
**opposing** [2] - 36:5, 41:21
**opposite** [1] - 33:18
**orally** [1] - 136:17
**Order** [2] - 3:1, 28:20
**order** [27] - 4:17, 5:2, 9:19, 10:16, 28:14, 38:9, 40:11, 40:21, 43:14, 51:16, 53:8, 55:21, 89:16, 111:9, 114:2, 117:10, 119:17, 120:1, 120:16, 122:21, 125:14, 126:16, 127:24, 128:19, 130:11, 131:12, 133:25
**ordered** [1] - 107:24
**orderly** [10] - 58:15, 58:18, 59:8, 60:3, 102:10, 126:24, 127:2, 129:1, 129:18,

131:20
**orders** [4] - 10:9, 44:7, 56:6
**ordinarily** [1] - 132:9
**ordinary** [2] - 118:19, 131:18
**organization** [1] - 61:25
**organizations** [1] - 66:18
**organize** [1] - 135:3
**origin** [3] - 15:20, 16:5, 103:6
**original** [3] - 22:8, 23:15, 141:3
**origins** [1] - 85:6
**otherwise** [10] - 88:10, 115:23, 124:15, 125:23, 126:6, 126:9, 133:10, 138:14, 140:7, 140:13
**outcome** [1] - 108:23
**outcomes** [1] - 12:23
**outnumbered** [1] - 42:13
**outright** [1] - 48:22
**outset** [1] - 137:11
**outside** [4] - 53:13, 81:3, 81:8, 135:25
**overruled** [2] - 52:13, 73:16
**overwhelming** [1] - 72:16
**own** [18] - 12:3, 34:10, 35:3, 44:13, 46:7, 49:13, 58:6, 85:16, 87:24, 88:5, 91:10, 94:3, 99:6, 101:23, 101:25, 102:1, 103:17, 133:5

**P**

**P.A** [1] - 2:8
**p.m** [12] - 1:11, 12:4, 34:3, 79:12, 79:13, 82:11, 84:17, 89:23, 139:21, 140:18
**pace** [2] - 139:16, 139:19
**page** [26] - 14:24, 15:16, 15:19, 15:24, 16:11, 17:1, 17:2, 17:17, 19:16, 20:17, 23:3, 24:5, 27:12, 27:15, 27:19, 27:22, 27:25, 28:9, 28:13, 28:15, 28:20, 29:8, 108:11, 138:3, 141:4
**pages** [1] - 24:4

**painted** [1] - 82:20
**Pallas** [10] - 2:8, 3:16, 8:21, 18:18, 23:12, 26:22, 32:4, 32:25, 84:19, 101:3
**PALLAS** [61] - 2:9, 3:16, 3:22, 4:3, 5:2, 5:4, 13:19, 14:17, 14:22, 14:25, 15:24, 16:9, 16:11, 16:25, 17:9, 17:17, 18:4, 18:7, 18:10, 18:13, 19:6, 19:13, 19:19, 20:3, 20:7, 20:13, 20:17, 22:10, 22:15, 22:18, 22:24, 23:3, 23:7, 23:10, 23:20, 24:3, 24:5, 24:7, 24:13, 24:17, 24:19, 24:23, 25:2, 25:5, 25:14, 25:17, 25:19, 25:23, 26:23, 27:2, 29:14, 33:1, 52:12, 84:20, 90:20, 94:9, 94:12, 94:15, 95:20, 96:6, 138:25
**Pallas's** [2] - 7:24, 8:12
**paper** [1] - 63:22
**paperwork** [2] - 63:13, 63:15
**parade** [1] - 131:18
**paraded** [4] - 13:6, 60:19, 61:4, 131:15
**parading** [6] - 13:5, 22:4, 60:17, 131:5, 131:10, 131:22
**paragraph** [22] - 15:24, 16:2, 17:2, 17:7, 17:12, 17:18, 18:8, 18:17, 18:19, 18:20, 18:25, 19:1, 19:16, 19:17, 22:11, 27:18, 27:19, 28:10, 28:17, 28:23, 29:1
**paralegal** [1] - 3:10
**part** [18] - 12:16, 12:17, 15:1, 36:1, 36:3, 38:6, 38:9, 65:9, 65:24, 66:17, 86:2, 86:3, 86:4, 98:10, 107:21, 115:5, 123:23, 124:1
**partially** [1] - 21:10
**participated** [2] - 116:3, 124:20
**participation** [2] - 114:24, 123:18
**particular** [7] - 5:21, 27:14, 102:4, 104:20,

104:24, 106:20, 127:13
**particularly** [4] - 31:23, 36:23, 39:6, 49:10
**particulars** [1] - 21:11
**parties** [4] - 16:19, 31:18, 136:19, 136:22
**partisans** [1] - 137:18
**parts** [2] - 12:2, 115:8
**party** [1] - 107:13
**passageways** [1] - 131:21
**passed** [2] - 51:1, 86:13
**passionate** [3] - 66:14, 66:16, 69:24
**passive** [1] - 127:5
**past** [13] - 34:5, 38:6, 43:16, 46:9, 48:21, 55:24, 56:13, 56:22, 60:7, 61:10, 69:6, 97:25, 99:5
**path** [1] - 72:16
**patience** [1] - 61:7
**patriotic** [1] - 33:17
**patriots** [1] - 33:16
**pause** [7] - 62:17, 65:19, 74:16, 74:17, 75:16, 75:23, 76:2
**pay** [6] - 62:10, 62:22, 82:5, 82:9, 82:12, 90:11
**peace** [1] - 127:5
**Peace** [2] - 30:6, 89:24
**peaceful** [1] - 43:15
**Pearl** [1] - 85:2
**Pelosi's** [2] - 69:14, 92:15
**Pence** [13] - 9:21, 10:2, 58:6, 58:8, 72:10, 77:9, 77:11, 77:15, 77:16, 77:19, 99:22, 99:23, 99:24
**Pence's** [4] - 9:25, 10:3, 58:9, 78:3
**pending** [2] - 121:7, 121:9
**Pennsylvania** [1] - 129:12
**people** [42] - 9:25, 12:22, 15:25, 16:3, 20:8, 42:12, 65:10, 65:17, 70:17, 72:16, 72:21, 72:22, 74:20, 77:14, 78:12, 78:21,

79:3, 79:21, 80:7, 81:7, 81:8, 81:17, 81:19, 84:24, 85:13, 85:17, 85:21, 85:23, 85:24, 87:23, 89:13, 89:24, 90:12, 92:22, 94:23, 96:15, 101:9, 103:4, 108:24, 113:22
**people's** [1] - 69:12
**pepper** [1] - 85:16
**perceived** [1] - 113:9
**perception** [1] - 109:13
**perfect** [1] - 4:3
**perform** [1] - 40:3
**performance** [13] - 38:23, 39:3, 39:21, 41:1, 47:14, 47:19, 48:1, 48:8, 49:16, 111:18, 111:23, 117:22, 119:16
**performed** [6] - 114:13, 114:15, 114:23, 123:7, 123:9, 123:16
**performing** [2] - 35:23, 45:1
**perhaps** [2] - 33:20, 62:14
**perimeter** [11] - 78:12, 78:14, 78:17, 78:18, 78:21, 78:23, 79:16, 79:22, 83:21, 83:25
**period** [2] - 82:9, 82:12
**permitted** [3] - 101:18, 103:23, 106:21
**person** [33] - 41:17, 45:6, 87:15, 87:18, 96:8, 104:8, 105:18, 106:7, 113:4, 113:17, 113:18, 113:19, 113:20, 114:1, 118:2, 118:6, 118:8, 118:17, 118:20, 121:19, 121:24, 122:7, 122:12, 125:24, 125:25, 126:7, 128:3, 129:22, 132:10, 132:18, 136:9, 136:24
**personal** [10] - 16:4, 16:7, 102:1, 102:23, 103:2, 103:5, 103:9, 128:8, 130:21, 137:23
**persons** [4] - 87:16, 111:25, 115:16, 124:8
**perspective** [4] - 45:3, 45:25, 46:11,

46:13
**persuaded** [1] - 66:6
**pertains** [1] - 79:7
**phase** [2] - 115:5, 123:23
**phases** [2] - 115:8, 124:1
**phone** [7] - 80:23, 80:25, 90:8, 98:3, 98:4, 98:12, 138:4
**phrase** [1] - 99:7
**physical** [29] - 36:25, 41:9, 41:16, 49:21, 49:25, 50:3, 54:15, 59:9, 59:13, 59:15, 60:11, 60:16, 66:10, 66:19, 68:10, 68:11, 71:6, 117:23, 118:4, 118:15, 127:18, 127:22, 128:2, 128:6, 130:6, 130:9, 130:14, 130:18
**picked** [1] - 87:17
**picket** [1] - 131:18
**picketed** [2] - 60:19, 131:16
**picketing** [6] - 13:5, 22:4, 60:17, 80:24, 131:5, 131:10
**picture** [9] - 64:21, 66:22, 71:25, 72:4, 73:2, 78:11, 78:13, 78:14, 78:19
**pictures** [3] - 64:17, 79:25, 93:9
**piece** [2] - 29:15, 63:5
**pivoted** [1] - 68:4
**place** [8] - 12:1, 61:16, 61:19, 72:20, 103:3, 127:9, 127:15, 138:22
**Plaintiff** [1] - 1:4
**plan** [3] - 69:25, 70:1, 95:25
**planning** [1] - 77:10
**plans** [2] - 95:22, 96:1
**platform** [2] - 5:13, 89:12
**platoon** [2] - 42:8, 42:12
**play** [2] - 23:2, 86:4
**played** [2] - 82:7
**player** [2] - 46:5, 97:22
**playing** [17] - 34:1, 42:21, 43:11, 44:15, 45:5, 46:2, 46:16, 52:4, 52:9, 74:18,

