**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-19-002 (RCL)** |
| **v.** | : | |
| | : | |
| **MATTHEW PURDY,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. A jury found Matthew Purdy found guilty of two second degree misdemeanors: 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Eleven), and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Thirteen). For the reasons set forth herein, the government requests that this Court sentence Purdy to 90 days incarceration on Count Eleven and 12 months' probation on Count Thirteen. The government also requests that this Court impose 60 hours of community service and a fine.

**I.    Introduction**

Defendant Matthew Purdy, a 25-year-old real-estate investor/contractor from New York, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States

Purdy was convicted after a jury trial of violating 40 U.S.C. §§ 5104(e)(2)(D) and (G).
[2]The government's recommendation is based on: (1) Purdy was one of the first rioters to breach barricades onto the Upper West Terrace; (2) he entered the Senate Wing Doors just seconds after they were breached and at the time the Senate was going into recess due to the riot; and (3) he photographed violence against police officers which was later posted on social media by his brother/codefendant Gregory Purdy.[3]  Although he was inside the Capitol for only a few minutes, incarceration is still appropriate due to these aggravating factors

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Purdy's crime support a sentence 90 days' incarceration on Count Eleven and 12 months' probation on Count Thirteen, and a fine and community service.

## II.    Factual and Procedural Background

Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] The jury acquitted Purdy of two misdemeanors, Count Eight, a violation of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds, and Count Nine, a violation of 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds.  ECF No. 206.

[3] Purdy has two co-defendants, Gregory Purdy and Robert Turner.  The jury convicted Gregory Purdy and Turner of multiple felony counts, including violations of 18 U.S.C. 111(a)(1), Assaulting, Resisting or Impeding Certain Officers, 18 U.S.C. § 231(a)(3), Civil Disorder, and 18 U.S.C. § 1512(c)(2), 2, Obstruction of an Official Proceeding.  Gregory Purdy and Turner were also found guilty of several misdemeanor counts. Following the Supreme Court decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), the United States moved to dismiss the 1512 count.  ECF No. 206, 225.

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 1, pp. 2-3.

*Defendant Matthew Purdy's Role in the January 6, 2021 Attack on the Capitol*

Defendant Matthew Purdy traveled from Hopewell Junction, New York, to Washington, D.C., to protest the results of the 2020 federal election.  His brother, Gregory Purdy, and their uncle, Robert Turner, accompanied him (collectively "the Defendants").  On January 6, 2021, the Defendants attended the "Stop the Steal" rally, then joined the crowds that approached the U.S. Capitol on Pennsylvania Avenue.

At 2:01 p.m., the Defendants were part of a group of protestors that stood opposite a group of Metropolitan Police Department ("MPD") officers on the west side of the Capitol grounds, within the restricted area.  The MPD Officers had reported to the U.S. Capitol to assist the U.S. Capitol Police that needed assistance to protect the Capitol, members of Congress and their staff. The MPD officers were on a sidewalk on the West side of the Capitol, moving towards the lower West Terrace.  The officers were surrounded by rioters, including the Defendants.

On his cell phone, Matthew Purdy filmed Gregory Purdy and other rioters during the riot on the sidewalk.  MPD Officer Gbatu, badge number 4011, captured video on his body-worn camera of Matthew Purdy filming the riot.  *See* Image 1.  Open-source video captured video of Matthew Purdy filming the rioters as they attacked police.  *See* Trial Ex. 503.1, "@nigrotime 2021" at video time 00:50.  Matthew Purdy filmed these same acts against the police and statements by Gregory Purdy and other rioters as they shouted at the officers, and then as the rioters pushed against the officers.  *See* Images 2, 3.  Later, Gregory Purdy posted some of these videos to his Instagram account, with added language describing the assault on officers.