90:19, 94:8, 94:11, 97:12, 97:17, 98:11, 99:4
**plaza** [1] - 47:3
**pleading** [1] - 10:8
**plenty** [2] - 10:6, 22:16
**PO** [1] - 2:6
**podium** [2] - 3:7, 14:21
**point** [31] - 7:24, 11:3, 18:3, 18:4, 26:1, 36:16, 45:14, 45:16, 48:2, 51:5, 54:13, 56:10, 56:22, 56:23, 57:2, 57:3, 57:9, 57:11, 65:7, 66:23, 66:24, 81:16, 83:12, 90:6, 95:14, 95:16, 132:6, 132:7, 139:4
**pointblank** [1] - 73:24
**points** [1] - 11:8
**poke** [2] - 62:6, 73:9
**Police** [29] - 8:7, 11:13, 19:20, 19:25, 20:1, 20:9, 36:12, 40:14, 41:4, 41:5, 42:10, 43:18, 48:9, 48:19, 56:18, 57:8, 78:10, 89:17, 110:19, 110:20, 110:24, 111:15, 111:17, 112:23, 112:24, 112:25, 117:16, 119:10
**police** [36] - 6:23, 8:2, 8:7, 10:8, 11:20, 11:23, 33:19, 34:7, 34:22, 34:25, 35:15, 36:6, 36:19, 43:20, 44:7, 44:8, 44:25, 45:19, 46:9, 48:23, 49:24, 54:22, 54:23, 56:3, 56:21, 77:1, 80:16, 81:15, 81:17, 92:21, 92:22, 94:18, 97:19, 100:17, 110:2, 110:7
**policing** [2] - 19:21, 113:1
**political** [9] - 15:17, 15:22, 16:6, 16:8, 61:25, 83:5, 85:7, 86:4, 103:8
**politicians** [2] - 85:4, 85:11
**politics** [1] - 85:9
**portions** [2] - 129:11, 134:18

**position** [1] - 137:12
**positions** [1] - 55:1
**possibility** [1] - 102:25
**possible** [1] - 135:8
**possibly** [1] - 62:14
**posted** [3] - 125:23, 126:6, 126:8
**powerful** [2] - 87:6, 105:9
**practice** [3] - 31:17, 31:18, 139:15
**prayed** [1] - 69:8
**preferences** [1] - 103:2
**prejudice** [2] - 108:14, 109:22
**prejudiced** [1] - 109:20
**prejudices** [2] - 102:23, 103:2
**premature** [1] - 26:2
**prescribed** [1] - 130:4
**presence** [3] - 9:21, 9:25, 122:11
**present** [12] - 3:17, 4:10, 9:6, 32:18, 71:4, 84:18, 96:16, 115:17, 118:6, 118:9, 118:12, 140:14
**presentation** [1] - 87:14
**presented** [6] - 9:2, 10:17, 30:4, 106:24, 107:7, 135:22
**presently** [1] - 5:18
**preside** [2] - 134:21, 140:1
**President** [21] - 9:21, 10:3, 25:16, 37:3, 39:25, 48:11, 51:25, 58:4, 58:8, 70:3, 70:5, 74:2, 74:3, 74:6, 77:15, 89:2, 89:3, 99:22, 126:1, 126:2
**presumed** [1] - 104:11
**presumption** [1] - 104:12
**pretrial** [1] - 26:1
**pretty** [6] - 25:25, 46:5, 84:22, 93:17, 96:4, 97:24
**prevents** [1] - 127:11
**previous** [1] - 109:8
**pride** [1] - 137:11
**principal** [1] - 113:21
**principle** [1] - 75:25
**private** [1] - 92:4

**probability** [1] - 109:15

**probable** [6] - 12:23, 50:15, 86:23, 105:8, 120:24, 132:18

**problem** [2] - 16:10, 20:18

**procedure** [2] - 63:15, 64:7

**Procedure** [1] - 5:7

**procedures** [1] - 63:20

**proceed** [7] - 4:18, 14:10, 33:5, 33:13, 77:14, 84:19, 137:18

**proceeding** [43] - 50:5, 50:8, 50:13, 50:14, 50:19, 50:21, 50:23, 51:4, 51:10, 51:15, 54:11, 73:13, 101:10, 120:4, 120:8, 120:11, 120:20, 120:22, 120:25, 121:3, 121:5, 121:6, 121:9, 121:11, 121:21, 121:22, 121:24, 122:2, 122:3, 122:8, 122:11, 122:15, 122:22, 123:2, 123:5, 123:12, 123:15, 124:17, 124:25, 125:1, 125:5, 125:8

**Proceedings** [1] - 140:18

**proceedings** [2] - 50:17, 127:10

**process** [7] - 37:7, 51:23, 70:6, 70:7, 82:18, 82:25, 137:23

**processes** [1] - 82:18

**produce** [1] - 104:18

**Produced** [1] - 1:25

**progress** [1] - 121:3

**promise** [1] - 57:16

**promised** [1] - 31:25

**promote** [1] - 135:6

**pronounced** [1] - 63:8

**proof** [13] - 5:20, 6:19, 9:3, 9:9, 17:10, 62:5, 62:9, 75:14, 87:5, 89:18, 90:3, 104:15, 105:9

**proper** [3] - 5:14, 20:1, 107:11

**properly** [1] - 103:20

**property** [9] - 8:9, 61:24, 71:8, 71:9,

112:3, 112:5, 128:3, 128:9, 130:22

**proposal** [1] - 24:16

**propose** [1] - 28:2

**proposed** [3] - 14:14, 14:15, 30:10

**prosecution** [6] - 80:6, 81:14, 82:6, 82:16, 83:15, 84:1

**prosecution's** [1] - 78:24

**prosecutor** [2] - 85:17, 91:9

**prosecutors** [2] - 93:9, 96:14

**protect** [6] - 36:12, 36:15, 39:25, 56:5, 94:17, 94:23

**protected** [14] - 11:10, 11:12, 39:4, 39:22, 39:24, 40:3, 48:1, 48:7, 48:8, 111:23, 112:10, 125:24, 125:25, 126:7

**protectee** [5] - 5:11, 25:16, 89:1, 89:8

**protecting** [3] - 11:13, 45:20, 56:21

**protection** [3] - 48:10, 48:11, 54:4

**protesters** [1] - 92:14

**proud** [1] - 85:1

**Proud** [1] - 62:1

**prove** [41] - 5:9, 9:1, 9:5, 9:21, 10:16, 10:21, 11:9, 12:19, 37:14, 38:9, 46:21, 48:13, 48:24, 50:11, 51:1, 51:16, 53:11, 54:1, 54:7, 55:9, 59:24, 61:7, 86:17, 86:22, 92:10, 100:12, 104:17, 104:24, 105:6, 105:22, 105:24, 114:24, 115:21, 116:2, 119:5, 121:10, 123:17, 124:14, 124:19, 130:1, 134:10

**proved** [21] - 7:25, 11:11, 37:21, 58:22, 72:10, 77:19, 101:14, 108:1, 111:10, 114:5, 117:12, 120:17, 122:24, 125:16, 126:18, 127:25, 128:20, 130:12, 131:13, 132:9, 132:24

**proven** [7] - 38:1,

47:12, 54:9, 60:14, 103:24, 104:14, 104:19

**provide** [1] - 102:2

**province** [1] - 19:24

**proving** [4] - 5:20, 86:20, 105:3, 106:17

**proximity** [4] - 58:13, 59:16, 126:21

**public** [8] - 58:3, 77:9, 77:12, 96:14, 111:24, 127:5, 127:7

**publicity** [1] - 135:22

**publicized** [1] - 89:10

**pull** [1] - 15:13

**punishment** [3] - 31:20, 135:8, 135:14

**PURDY** [6] - 1:6, 1:6, 2:1, 2:4, 13:24, 14:3

**Purdy** [187] - 3:4, 3:13, 3:14, 6:8, 8:15, 8:23, 9:3, 9:6, 9:10, 10:22, 12:8, 12:11, 12:14, 12:16, 12:25, 13:13, 13:14, 13:15, 13:17, 13:23, 14:1, 14:9, 15:8, 17:19, 17:25, 18:6, 18:9, 18:11, 19:4, 19:5, 19:15, 20:19, 21:4, 21:13, 28:2, 32:21, 32:23, 32:24, 33:21, 33:24, 34:13, 35:3, 35:14, 36:9, 36:18, 36:23, 37:22, 37:23, 38:5, 40:17, 42:23, 43:6, 43:9, 43:13, 44:3, 44:4, 44:12, 44:17, 44:22, 45:3, 45:8, 45:18, 45:20, 45:25, 46:4, 46:14, 47:2, 47:5, 48:13, 49:6, 50:1, 50:6, 51:20, 52:14, 52:20, 52:22, 53:1, 53:13, 53:15, 54:10, 54:14, 55:6, 56:16, 56:17, 57:4, 59:10, 60:13, 61:12, 61:13, 62:15, 64:13, 64:15, 64:19, 65:7, 67:3, 67:10, 67:15, 74:1, 76:10, 76:24, 76:25, 77:5, 77:8, 77:13, 77:21, 77:23, 78:2, 78:8, 79:7, 79:17, 80:4, 80:11, 80:17, 80:21, 81:5, 81:11, 81:18, 82:2, 82:8, 82:10,