3



*Image 1, Matthew Purdy (circled in red) and Gregory Purdy (circled in green) facing officers on sidewalk near the Lower West Plaza (source: Trial Ex. 601.3, Clip from Officer Gbatu body-worn camera, video time 00:45)*



*Image 2, Video of Gregory Purdy shouting at Officer Gbatu and other police on sidewalk near Lower West Plaza (source: Trial Ex. 415, Video on Gregory Purdy's Instagram account with Officer Gbatu, Badge Number 4011, at video time 00:04)*



*Image 3, Additional video from sidewalk near Lower West Plaza (source: Trial Ex. 416, Video on Gregory Purdy's Instagram account, at video time 00:01)*

Matthew Purdy climbed part-way up a staircase on the west side of the Capitol, from the sidewalk going up to the Upper West Terrace. On a staircase leading to the Upper West Terrace, there were scaffoldings being set up for the upcoming inaugural ceremonies. USCP officers tried to prevent rioters from entering the scaffoldings or moving up the Northwest stairs to the Upper West Terrace, but the crowd overran the barriers and ran past police.

Matthew Purdy climbed halfway up the staircase with Gregory Purdy and Robert Turner. Matthew Purdy used his cell phone and filmed the rioters and Gregory Purdy on the staircase. *See* Image 4. In the video filmed by Matthew Purdy, Gregory Purdy makes statements that they were "the second wave" who had "stormed through" the officers to the top of the Capitol. *See* Images 5, 6.



*Image 4, Robert Turner's video showing Matthew Purdy (circled in red) and Gregory Purdy (circled in green) on Northwest stairs (source: Trial Ex. 420.1, Video posted on Turner's Instagram account at video time 00:10).*



*Image 5, Matthew Purdy's video of Gregory Purdy on Northwest stairs, taken at same time as Robert Turner's video (Image 4, above). Video was posted on Gregory Purdy's Instagram account. (source: Trial Ex. 417.1, video time 00:03)*



*Image 6, Further video filmed by Matthew Purdy from the Northwest stairs, showing the crowd on the West side of the Capitol (source: Trial Ex. 417.1, at video time 00:17)*

USCP officers held a line near the middle of the staircase and scaffolding, but at 2:09 p.m. rioters pushed the line of officers back to the top of the staircase. The Defendants climbed through the scaffolding. Then, Matthew Purdy led Gregory Purdy and Turner up to the top of the staircase at approximately 2:10 p.m. to 2:11 p.m. *See* Image 7.



*Image 7, Matthew Purdy (circled in yellow), Gregory Purdy (circled in green), and Turner (circled in red) climbing the Northwest stairs to the Upper West Terrace (source: Trial Ex. 506.2, open-source video at video time 01:04)*

At the top of the staircase, USCP officers set up a line of barricades and stood behind the barricades. This line was the final physical barrier between the rioters and the Upper West Terrace and the Capitol building. Officers told the rioters to "Stop," and officers, including USCP Officer B.T., held onto the barricades against the rioters. Gregory Purdy grabbed one of the barricades along with other rioters and pushed the barricade over. *See* Image 8. The officers were overwhelmed and retreated. The Defendants crossed over the barricades onto the Upper West Terrace. The Defendants moved towards the Senate Wing Doors of the U.S. Capitol Building. Matthew Purdy filmed Gregory Purdy crossing the barricades on his cell phone. *See* Image 9. Later, this video was posted to Gregory Purdy's Instagram with narrative added. *See* Image 10.



*Image 8, Gregory Purdy (circled in green) pushing over a barricade on the Upper West Terrace, and Matthew Purdy (circled in yellow) (source: Trial Ex. 506.2, at video time 02:05. Open-source video)*



*Image 9, Matthew Purdy (circled in yellow), filming the first rioters entering the Upper West Terrace (source: Trial Ex. 506.2, open source video at video time 02:04)*



*Image 10, Matthew Purdy video of Gregory Purdy and rioters pushing past barricades to enter the Upper West Terrace (Trial Ex. 422, video posted to Gregory Purdy's Instagram account, at video time 00:04)*

At approximately 2:13:03 p.m., protesters from the outside of the Capitol broke the windows to the Senate Wing Doorway of the U.S. Capitol Building and climbed through one of the broken windows. At 2:13:30, protesters kicked the Senate Wing Door open from the inside. As this was an emergency door, an alarm was set off when the Senate Wing Door was breached. Rioters began to enter through the emergency door. Protestors broke open the second window and climbed inside through the second broken window. At 2:13:51, approximately 21 seconds after the initial breach of the Senate Wing Doors, Matthew Purdy entered through the broken door. *See* Image 11. When Matthew Purdy entered and walked through the Capitol, he was filming the rioters on his cell phone. *See* Image 12, *see also* Trial Ex. 424, video posted to Gregory Purdy's Instagram account. He walked through Senate hallways on the first floor of the U.S. Capitol Building.