82:11, 82:17, 83:1, 83:2, 83:23, 83:24, 84:2, 88:16, 88:17, 90:7, 91:17, 91:18, 93:24, 94:4, 97:5, 97:18, 100:1, 100:2, 100:7, 100:23, 104:16, 104:17, 104:20, 104:21, 105:1, 105:4, 110:9, 110:10, 110:15, 110:21, 111:1, 113:11, 117:1, 117:4, 120:7, 120:10, 122:14, 125:11, 125:12, 126:13, 126:14, 127:21, 128:15, 128:16, 130:8, 131:8, 131:9, 132:14, 132:25, 139:1, 139:13

**Purdy's** [14] - 10:23, 11:17, 12:3, 12:21, 35:17, 36:1, 36:7, 45:12, 45:23, 46:8, 49:11, 52:3, 53:7, 58:6

**purpose** [11] - 38:20, 41:9, 46:24, 69:2, 111:13, 114:16, 115:22, 121:16, 122:9, 123:10, 124:15

**purposes** [4] - 85:7, 117:25, 129:18, 130:22

**pursuant** [1] - 5:6

**push** [8] - 44:11, 45:15, 46:8, 56:13, 56:14, 56:22, 77:2

**pushed** [20] - 34:6, 34:8, 34:9, 34:17, 34:19, 34:23, 35:4, 36:11, 38:6, 43:3, 43:10, 43:14, 43:25, 44:13, 46:6, 47:5, 48:20, 55:20, 81:15, 100:23

**pushing** [5] - 42:23, 44:1, 48:23, 54:23, 54:25

**put** [9] - 12:24, 16:9, 32:3, 32:10, 49:12, 94:23, 137:1, 137:3, 138:12

**putting** [1] - 23:4

**Q**

**questions** [6] - 13:8, 74:15, 102:7, 102:11,

104:5, 107:1

**quick** [2] - 23:12, 97:8

**quickest** [1] - 3:22

**quickly** [3] - 13:3, 57:16, 100:1

**quiet** [1] - 127:6, 131:22

**quite** [1] - 33:18

**R**

**race** [3] - 15:19, 16:5, 103:6

**rack** [8] - 12:4, 35:4, 36:11, 44:13, 47:5, 91:8, 100:23

**racks** [13] - 34:24, 55:13, 56:18, 57:7, 69:6, 69:7, 71:19, 78:18, 78:19, 79:4, 91:7, 100:19, 100:20

**radio** [1] - 135:18

**raise** [3] - 20:15, 23:14, 31:4

**raised** [1] - 25:25

**rally** [2] - 77:13, 80:4

**rammed** [1] - 38:5

**random** [1] - 137:22

**rare** [1] - 138:12

**rather** [2] - 76:1, 139:13

**RDR** [1] - 141:8

**RDR-CRR** [1] - 141:8

**reach** [3] - 62:16, 119:24, 134:25

**reached** [4] - 6:9, 16:18, 136:21, 136:25

**reaching** [4] - 106:23, 107:4, 107:7, 134:17

**reacting** [1] - 94:2

**read** [13] - 24:22, 30:14, 33:10, 33:12, 75:1, 86:11, 88:1, 134:8, 135:20, 138:10, 138:23, 139:2

**reads** [3] - 29:11, 32:7, 37:17

**ready** [1] - 88:15

**real** [5] - 23:12, 72:15, 74:17, 128:8, 130:21

**reality** [2] - 72:12, 97:10

**realize** [6] - 16:1, 55:18, 56:2, 56:11, 56:24, 57:6

**realized** [2] - 69:18, 82:2

**realizes** [1] - 113:4
**realizing** [2] - 100:8, 100:9
**really** [27] - 22:11, 62:3, 64:1, 65:10, 66:11, 66:17, 66:25, 67:1, 67:20, 68:19, 69:11, 69:20, 69:22, 69:23, 70:23, 72:20, 73:3, 73:22, 74:5, 74:8, 74:25, 76:22, 77:5, 80:14, 80:16, 95:11
**Realtime** [1] - 1:23
**reason** [15] - 5:12, 6:11, 23:5, 76:23, 77:3, 77:6, 87:8, 96:21, 105:12, 105:21, 108:20, 110:12
**reasonable** [86] - 8:1, 11:19, 37:21, 38:1, 41:17, 46:21, 54:10, 58:23, 60:14, 61:8, 62:5, 62:7, 62:17, 62:18, 64:6, 64:11, 65:13, 66:3, 66:4, 67:25, 68:6, 69:5, 70:12, 72:3, 72:7, 73:4, 76:20, 86:10, 86:12, 86:15, 86:19, 86:20, 87:6, 87:7, 87:12, 87:13, 87:14, 87:15, 87:16, 87:17, 87:18, 96:7, 96:8, 100:7, 100:12, 100:15, 101:15, 103:24, 104:14, 104:19, 104:25, 105:5, 105:10, 105:11, 105:16, 105:17, 105:18, 105:24, 106:5, 108:2, 111:11, 113:23, 114:5, 115:21, 116:2, 116:19, 117:13, 118:14, 118:17, 118:24, 119:7, 119:24, 120:18, 121:10, 122:24, 124:14, 124:19, 125:4, 125:17, 126:19, 128:1, 128:21, 130:13, 131:14, 132:24, 134:10
**reasonableness** [1] - 109:14
**reasonably** [1] - 121:11

**reasons** [3] - 5:14, 63:19, 110:13
**rebuttal** [4] - 26:12, 33:7, 84:13, 96:24
**recalled** [1] - 108:9
**recap** [1] - 47:2
**receive** [2] - 104:2, 110:1
**received** [2] - 132:15, 132:21
**recess** [4] - 84:11, 84:16, 138:18, 140:16
**recessed** [1] - 140:18
**Recessed** [1] - 84:17
**reclaim** [1] - 56:4
**recognized** [1] - 6:17
**recollection** [1] - 109:4
**reconvene** [2] - 139:22, 140:7
**Record** [2] - 1:25, 50:25
**record** [11] - 3:2, 3:7, 3:20, 8:5, 11:3, 12:25, 24:9, 32:3, 32:11, 67:9, 141:4
**recorded** [1] - 129:10
**recording** [2] - 45:7, 53:6
**records** [4] - 11:14, 48:3, 70:11, 70:12
**recovered** [2] - 82:24, 82:25, 83:3
**recovering** [1] - 83:1
**red** [12] - 15:1, 24:11, 30:4, 71:18, 78:11, 78:12, 78:14, 82:21, 88:21, 89:25, 99:16, 99:17
**redirect** [2] - 40:16, 68:7
**redirected** [2] - 68:9, 94:25
**REEVES** [2] - 1:22, 141:8
**Reeves** [2] - 141:2, 141:8
**refer** [7] - 18:17, 40:8, 40:9, 41:10, 87:13, 102:3, 102:4
**reference** [1] - 103:16
**references** [1] - 27:18
**referred** [1] - 139:1
**refers** [3] - 118:1, 129:7, 131:19
**reflected** [1] - 120:2

**reflection** [3] - 87:19, 96:8, 105:18
**refuse** [3] - 102:14, 121:22, 122:2
**regard** [7] - 11:1, 21:1, 31:23, 43:5, 51:20, 51:21, 54:15
**regarding** [7] - 5:17, 10:3, 10:19, 77:7, 77:11, 134:23, 135:5
**regardless** [2] - 16:4, 103:5
**Registered** [1] - 1:22
**regulations** [3] - 63:18, 63:19, 141:4
**rein** [1] - 69:20
**reject** [1] - 29:17
**rejected** [2] - 25:3, 25:12
**relate** [1] - 65:23
**related** [1] - 78:8
**relates** [2] - 43:5, 50:9
**relating** [1] - 8:22
**relation** [1] - 81:9
**release** [1] - 140:1
**relevant** [4] - 31:13, 97:16, 98:10, 132:23
**relic** [1] - 23:15
**relied** [1] - 78:20
**relies** [1] - 74:3
**religion** [2] - 15:20, 103:6
**rely** [1] - 101:24
**remain** [2] - 55:20, 140:4
**remained** [6] - 57:17, 57:19, 94:25, 125:18, 137:24
**remaining** [7] - 12:17, 54:14, 54:16, 57:14, 73:11, 125:9, 125:13
**remains** [2] - 104:12, 126:5
**remember** [23] - 16:16, 16:22, 16:24, 67:10, 67:14, 67:17, 67:21, 73:10, 75:8, 75:14, 78:10, 79:10, 84:3, 88:17, 88:18, 89:1, 89:21, 93:6, 93:10, 93:11, 93:15, 137:18
**remembers** [1] - 93:13
**remind** [3] - 75:8, 135:16, 136:3
**removed** [1] - 80:1
**renew** [1] - 139:5