*Image 11, Matthew Purdy (circled in yellow), Gregory Purdy (circled in green) and Turner (circled in red) entering the U.S. Capitol through Senate Wing Doors at 2:13:51 p.m. (source: Trial Exhibit 303.9 at video time 01:11.  U.S. Capitol surveillance video, Senate Wing Doorway)*



*Image 12, Matthew Purdy (circled in yellow) filming on his phone while entering the U.S. Capitol (source: Trial Exhibit 303.10, @BGOnTheScene open-source video, portion of synced video with USCP video inside Senate Wing doors, at video time 01:10).*

Because of the riot at the Capitol Building, the United States Senate was forced to stop their deliberations on the certification of the election results and to go into recess at about this time. Vice President Pence had to be evacuated from the Senate floor.  Then the House of Representatives also recessed and stopped it deliberations.  Congress did not reconvene until after 8:00 p.m. that evening.

At approximately 2:16 p.m., Matthew Purdy exited the Capitol through the Senate Carriage Door. Matthew Purdy was in the U.S. Capitol Building approximately three minutes.

Shortly after they exited the Capitol, Matthew Purdy separated from Gregory Purdy and Turner. Gregory Purdy and Turner remained in the restricted area for more than an hour. At approximately 3:30 p.m., Gregory Purdy and Turner stood opposite of a line of MPD officers and in front of a large group of rioters on the Upper West Terrace. Gregory Purdy shouted out a countdown and encouraged the crowd to move against the officers. He then ran forward into an officer, pushed the officer off the line and breached the police line. Turner followed Gregory Purdy into the line of officers. Turner pushed another officer off the police line, grabbed his baton and wrestled with the officer.

*The Charges and Jury Verdicts*

On May 1, 2024, the United States charged Matthew Purdy by a Superseding Indictment with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On June 11, 2024, Matthew Purdy was convicted following a jury trial of Count Eleven, a violation of 40 U.S.C. § 5104(e)(2)(D), and Count Thirteen, a violation of 40 U.S.C. § 5104(e)(2)(G). The jury acquitted Matthew Purdy of Count Eight, a violation of 18 U.S.C. § 1752(a)(1), and Count Nine, a violation of 18 U.S.C. § 1752(a)(2).

Co-defendant Gregory Purdy was convicted by the jury of six felony and six misdemeanor counts, including felony counts of Assault on Officers, in violation of 18 U.S.C. § 111(a)(1), and Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). ECF No. 206. Co-defendant Turner was convicted by the jury of three felony and six misdemeanor counts, including Assault on Officers, in violation of 18 U.S.C. § 111(a)(1), and Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). ECF No. 206. The United States has moved to dismiss the felony count against Gregory Purdy

and Turner charging Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2),

2. ECF No. 225.

**Statutory Penalties**

Matthew Purdy now faces a sentencing for violating 40 U.S.C. § § 5104(e)(2)(D) and (G).

As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18

U.S.C. § 3559; U.S.S.G. §1B1.9.

### III.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies

the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of a sentence of 90 days incarceration on Count Eleven and

12 months' probation on Count Thirteen, a fine, and community service.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy."

*United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while

staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States

v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Matthew

Purdy's participation in that attack to fashion a just sentence, this Court should consider various

aggravating and mitigating factors. Notably, for a misdemeanor defendant like Matthew Purdy,

the absence of violent or destructive acts is not a mitigating factor. Had Matthew Purdy engaged

in such conduct, he would have faced additional criminal charges.