**renewed** [1] - 12:15
**repeat** [1] - 21:18
**replace** [1] - 101:23
**replaces** [2] - 134:7, 134:8
**Reporter** [4] - 1:22, 1:23, 1:23, 141:2
**REPORTER** [1] - 141:9
**reports** [2] - 135:17, 135:21
**represent** [1] - 133:24
**Representatives** [1] - 129:15
**represents** [1] - 107:13
**request** [3] - 15:5, 15:22, 20:10
**require** [7] - 25:20, 75:6, 75:7, 83:12, 104:16, 106:22, 139:4
**required** [9] - 5:15, 9:1, 10:15, 48:12, 105:22, 115:10, 118:5, 124:3, 132:17
**requirement** [3] - 76:18, 115:11, 124:4
**requirements** [1] - 37:15
**requires** [2] - 83:18, 89:7
**requisite** [1] - 10:25
**research** [3] - 20:11, 20:12, 136:9
**resist** [1] - 118:18
**resisted** [8] - 40:13, 40:17, 48:17, 48:22, 117:14, 118:21, 119:2, 119:8
**resisting** [13] - 21:14, 35:16, 36:3, 36:5, 40:7, 41:21, 48:15, 66:8, 95:2, 117:2, 117:5, 117:7, 119:20
**resolutions** [1] - 51:1
**respect** [4] - 133:13, 133:15, 133:22, 135:4
**respective** [1] - 50:2
**respectively** [1] - 40:1
**respond** [6] - 136:19, 136:20, 136:22, 140:3, 140:4, 140:6
**responded** [3] - 34:4, 41:3, 42:9
**responding** [3] - 34:5, 52:20, 136:20

**response** [2] - 20:24, 21:10
**responsibility** [3] - 102:18, 103:15, 107:14
**rest** [3] - 4:8, 4:20, 137:24
**restart** [1] - 138:11
**rested** [1] - 33:3
**restrict** [1] - 5:14
**restricted** [48] - 5:10, 5:11, 5:12, 8:3, 12:1, 12:19, 13:1, 37:1, 37:2, 37:3, 37:12, 51:14, 54:17, 54:22, 55:19, 56:11, 57:11, 57:14, 57:17, 57:23, 58:12, 58:14, 58:24, 58:25, 59:9, 59:14, 59:21, 78:9, 78:10, 99:11, 99:22, 101:12, 125:9, 125:13, 125:19, 125:22, 125:23, 126:5, 126:6, 126:9, 126:11, 126:15, 126:21, 127:16, 127:19, 127:23, 128:3, 128:10
**rests** [5] - 14:10, 32:22, 32:24, 33:1, 135:12
**result** [1] - 109:12
**results** [2] - 112:3, 112:4
**resume** [1] - 140:2
**retire** [1] - 136:2
**retiring** [1] - 137:15
**retreat** [2] - 43:24, 44:2
**retreating** [3] - 67:6, 67:8, 73:21
**return** [8] - 61:14, 88:8, 102:8, 133:8, 133:19, 133:21, 133:25, 134:20
**returned** [1] - 102:9
**returning** [1] - 134:11
**reus** [1] - 12:17
**reveal** [1] - 136:24
**review** [1] - 134:19
**reviewed** [1] - 3:24
**reviewing** [2] - 85:19, 137:16
**RICHARD** [2] - 1:6, 2:1
**Richard** [28] - 3:4, 19:3, 88:16, 90:7, 91:17, 97:5, 104:16, 104:20, 104:25,

105:4, 110:9, 110:15, 110:21, 110:25, 113:11, 117:1, 117:4, 120:7, 120:9, 122:14, 125:11, 126:13, 127:21, 128:15, 130:8, 131:8, 132:14, 132:25
**riot** [3] - 39:8, 51:5, 100:4
**rioters** [13] - 35:7, 36:15, 43:20, 43:24, 44:17, 53:14, 55:4, 55:5, 55:20, 56:7, 56:20, 58:5, 99:24
**ROBERT** [2] - 1:6, 2:8
**Robert** [112] - 3:5, 3:17, 5:5, 5:10, 6:7, 6:17, 9:20, 10:20, 10:22, 13:18, 14:5, 17:19, 17:21, 18:12, 18:13, 18:14, 19:2, 19:4, 19:11, 20:20, 21:5, 21:15, 23:20, 32:25, 33:1, 33:22, 34:16, 35:14, 36:18, 36:23, 37:23, 38:6, 44:2, 44:6, 44:22, 45:4, 45:18, 45:21, 46:15, 48:13, 49:6, 49:11, 50:1, 50:6, 51:21, 52:14, 53:15, 53:20, 54:11, 54:15, 55:7, 56:6, 56:16, 59:11, 60:13, 61:12, 61:13, 85:16, 85:18, 85:24, 86:7, 86:20, 88:17, 88:19, 89:7, 89:18, 89:20, 90:4, 90:5, 90:8, 90:16, 90:21, 90:22, 90:24, 91:2, 91:8, 91:13, 92:3, 92:7, 92:8, 93:2, 94:1, 94:5, 97:6, 98:3, 98:25, 99:2, 100:20, 100:22, 104:17, 104:21, 105:1, 105:4, 110:10, 110:22, 111:1, 113:11, 117:6, 120:7, 120:10, 122:14, 125:12, 126:14, 127:21, 128:16, 130:9, 131:9, 132:15, 132:25
**role** [2] - 10:3, 58:9
**rolling** [2] - 72:20, 94:7
**room** [12] - 88:14, 92:13, 101:20, 132:6,

134:12, 134:19, 134:20, 136:2, 137:8, 137:15, 140:9, 140:11
**rooms** [1] - 92:16
**round** [1] - 61:17
**route** [2] - 78:25, 79:1
**ROYCE** [1] - 1:10
**rule** [1] - 102:11
**Rule** [3] - 5:6, 9:7, 9:17
**ruled** [3] - 10:14, 11:2, 107:20
**rules** [4] - 63:18, 63:19, 134:23, 139:4
**Rules** [1] - 5:6
**run** [1] - 57:15
**running** [1] - 46:14
**rush** [3] - 45:13, 139:15, 139:18
**rushed** [9] - 45:3, 45:4, 46:4, 97:22, 98:1, 98:15, 99:5, 99:6, 101:2
**rushing** [3] - 68:4, 97:22, 97:25

## S

**safe** [1] - 26:10
**safety** [1] - 127:5
**Safeway** [1] - 11:15, 39:16, 48:2, 70:10, 70:11, 70:12, 70:18, 70:20, 70:21
**Safeway's** [1] - 39:12
**sales** [4] - 39:16, 70:14, 70:17
**Samuel** [1] - 95:24
**Sandler** [1] - 74:16
**satisfies** [1] - 13:4
**satisfy** [2] - 115:11, 124:4
**save** [2] - 94:16, 97:15
**saving** [1] - 52:16
**saw** [37] - 24:15, 24:18, 38:5, 42:12, 43:7, 46:9, 49:5, 49:10, 50:22, 56:13, 57:9, 58:4, 58:6, 64:15, 65:7, 69:5, 72:1, 73:2, 73:24, 76:7, 76:17, 76:24, 77:10, 77:12, 78:13, 79:2, 80:18, 83:24, 89:18, 98:17, 99:23, 99:24, 106:8, 106:10, 106:11, 106:12
**scared** [3] - 65:5,

65:6, 65:7
**scene** [2] - 45:10, 56:4
**schedule** [1] - 4:14
**scientific** [1] - 105:23
**scratch** [1] - 49:1
**screaming** [1] - 44:6
**screen** [2] - 50:25, 57:4
**sea** [1] - 79:3
**seat** [1] - 138:6
**seated** [2] - 4:12, 32:19
**second** [45] - 17:11, 17:18, 18:4, 18:17, 18:19, 18:20, 18:25, 19:1, 19:17, 28:6, 28:8, 28:23, 34:24, 36:1, 36:3, 39:19, 40:20, 43:23, 44:9, 44:18, 45:16, 47:13, 49:4, 55:24, 62:17, 66:8, 66:18, 68:11, 73:22, 74:14, 75:16, 90:23, 111:16, 114:10, 117:17, 119:11, 120:21, 123:4, 125:21, 126:23, 128:5, 128:25, 130:16, 131:17
**second-to-last** [1] - 19:17
**seconds** [9] - 6:11, 42:19, 53:15, 64:20, 74:14, 74:15, 93:17, 93:19, 97:13
**Secret** [12] - 5:11, 48:10, 73:23, 77:8, 80:7, 80:15, 89:1, 89:17, 112:16, 125:24, 126:1, 126:7
**Section** [8] - 120:5, 125:10, 126:12, 127:20, 128:14, 130:7, 131:6
**sections** [1] - 50:25
**secure** [1] - 122:6
**secured** [2] - 78:18, 98:5
**Security** [1] - 112:16
**security** [2] - 51:13, 99:15
**see** [60] - 15:13, 15:19, 17:9, 19:16, 27:4, 39:15, 42:19, 43:12, 47:9, 48:4, 54:22, 55:12, 55:23, 56:18, 56:25, 57:1,