One of the most important factors in Matthew Purdy's case is that he was among the first

of the rioters who entered the Upper West Terrace and the U.S. Capitol through the Senate Wing

12

Doors.  Matthew Purdy entered the Senate Wing Doorway just 21 seconds after that doorway was breached by rioters.  He also filmed Gregory Purdy and other rioters who were confronting police at multiple locations.  Gregory Purdy later posted this footage on his Instagram account, with messages that highlighted the rioters' actions against officers.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Matthew Purdy's History and Characteristics

As set forth in the PSR, Matthew Purdy does not have any prior criminal history.  ECF No. 250, ¶¶ 44-49.  He has not served in the United States military.  He is a real estate investor/contractor in Hopewell Junction, New York, and is the Chief Executive Officer of a management LLC.  ECF No. 250, ¶¶ 70, 72-74.  He has a bachelor's degree in environmental sustainability.  ECF No. 250, ¶ 65.

Matthew Purdy was placed on bond and supervision by the Pretrial Services Agency.  ECF 250, ¶¶ 11-12.  In July 2023, a U.S. Probation Officer conducted an unannounced home contact at Purdy's residence and discovered a camouflage-patterned bow in Matthew Purdy's bedroom.  This was a violation of Matthew Purdy's pre-trial release.  The Court addressed the violation during a status conference and instructed the defendant to removal all weapons from his residence.  ECF No. 250, ¶ 13.  Matthew Purdy has been compliant with the remaining terms of his pre-trial release. ECF No 250, ¶ 15.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United*

13

*States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

> There can be no room in our country for this sort of political violence. The Framers designed our constitutional system so that the people govern through their representatives, according to law. Decisions are the result of elections, debates, and compromise. The people, through their representatives, decide. By contrast, those who think political ends justify violent means seek to replace persuasion with intimidation, the rule of law with "might makes right." Violence risks begetting a vicious cycle that could threaten cherished conventions and imperil our very institutions of government. In that sense, political violence rots republics. Therefore, January 6 must not become a precedent for further violence against political opponents or governmental institutions. This is not normal. This cannot become normal. We as a community, we as a society, we as a country cannot condone the normalization of the January 6 Capitol riot.

Judge Lamberth, sentencing hearing in *United States v. Johnatakis*, Case No. 1:21-cr-91 (RCL) on April 3, 2024.

14

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.

First, Matthew Purdy did not accept responsibility for his actions. He did not stipulate to any facts underlying his guilt and took his case to a jury trial. After the verdict was announced, Matthew Purdy provided a written statement to the Probation officer who prepared the PSR report, and in that statement, he expressed regret for his actions on January 6, 2021. ECF No. 250, ¶ 40. The Court should view any remorse Purdy expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

The Court must sentence Matthew Purdy in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers.[4] This Court must sentence Purdy based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Matthew Purdy was found guilty by a jury of Count Eleven of the Superseding Indictment, charging him with Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and Count Thirteen, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).   These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, this court and other judges of this court have sentenced Capitol breach defendants who entered the Senate Wing doors shortly after the breach and took photographs or videos of the riot.

In *United States v. Antony Vo*, 1:21-cr-509-TSC, Vo was found guilty by a jury of four counts, including violations of 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

building or grounds); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). Despite the numerous signs that Vo should not proceed, including fencing, signage, and clouds of tear gas, Vo entered the Capitol building through the Upper West Terrace Door at 2:38 p.m. Once in the Rotunda, Vo took numerous photographs. He posed for another photograph with a flag raised over his head. In total, he spent approximately 27 minutes inside. After the riot, Vo posted these photographs to his social media accounts, along with messages that "my mom and I got to storm the Capitol" and "…we stopped the vote count for a bit." Vo did not testify at trial. Judge Chutkan focused on Vo's lack of remorse, and sentenced Vo to consecutive periods of incarceration on the 40 U.S.C. § 5104 counts (6 months on the 40 U.S.C. § 5104(e)(2)(D) count and a consecutive 3 months on the 40 U.S.C. § 5104(e)(2)(G) count). These sentences were made concurrent to Vo's sentence of 9 months incarceration on the 18 U.S.C. § 1752 counts.