57:4, 57:5, 57:9, 60:25, 63:1, 69:9, 71:23, 71:24, 74:10, 76:25, 77:7, 79:3, 79:17, 81:4, 81:6, 81:14, 82:1, 82:4, 82:10, 82:11, 82:14, 82:20, 83:6, 83:20, 84:15, 88:24, 88:25, 91:2, 93:21, 93:22, 94:22, 95:11, 95:19, 99:19, 100:20, 100:22, 134:17, 138:19
**seeing** [1] - 89:24
**seem** [2] - 8:9, 75:20
**select** [2] - 134:21, 134:23
**selected** [2] - 87:16, 137:23
**selecting** [1] - 107:2, 135:2
**selection** [1] - 137:22
**self** [2] - 109:21, 121:23
**self-incrimination** [1] - 121:23
**self-interest** [1] - 109:21
**semblance** [1] - 56:4
**Senate** [11] - 53:14, 53:16, 54:19, 54:21, 56:25, 69:13, 70:4, 91:6, 92:4, 92:15, 129:15
**senator** [1] - 92:4
**send** [11] - 21:24, 21:25, 22:7, 26:3, 96:18, 102:7, 132:4, 134:12, 136:12, 140:3, 140:4
**sending** [1] - 29:21
**sense** [3] - 7:17, 75:17, 137:11
**sensibility** [2] - 41:17, 118:17
**sent** [3] - 23:9, 27:13, 89:9
**sentence** [9] - 16:7, 17:11, 21:13, 28:2, 28:6, 28:8, 29:1, 29:10, 135:11
**sentiments** [1] - 85:3
**separate** [9] - 14:15, 18:1, 21:2, 88:2, 88:8, 113:14, 122:17, 133:2, 133:8
**separated** [1] - 17:24
**separately** [4] -

36:20, 88:7, 133:7, 133:10
**serious** [2] - 25:4, 25:6
**seriously** [2] - 25:6, 66:11
**servants** [1] - 96:14
**Service** [12] - 5:11, 48:10, 73:24, 77:8, 80:8, 80:16, 89:1, 89:18, 112:16, 125:24, 126:1, 126:7
**service** [1] - 138:17
**session** [5] - 60:3, 121:4, 129:1, 129:19, 129:20
**set** [1] - 78:17
**setting** [1] - 127:15
**severity** [2] - 31:12, 31:19
**sex** [2] - 15:20, 103:7
**sexual** [2] - 7:10, 103:7
**sheet** [1] - 132:4
**shift** [1] - 17:5
**shifts** [1] - 104:15
**shoot** [1] - 94:21
**shopping** [1] - 70:18
**short** [1] - 61:20
**shot** [2] - 52:10, 52:16
**shots** [1] - 50:25
**shoulder** [3] - 34:18, 38:5, 43:14
**shouting** [2] - 45:8, 45:12
**shove** [1] - 64:17
**shoved** [3] - 8:15, 64:13, 64:19
**shoving** [3] - 8:15, 42:23, 64:18
**show** [25] - 9:3, 38:10, 38:13, 39:7, 51:17, 64:21, 66:2, 66:3, 66:10, 66:22, 68:23, 73:22, 74:8, 76:12, 76:13, 76:19, 83:15, 89:22, 97:10, 97:15, 114:22, 118:20, 123:16, 129:24
**showed** [6] - 64:17, 64:21, 65:10, 77:18, 83:16, 93:9
**showing** [2] - 50:24, 84:1
**shown** [3] - 51:19, 60:22, 109:19
**shows** [17] - 11:15, 45:3, 46:11, 46:13,

51:3, 53:13, 55:4, 55:5, 55:6, 60:7, 68:8, 70:12, 72:25, 91:8, 95:24, 115:19, 124:12

**shut** [1] - 62:4

**sic** [10] - 18:5, 18:9, 18:11, 63:1, 104:20, 104:25, 105:3, 113:11, 117:1, 119:14

**side** [10] - 17:3, 17:4, 26:10, 55:1, 55:13, 63:5, 72:5, 73:3, 107:10, 109:20

**sides** [1] - 33:3

**sign** [4] - 71:23, 80:23, 89:16, 89:19

**signed** [2] - 136:13, 136:15

**signs** [10] - 12:2, 55:12, 55:20, 71:20, 71:23, 72:15, 72:23, 78:18, 82:22, 99:18

**silly** [1] - 72:9

**similar** [1] - 34:16

**similarly** [1] - 104:5

**simple** [9] - 49:2, 66:9, 66:20, 75:5, 75:6, 75:23, 119:4, 119:6, 119:23

**simply** [8] - 6:6, 6:7, 9:23, 10:22, 39:6, 49:25, 64:14, 72:16

**simultaneous** [1] - 122:11

**single** [6] - 65:18, 65:20, 70:20, 71:23, 98:20, 98:21

**sit** [2] - 31:1, 66:14

**site** [1] - 34:21

**sitting** [3] - 72:19, 75:17, 75:21

**situation** [1] - 139:22

**six** [4] - 35:13, 74:12, 79:10

**six-minute** [2] - 79:10

**skip** [1] - 44:20

**skipped** [1] - 108:11

**sleep** [2] - 53:8, 106:12

**slightly** [2] - 46:10, 58:20

**slow** [1] - 121:3

**small** [7] - 11:10, 21:17, 41:16, 80:5, 82:12, 118:16

**smash** [1] - 61:24

**Smith** [4] - 36:21, 46:15, 98:16, 98:19

**Smith's** [2] - 98:14,

98:24

**snow** [10] - 55:13, 55:24, 71:24, 78:19, 78:20, 79:4, 106:8, 106:10, 106:12

**snowed** [1] - 106:14

**social** [1] - 10:10

**sole** [5] - 5:24, 102:17, 103:14, 108:4, 122:9

**solely** [5] - 21:15, 54:6, 103:9, 135:13, 135:21

**soliciting** [2] - 114:16, 123:10

**someone** [13] - 6:17, 7:5, 8:2, 52:21, 65:2, 67:7, 71:4, 73:10, 80:3, 91:20, 91:22, 113:24, 118:11

**sometime** [1] - 34:3

**sometimes** [4] - 107:9, 139:1, 139:13, 140:5

**SONJA** [2] - 1:22, 141:8

**Sonja** [2] - 141:2, 141:8

**soon** [2] - 34:13, 82:13

**sorry** [8] - 17:18, 18:3, 30:6, 42:22, 52:18, 61:12, 74:23, 108:11

**sort** [6] - 6:24, 28:13, 61:25, 63:3, 63:14, 80:17

**sound** [1] - 63:17

**sounds** [1] - 72:9

**Southeast** [1] - 129:5

**southeast** [1] - 72:5

**speaking** [1] - 138:5

**speaks** [1] - 46:17

**Special** [8] - 35:4, 39:11, 39:23, 43:22, 52:2, 53:6, 54:24, 77:18

**special** [2] - 25:17, 82:5

**specific** [8] - 24:19, 25:9, 59:12, 80:21, 89:6, 130:1, 130:2, 134:23

**specifically** [6] - 5:15, 21:13, 23:17, 45:22, 88:10, 110:18

**spectator** [2] - 115:17, 124:9

**speculate** [2] -

107:18, 110:12

**speculation** [1] - 105:21

**speech** [1] - 58:8

**spelled** [1] - 63:8

**spend** [1] - 62:4

**spent** [3] - 46:18, 46:20, 74:12

**spiked** [1] - 82:21

**spoiling** [1] - 33:24

**spokesperson** [1] - 134:22

**spot** [1] - 92:19

**spray** [1] - 85:16

**stab** [1] - 49:1

**stage** [2] - 4:21, 138:12

**staggered** [1] - 46:8

**stairs** [16] - 34:21, 35:18, 36:10, 38:8, 43:21, 44:1, 54:20, 55:1, 56:13, 56:16, 64:14, 66:22, 81:13, 81:18, 81:19, 100:17