In *United States v. Raymond Chambers* 1:23-cr-300-DLF, Chambers was found guilty by a jury of four counts, including violations of 18 U.S.C. §§ 1752(a)(1) and (b)(1), and 40 U.S.C. §§ 5104(e)(2)(D), and (G). Chambers entered the U.S. Capitol through the East Rotunda doors around 3:00 p.m. and he was in the Rotunda for numerous minutes until officers evicted him and other rioters from the Capitol. After leaving the restricted area, Chambers gave an interview where he and another rioter described the "mob" outside the East Rotunda doors. At trial, Chambers testified in his defense. Judge Friedrich sentenced Chambers to 7 months' incarceration on the §§ 1752(a)(1) and (a)(2) counts. Judge Friedrich also sentenced Chambers to 6 months

incarceration for his convictions under 40 U.S.C. §§ 5104(e)(2)(D) and (G) (concurrent to the sentence for the § 1752 counts).

Unlike Vo and Chambers, Matthew Purdy was not convicted of the offenses under 18 U.S.C. § 1752; however, Matthew Purdy's conduct was more significant than Vo and Chamber's conduct in several ways. Matthew Purdy took multiple videos on his phone throughout the day, including videos showing violence against police on the sidewalk near the Lower West Terrace and at the top of the Northwest Stairs. Matthew Purdy was one of the first rioters to cross the barricades at the top of the Northwest stairs. Matthew Purdy entered the Senate Wing Doors approximately 21 seconds after the initial breach of the Senate Wing doorway. At that time, the United States Senate was forced to stop their deliberations on the certification of the election results and to go into recess, and the Vice President was being evacuated because of the rioters. He remained inside the Capitol for approximately three minutes, less time than Vo or Chambers. Several of the videos depicting the events filmed by Matthew Purdy were later posted to Gregory Purdy's Instagram account. While he does not have a prior criminal history, Matthew Purdy willingly joined other rioters to attack the U.S. Capitol, despite the police presence, barricades, door alarms and other measures to protect the Capitol, members of Congress and staff. Matthew Purdy did not express remorse for his actions until after the jury found him guilty of the criminal offenses, when he spoke to probation for its presentence investigation report. ECF No. 250, ¶ 40. Therefore, a similar, but slightly less, sentence than Vo's and Chamber's sentences is appropriate for Matthew Purdy.

The United States has recommended longer sentences for Matthew Purdy's co-defendants. The United States has recommended Gregory Purdy be sentenced to 63 months' incarceration and a 3-year term of supervised release. The United States has recommended Robert Turner be

sentenced to 51 month's imprisonment and a three-year term of supervised release. The co-defendants, however, are not comparable to Matthew Purdy. Gregory Purdy and Robert Turner were convicted of felony counts, including assaults on law enforcement, and they remained within the restricted area of the Capitol for at least an hour and assaulted officers after the three co-defendants exited the U.S. Capitol Building. Further, Gregory Purdy and Robert Turner made and posted a number of videos after the riot where they described their assault on officers.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

IV.    **Fine**

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for Count Eleven and $5,000 for Count Thirteen. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). The presentence investigation report shows Matthew Purdy's current income and

19

expenses. ECF No. 250, ¶ 75, 77-82. He owns three properties. ECF No. 250, ¶ 78. He is an officer or shareholder of several business which own multiple properties. ECF No. 250, ¶¶ 72-78a.

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, based on information obtained from Matthew Purdy and other sources, Matthew Purdy has a substantial positive monthly cash flow, (*see* PSR ¶¶ 76-82a), thus pursuant to the statutory factors under 18 U.S.C. § 3571(b), and subject to the considerations outlined in 18 U.S.C. § 3572(a), the Court has authority to impose a fine.

## V.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant Matthew Purdy to 90 days incarceration on Count Eleven, and 12 months' probation on Count Thirteen. The government also requests that this Court impose 60 hours of community service and a fine. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Purdy's liberty as a consequence of his behavior, while recognizing his lack of acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    *Lynnett M. Wagner*

LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Email: lynnett.m.wagner@usdoj.gov

*/s/ Kyle M. McWaters*
KYLE M. MCWATERS
Assistant United States Attorney
DC Bar No. 241625
U.S. Attorney's Office for the District of
Columbia
601 D Street, N.W.
Washington, D.C.20579
Phone: (202) 252-6983
Email: Kyle.McWaters@usdoj.gov