**stake** [1] - 72:1

**stamps** [1] - 82:10

**stand** [10] - 4:12, 14:13, 34:15, 35:1, 35:2, 44:5, 56:6, 61:16, 108:17, 137:10

**standard** [5] - 9:15, 9:16, 15:5, 86:12, 87:2

**standing** [8] - 22:25, 34:25, 45:7, 51:21, 56:18, 58:5, 64:16, 65:16

**stands** [1] - 108:23

**start** [10] - 9:13, 13:12, 33:11, 42:5, 55:10, 61:17, 61:19, 65:8, 89:23, 97:13

**started** [2] - 91:16, 95:24

**starting** [2] - 3:6, 17:12

**starts** [3] - 28:10, 54:19, 96:11

**state** [5] - 3:7, 37:16, 78:1, 86:17, 112:7, 112:8, 132:8, 132:11, 132:17, 133:1

**statement** [5] - 12:10, 20:2, 64:22, 83:5, 132:13

**statements** [5] - 10:8, 31:8, 76:11, 104:3, 109:8

**STATES** [2] - 1:1, 1:3

**States** [31] - 1:14,

1:17, 3:3, 3:11, 8:8, 19:19, 35:12, 41:1, 49:15, 60:1, 60:20, 75:20, 88:16, 89:17, 110:20, 112:12, 112:13, 112:16, 112:20, 112:23, 112:24, 117:21, 119:15, 128:23, 129:5, 129:6, 129:14, 129:15, 131:16, 141:2, 141:5

**statute** [3] - 5:15, 19:9, 20:13

**statutes** [2] - 8:23, 9:7

**statutory** [1] - 36:4

**stay** [3] - 28:6, 139:16, 139:18

**stayed** [1] - 138:1

**steal** [5] - 52:5, 52:7, 52:8, 52:16, 81:23

**stem** [1] - 8:25

**Stenographic** [1] - 1:25

**stenographic** [1] - 141:3

**step** [3] - 4:16, 55:21, 94:1

**stepping** [2] - 100:20, 100:22

**steps** [1] - 92:21

**sticks** [1] - 85:14

**still** [10] - 53:12, 55:20, 56:1, 56:10, 56:23, 84:22, 85:3, 85:4, 94:9

**stipulations** [3] - 16:18, 16:24, 16:25

**stolen** [1] - 33:24, 51:25

**stone** [4] - 72:14, 72:15, 72:17

**stood** [2] - 64:12, 65:14

**stop** [15] - 10:7, 10:8, 10:12, 20:12, 37:7, 44:7, 51:12, 52:7, 52:24, 53:24, 56:8, 57:8, 75:16, 140:11

**Stop** [1] - 56:6

**stopped** [5] - 34:22, 34:24, 51:5, 101:10

**stopping** [1] - 52:16

**stops** [1] - 127:11

**stormed** [1] - 44:18

**story** [4] - 63:5, 73:9, 100:3, 100:6

**straight** [4] - 66:1, 68:7, 68:9, 94:18

**strain** [1] - 33:20

**street** [1] - 30:5

**Street** [6] - 1:15, 1:18, 2:2, 129:5, 129:13

**stricken** [3] - 29:23, 107:20, 107:24

**strike** [2] - 28:10, 28:17

**strikes** [1] - 68:7

**strolling** [1] - 89:24

**strong** [3] - 85:3, 137:9

**stuff** [3] - 85:6, 85:10, 85:14

**stupid** [1] - 85:14

**subject** [1] - 12:4

**submit** [3] - 6:25, 7:17, 25:23

**submitted** [6] - 24:8, 24:9, 24:13, 24:15, 29:16, 134:18

**substantive** [2] - 111:4, 120:13

**succeed** [2] - 116:5, 124:22

**succeeding** [1] - 50:7

**sudden** [2] - 64:19, 93:15

**suffered** [1] - 41:15

**sufficient** [3] - 113:23, 118:4, 130:23

**suggest** [2] - 29:11, 134:5

**suggested** [1] - 19:15

**Suite** [1] - 1:15

**super** [2] - 73:8, 73:9

**superseding** [1] - 65:22

**supervisor** [3] - 63:12, 63:13, 63:14

**supported** [1] - 109:18

**supposed** [16] - 12:20, 30:23, 55:10, 56:2, 56:12, 56:24, 57:22, 59:23, 60:8, 60:24, 61:4, 77:15, 80:11, 95:23, 99:21, 100:9

**Supreme** [1] - 5:18

**surge** [1] - 81:14

**surprised** [1] - 46:7

**surrounding** [3] - 109:2, 127:14, 132:12

**Surveyor** [1] - 129:8

**suspected** [1] - 62:14

**sustained** [5] - 67:13, 68:14, 96:4, 107:16, 107:23
**swept** [1] - 74:21
**sworn** [1] - 103:21
**sympathy** [1] - 86:3
**system** [3] - 16:4, 103:5, 135:10

## T

**table** [2] - 3:13, 4:5
**taker's** [1] - 102:1
**talks** [1] - 52:19
**tape** [1] - 78:12
**tapes** [1] - 95:6
**task** [1] - 134:24
**Taylor** [1] - 3:10
**tear** [1] - 138:3
**technical** [1] - 86:18
**technically** [1] - 23:16
**television** [1] - 135:18
**temporarily** [2] - 125:25, 126:8
**tempted** [1] - 135:19
**ten** [5] - 64:15, 64:20, 74:14, 74:15, 76:1
**tenant** [1] - 86:24
**tends** [2] - 127:4, 127:9
**tens** [1] - 79:21
**term** [28] - 19:21, 111:24, 112:6, 112:10, 112:14, 112:18, 112:21, 112:25, 118:10, 121:6, 121:13, 121:15, 125:22, 125:25, 126:3, 127:16, 128:6, 128:10, 129:4, 129:6, 129:14, 130:3, 130:18, 130:25, 131:18, 131:19, 131:23, 131:25
**terms** [2] - 118:18, 131:2
**terrace** [7] - 36:14, 44:23, 45:11, 47:8, 90:24, 91:6, 92:20
**testified** [23] - 20:1, 34:18, 43:8, 64:16, 67:14, 69:25, 72:24, 77:8, 78:8, 78:16, 79:25, 80:7, 82:24, 83:19, 83:20, 92:25, 93:1, 93:4, 106:9,

108:4, 108:8, 108:10, 108:22
**testify** [18] - 6:2, 13:21, 13:23, 13:25, 14:2, 14:4, 14:7, 22:13, 35:5, 45:9, 63:11, 78:7, 79:9, 83:23, 110:9, 110:14, 121:22, 122:2
**testifying** [6] - 17:3, 17:4, 39:11, 43:13, 108:18, 108:24
**testimony** [53] - 6:10, 8:5, 8:10, 8:16, 11:12, 22:10, 37:2, 39:22, 41:3, 41:6, 43:22, 46:7, 47:16, 47:18, 48:20, 49:5, 50:20, 50:22, 54:21, 54:23, 58:2, 61:11, 63:3, 63:14, 64:5, 65:14, 67:5, 67:20, 73:4, 73:20, 77:18, 77:20, 79:8, 79:20, 79:23, 80:15, 98:17, 99:17, 103:21, 106:3, 106:9, 106:13, 108:3, 109:7, 109:8, 109:10, 109:16, 109:22, 109:24, 110:2, 110:5, 110:6
**text** [1] - 136:6
**thankfully** [1] - 85:2
**THE** [113] - 1:1, 1:10, 1:14, 3:18, 4:1, 4:6, 4:11, 4:21, 4:25, 5:3, 7:22, 8:20, 9:12, 13:10, 13:15, 13:18, 13:20, 14:1, 14:5, 14:8, 14:21, 14:24, 15:23, 16:7, 16:10, 16:15, 16:21, 17:7, 17:15, 18:3, 18:5, 18:8, 18:11, 18:19, 18:23, 19:1, 19:5, 19:10, 19:18, 19:25, 20:5, 20:10, 20:14, 20:23, 21:19, 22:5, 22:9, 22:13, 22:16, 22:22, 22:25, 23:5, 23:9, 23:11, 23:22, 24:2, 24:4, 24:6, 24:10, 24:15, 24:18, 24:21, 24:24, 25:3, 25:7, 25:12, 25:18, 25:21, 26:5, 26:7, 26:12, 26:16, 26:19, 26:22, 27:1, 27:4, 27:11, 27:22, 27:24, 28:12, 28:15, 28:19,

28:21, 28:24, 29:2, 29:5, 29:7, 29:19, 29:24, 30:2, 30:8, 30:11, 30:15, 30:21, 30:25, 32:17, 32:19, 32:23, 32:25, 33:2, 52:13, 61:16, 67:13, 68:14, 73:16, 76:4, 84:9, 84:19, 95:18, 96:4, 96:23, 101:17, 139:11
**theft** [1] - 7:10
**themselves** [8] - 10:1, 15:3, 49:12, 91:25, 94:23, 107:3, 115:9, 124:2
**therefore** [2] - 88:7, 133:7
**thereof** [1] - 112:13
**they've** [3] - 66:24, 69:3, 70:9
**thinking** [2] - 95:10, 132:10
**third** [13] - 39:6, 39:20, 40:23, 44:21, 49:8, 111:20, 114:13, 117:18, 119:12, 120:23, 123:7, 127:1, 129:3
**Third** [1] - 129:13
**thoughtful** [4] - 83:13, 87:18, 96:8, 105:18
**thousands** [3] - 65:16, 71:20, 79:21
**threat** [8] - 44:1, 51:13, 71:3, 74:1, 118:9, 118:10, 130:19, 130:23
**threaten** [1] - 118:15
**threatened** [1] - 118:3
**threatens** [1] - 118:7
**Three** [1] - 3:5
**three** [33] - 13:3, 21:3, 21:5, 26:14, 34:23, 37:10, 40:5, 44:9, 48:12, 57:1, 63:20, 63:23, 78:2, 84:23, 87:23, 87:25, 88:24, 91:19, 91:21, 92:1, 92:2, 92:17, 92:21, 93:14, 111:25, 116:17, 116:21, 125:2, 125:5, 125:11, 126:12, 128:15, 131:9
**three-and-a-half** [2] - 84:23, 93:14
**throughout** [3] - 60:22, 104:13, 104:15

**thrown** [1] - 80:21
**Thursday** [1] - 74:13
**timestamps** [2] - 82:5, 82:12
**timing** [2] - 27:6, 78:3
**Title** [2] - 12:13
**titles** [1] - 12:13
**today** [10] - 64:5, 75:12, 76:9, 83:7, 97:1, 100:14, 138:2, 140:3, 140:7
**together** [8] - 8:24, 20:19, 32:10, 32:12, 57:2, 87:25
**tomorrow** [5] - 139:17, 139:21, 139:23, 140:1, 140:8
**took** [13] - 6:10, 9:14, 16:18, 21:23, 35:3, 40:17, 44:12, 49:6, 68:24, 72:2, 79:1, 79:2, 98:18
**top** [3] - 36:10, 56:15, 66:22
**totally** [4] - 30:3, 66:6, 83:22, 137:4
**touched** [8] - 8:16, 64:10, 67:22, 67:24, 68:2, 68:3, 71:10, 75:10
**touching** [8] - 41:16, 41:19, 49:3, 68:10, 75:6, 90:21, 118:16, 136:16
**toward** [2] - 69:21, 108:24
**towards** [1] - 60:12
**tragic** [1] - 85:25
**trail** [1] - 63:22
**transcript** [4] - 3:24, 141:3, 141:3, 141:4
**TRANSCRIPT** [1] - 1:10
**Transcript** [1] - 1:25
**travel** [1] - 112:6
**traveled** [1] - 100:17
**treatment** [2] - 16:3, 103:4
**trespass** [1] - 89:5
**trespassing** [1] - 37:11
**trial** [35] - 6:2, 10:16, 15:3, 20:11, 20:15, 21:21, 23:6, 24:14, 37:25, 41:12, 60:22, 86:7, 87:24, 88:4, 88:19, 91:10, 93:3, 93:13, 97:1, 97:6, 101:18, 101:21,

102:10, 102:19, 103:20, 104:13, 104:15, 107:16, 108:12, 109:20, 132:21, 133:5, 135:23, 136:4
**TRIAL** [2] - 1:10
**trials** [1] - 87:25
**tricky** [1] - 21:2
**tried** [6] - 42:13, 44:11, 52:6, 88:6, 133:6
**Triumphant** [1] - 44:16
**troubling** [1] - 6:22
**trucks** [1] - 137:25
**true** [8] - 9:23, 64:14, 86:22, 100:11, 105:7, 105:8, 109:17, 141:3
**truly** [1] - 66:12
**Trump** [5] - 10:3, 70:3, 85:10, 91:3
**Trump's** [1] - 58:8
**Trumpers** [1] - 85:9
**truth** [3] - 86:23, 108:20, 109:24
**truthfully** [1] - 108:8
**try** [6] - 16:22, 17:23, 33:8, 53:24, 95:19, 136:14
**trying** [16] - 34:7, 36:19, 37:6, 43:16, 45:19, 47:10, 51:18, 52:23, 53:1, 53:4, 54:11, 56:4, 77:23, 93:18, 98:15
**Tuesday** [3] - 30:19, 30:21, 74:12
**turmoil** [1] - 127:11
**turn** [4] - 13:20, 14:11, 54:13, 65:7
**TURNER** [3] - 1:7, 2:8, 14:6
**Turner** [119] - 3:5, 3:17, 5:5, 5:10, 5:24, 6:3, 6:7, 6:17, 6:23, 10:7, 10:20, 10:22, 10:24, 13:18, 14:5, 15:9, 15:11, 17:19, 17:21, 18:12, 18:13, 18:14, 19:2, 19:4, 19:11, 20:19, 20:20, 21:5, 21:15, 23:20, 32:25, 33:1, 33:22, 34:16, 35:14, 36:18, 36:23, 37:23, 38:6, 44:3, 44:6, 44:22, 45:4, 45:18, 45:21, 46:15, 48:13, 49:6, 50:1, 50:6, 51:21,

52:14, 53:15, 54:11,
54:15, 55:7, 56:16,
59:11, 60:13, 61:12,
61:13, 85:16, 85:18,
85:24, 86:7, 86:20,
88:17, 88:19, 89:7,
89:18, 89:20, 90:4,
90:5, 90:8, 90:16,
90:21, 90:22, 90:24,
91:2, 91:8, 91:13,
92:3, 92:7, 92:8, 93:2,
94:1, 94:5, 97:6, 98:3,
98:18, 98:25, 99:2,
100:20, 100:22,
101:4, 104:17,
104:21, 105:1, 105:4,
110:10, 110:22,
111:1, 113:11, 117:6,
120:7, 120:10,
122:14, 125:12,
126:14, 127:21,
128:16, 130:9, 131:9,
132:15, 132:25
**Turner's** [4] - 9:20,
11:18, 49:11, 53:20
**turning** [2] - 11:17,
13:11
**Tuttle** [9] - 35:5,
43:22, 43:25, 54:24,
66:21, 67:1, 67:10,
73:20, 91:6
**TV** [1] - 62:8
**Two** [1] - 3:4
**two** [31] - 6:14, 7:17,
8:23, 8:24, 9:6, 11:7,
11:8, 11:25, 12:11,
12:12, 15:8, 17:23,
17:25, 18:1, 18:2,
21:2, 21:3, 27:9,
31:15, 32:13, 36:7,
69:16, 70:24, 73:17,
81:21, 101:1, 105:25,
116:24, 125:8
**two-and-a-half** [3] -
69:16, 70:24, 81:21
**type** [4] - 7:1, 74:22,
87:3, 87:22
**types** [1] - 105:25

## U

**U.S** [8] - 3:9, 3:10,
19:21, 51:12, 95:5,
111:15, 111:17, 113:1
**U.S.C** [9] - 38:18,
120:5, 125:10,
126:11, 127:19,
127:20, 128:14,
130:7, 131:6
**ugly** [2] - 93:22,

93:23
**unable** [1] - 42:14
**unanimity** [2] -
24:19, 25:9
**unanimous** [2] -
134:2, 137:1
**uncle** [1] - 83:10
**undeniable** [1] -
12:25
**undeniably** [1] -
33:15
**under** [19] - 8:23,
9:7, 9:17, 9:24, 10:5,
10:15, 12:8, 12:12,
17:1, 23:13, 27:2,
27:19, 28:13, 28:20,
34:10, 41:5, 109:4,
112:11, 136:23
**undermine** [1] -
127:5
**undoubted** [1] -
69:10
**unfortunately** [1] -
70:2
**unicorns** [1] - 82:23
**uniform** [1] - 22:25
**UNITED** [2] - 1:1, 1:3
**United** [31] - 1:14,
1:17, 3:3, 3:11, 8:8,
19:19, 35:11, 41:1,
49:15, 60:1, 60:20,
75:20, 88:16, 89:17,
110:20, 112:12,
112:13, 112:16,
112:20, 112:23,
112:24, 117:21,
119:15, 128:23,
129:4, 129:6, 129:14,
129:15, 131:16,
141:2, 141:5
**unjustified** [1] -
33:14
**unlawful** [9] - 33:15,
33:19, 121:16,
121:20, 122:3, 122:6,
122:10, 129:25
**unless** [9] - 13:8,
30:16, 61:18, 88:10,
104:13, 133:10,
136:21, 138:15,
139:24
**unlike** [1] - 130:22
**unpatriotic** [1] -
33:14
**unreasonableness**
[1] - 109:15
**unscreened** [1] -
101:8
**untimely** [1] - 20:10
**unusual** [2] - 127:10,

138:7
**up** [54] - 12:2, 14:21,
15:13, 30:17, 30:24,
31:7, 31:14, 34:20,
44:1, 44:10, 54:20,
56:15, 61:16, 64:12,
65:15, 65:20, 66:1,
66:2, 66:3, 66:14,
67:2, 68:9, 68:23,
70:25, 72:16, 74:21,
74:24, 75:21, 75:24,
78:17, 81:17, 81:18,
82:21, 90:23, 91:3,
93:17, 94:19, 94:21,
94:23, 95:24, 96:11,
97:23, 98:3, 98:4,
100:4, 100:17,
106:13, 132:20,
134:24, 135:5,
139:17, 139:18
**updated** [2] - 22:6,
22:7
**uphold** [4] - 33:17,
34:15, 75:19, 75:22
**upholding** [1] - 35:8
**upper** [8] - 36:14,
44:23, 45:11, 47:8,
90:24, 91:5, 92:20,
92:22
**upsetting** [1] - 67:4
**upwards** [1] - 43:24
**urge** [1] - 74:25
**useful** [3] - 137:8,
137:14, 137:17
**usual** [1] - 127:10

## V

**varied** [1] - 7:8
**various** [2] - 12:2,
117:8
**venture** [2] - 115:16,
124:9
**verbs** [4] - 36:6,
40:10, 41:22, 41:23
**verdict** [36] - 61:15,
86:3, 86:4, 96:21,
102:9, 103:4, 103:14,
106:23, 107:3, 107:4,
107:6, 107:8, 119:25,
120:2, 132:4, 133:13,
133:15, 133:20,
133:22, 133:24,
133:25, 134:1, 134:3,
134:6, 134:7, 134:11,
134:14, 134:17,
134:25, 135:13,
136:21, 137:1, 137:10
**verdicts** [3] - 88:8,
133:9, 133:19

**version** [1] - 27:13
**versus** [2] - 3:3,
88:16
**Vice** [15] - 9:21,
25:15, 37:3, 39:25,
48:11, 58:4, 58:8,
74:2, 74:3, 74:6,
77:15, 89:2, 99:22,
126:1, 126:2
**vicinity** [1] - 81:11
**victim** [8] - 5:25,
10:15, 41:15, 49:22,
59:12, 66:1, 92:24,
93:5
**victims** [7] - 6:14,
15:10, 20:20, 49:15,
49:25, 50:2, 92:24
**video** [50] - 34:1,
34:6, 42:21, 43:11,
44:15, 45:5, 45:6,
45:7, 46:2, 46:16,
46:17, 46:20, 48:19,
49:5, 50:22, 52:1,
52:4, 52:9, 56:19,
57:2, 57:10, 58:5,
58:6, 64:15, 64:19,
65:10, 65:18, 68:8,
74:4, 74:8, 79:10,
80:19, 81:1, 82:7,
82:8, 85:20, 89:22,
90:19, 91:3, 91:7,
93:25, 94:8, 94:11,
97:12, 97:17, 98:11,
98:17, 99:4, 100:20
**videos** [13] - 51:19,
64:17, 76:7, 76:24,
76:25, 79:17, 79:25,
80:18, 81:3, 82:1,
82:6, 85:15, 97:9
**viewed** [2] - 9:15,
127:8
**views** [1] - 135:6
**violated** [6] - 25:10,
38:10, 89:14, 130:2
**violating** [1] - 35:13
**violation** [21] - 36:9,
36:17, 38:17, 38:18,
110:17, 110:23,
117:3, 120:5, 120:8,
125:10, 125:14,
126:11, 126:16,
127:19, 127:23,
128:14, 128:18,
130:7, 130:10, 131:6,
131:11
**violations** [1] - 35:14
**violence** [20] - 7:9,
36:25, 37:1, 37:4,
54:15, 59:9, 59:14,
59:16, 60:11, 60:16,

71:6, 111:25, 127:18,
127:22, 128:3, 128:6,
130:6, 130:9, 130:15,
130:18
**visiting** [2] - 125:25,
126:8
**voice** [2] - 45:12,
137:9
**voluntarily** [5] -
40:24, 49:9, 91:25,
117:18, 119:12
**vote** [6] - 37:8, 50:8,
50:9, 121:5, 129:21,
137:15
**voted** [1] - 137:2
**votes** [2] - 70:2, 70:4
**voting** [1] - 136:25
**vs** [1] - 1:5

## W

**Wagner** [2] - 3:9,
30:9
**WAGNER** [26] - 1:15,
3:8, 3:20, 4:4, 4:9,
4:19, 16:17, 17:11,
18:16, 18:20, 18:25,
19:3, 19:8, 27:12,
27:23, 27:25, 28:13,
28:16, 28:20, 28:22,
28:25, 29:3, 29:6,
29:8, 29:20, 29:25
**wait** [1] - 27:11
**walk** [4] - 41:25,
67:4, 94:18, 101:2
**walked** [13] - 55:24,
65:1, 69:21, 71:22,
72:11, 72:21, 72:22,
73:1, 73:18, 91:7,
92:5, 99:12, 101:2
**walking** [5] - 72:16,
79:3, 81:6, 91:8,
91:24
**wall** [4] - 72:14,
72:15, 72:17, 72:18
**Walton** [1] - 21:22
**Walton's** [2] - 21:25,
22:7
**wants** [3] - 62:3,
80:6, 82:16
**Washington** [4] -
1:12, 1:19, 1:24,
129:5
**watch** [10] - 42:18,
45:2, 45:24, 46:10,
48:19, 68:8, 97:15,
98:8, 135:20, 135:21
**watched** [1] - 34:6
**watching** [2] - 53:13,
81:5

**wave** [1] - 44:18
**ways** [7] - 25:10, 116:17, 116:21, 116:24, 125:2, 125:6, 125:8
**weapons** [3] - 29:22, 85:14, 85:21
**wear** [1] - 83:7
**wearing** [1] - 82:22
**Wednesday** [1] - 74:13
**week** [6] - 23:9, 34:5, 60:7, 61:10, 76:7, 76:8
**weekend** [1] - 93:18
**weeks** [2] - 20:15, 20:24
**weight** [8] - 12:24, 17:1, 102:19, 104:1, 106:19, 106:21, 109:25, 110:6
**weird** [1] - 62:18
**west** [19] - 35:18, 36:14, 42:5, 42:6, 44:23, 45:11, 47:3, 47:4, 47:8, 55:1, 55:13, 56:1, 90:24, 91:5, 92:20, 100:16, 129:12
**West** [1] - 2:2
**whatsoever** [4] - 8:5, 8:11, 71:8, 79:18
**wheelchair** [1] - 72:20
**whereabouts** [1] - 78:3
**white** [1] - 82:21
**whole** [9] - 17:7, 55:15, 63:9, 74:3, 97:15, 98:8, 98:9, 102:5, 102:14
**wholly** [1] - 112:9
**whoops** [1] - 94:12
**Wilbert** [1] - 3:10
**willfully** [9] - 5:10, 60:4, 60:21, 129:3, 129:22, 130:16, 131:3, 131:17, 131:25
**willing** [1] - 23:22
**win** [1] - 87:3
**window** [7] - 53:16, 57:5, 69:6, 81:7, 106:8, 106:11
**windows** [6] - 56:25, 57:9, 61:24, 81:2, 85:13, 85:21
**wing** [6] - 53:14, 53:16, 54:20, 54:21, 56:25, 91:6
**wings** [1] - 93:22

**wish** [3] - 14:9, 101:20, 134:17
**wished** [2] - 116:4, 124:21
**witness** [32] - 3:18, 3:24, 4:4, 4:14, 4:17, 73:6, 106:2, 107:19, 108:5, 108:6, 108:7, 108:8, 108:10, 108:16, 108:17, 108:18, 108:19, 108:20, 108:22, 109:5, 109:9, 109:16, 109:17, 109:19, 109:23, 109:24, 109:25, 110:5, 110:7, 121:22, 122:2
**WITNESS** [1] - 24:2
**witness's** [7] - 106:3, 108:7, 108:18, 109:1, 109:7, 109:8, 109:10
**witnessed** [1] - 98:23
**witnesses** [16] - 13:12, 13:19, 17:3, 17:4, 17:13, 17:16, 39:23, 76:22, 76:23, 77:4, 83:19, 102:21, 103:21, 108:3, 108:5, 108:14
**woke** [1] - 106:13
**word** [1] - 70:20
**worded** [1] - 62:24
**words** [18] - 9:14, 15:11, 15:25, 18:23, 51:20, 55:17, 61:1, 64:8, 64:9, 89:5, 90:5, 90:14, 90:15, 90:16, 99:6, 115:13, 124:6, 134:1
**works** [1] - 75:23
**worn** [7] - 10:18, 10:19, 42:18, 43:7, 46:11, 46:12, 98:24
**worth** [1] - 79:13
**worthwhile** [1] - 86:11
**wound** [1] - 49:1
**wounds** [1] - 94:22
**wow** [1] - 62:15
**write** [1] - 138:3
**writing** [3] - 102:3, 136:17, 137:1
**written** [1] - 15:13
**wrongdoing** [2] - 121:18
**wrote** [1] - 93:7

**Y**

**year** [3] - 63:11, 93:10, 93:11
**years** [6] - 33:21, 63:21, 63:23, 84:23, 86:13, 93:14
**yelled** [1] - 34:14
**yelling** [1] - 44:6
**yesterday** [2] - 23:7, 23:8
**yourself** [3] - 31:1, 48:4, 52:20
**yourselves** [1] - 139:15

**Z**

**zero** [2] - 79:7
**zone** [1] - 5:11
**zones** [1] - 78:10
**zoom** [1] - 93:21